

1  Elwood Lui (State Bar No. 45538)
   Christopher Lovrien (State Bar No. 230546)
2  JONES DAY
   555 South Flower Street
3  Fiftieth Floor
   Los Angeles, CA  90071-2300
4  Telephone:  (213) 489-3939
   Facsimile:  (213) 243-2539
5  cjlovrien@jonesday.com

6  Attorneys for Defendant
   County of Los Angeles
7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11                                    SACV11-00709 JWS (AWT)

    STUART J. COKER, ANDREW            Case No.
12  AGUILAR, BARBARA ALBA, THEO
    ANADOLIS, BURLEY ANDERSON,         NOTICE OF REMOVAL
13  LOUIE BARRAGAN, LEONARD            OF CIVIL ACTION
    BARRIOS, CARLOS BAZAN, DANIEL      FROM STATE COURT
14  BAZAN, STEVEN BELL, RICHARD
    BENTLEY, STEVEN BIAS, BRIAN        [28 U.S.C. §§ 1331, 1367,
15  BLESSING, LINDA BONNER, EILEEN     1441, and 1446]
    BORJA, TERRELL BOYKIN, OLLIE
16  BRASHEARS, RANDY BUDD, HUBERT
    BUSH, JR., WELLINGTON CABAI,
17  CARLOS CALDERON, JUAN
    CAMACHO, JUAN CAMPOS, MAURICE
18  CANNON, SEAN CARO, JOSE
    CARRILLO, CAROL CAUDLE,
19  CARLTON CHAMBERS, KEN
    CIANCIOSI, MICHAEL CLARK,
20  MICHAEL COHEN, KEVIN COMPISE,
    DANIEL CORTEZ, SR., THERESA
21  DAUGHERTY, BRIAN DECKER,
    AARON DEYON, DAVID DOMINGUEZ-
22  HERBERT, MARGIE DUARTE,
    EDWARD ENTWISLE, ROBERT FRIAR,
23  DANIEL GARCIA, EDGARDO GARCIA,
    JOHN L. GARCIA, JOHN S. GARCIA,
24  ROBERT GONZALEZ, DANA GOWER,
    MITCH GRACE, DARRELL GREEN,
25  RONALD GREENE, GEORGE GUERRA,
    JOSE GUERRERO, STEVEN
26  GUTIERREZ, LINDA-JUDITH
    HARGRAVE, SHANE HARING, TONY
27  HAYDEN, ANDREW J. HERNANDEZ,
    GERALD HOLT, ANTHONY W.
28  JACKSON, JAY JACOBSON, AKOUB

                        NOTICE OF REMOVAL

"JACK" KHOKASIAN, MIKE KIM,
JEREMY KITABJIAN, PHILLIP LAKIN,
DEREK LEE, GORDON LEE, STEVE
LIEBERMAN, CURT LEONARD,
ANDREW MACK, JOEL MACKAY,
WILLIAM MADRID, GLEN
MANCHESTER, EDWARD MARQUEZ,
WILLIAM MARTIN, DAVID
MCDONALD, LUIS MENDEZ, RUBEN
MONTANEZ, FLORIA MORTON,
CHARLES MUSE, MURIEL NG-BODE,
JAMES B. NOBLE, LENN NORMAN,
ARTHUR NOWELL, ANDRUS
NORTHRUP, GARY PENDER, MARCOS
PEREZ, JEFF PHILLIPS, DOUGLAS
PRECIADO, JOHN PREECE, MARIANO
PRIETO, STEVEN PRUITT, CHRISTINA
RAMIREZ, EDWARD RAMOS,
GERARDO RAMOS, JACQUELINE
REGALADO, MARTHA REYES,
CHERYL ROBINSON, RICHARD
ROBINSON, JOSE RODRIGUEZ,
KENNETH RUFFCORN, LLOYD
RUNNING, KENNETH RYNO, WILLIAM
SALAZAR, FERDINAND SALGADO,
EDWIN SANDOVAL, ANDY
SEPULVEDA, SCOTT SHEARING,
DOREEN SIMMONS, HOWARD SLACK,
JOEL SOKOLOW,  MARK SPURLOCK,
DANIEL TASCIAN, VERNON
THOMPSON, JUDI TREDY, GLEN
VALVERDE, JOHN VANN, JOHN
VARGAS, RENE VEGA, IGNACIO
VILLAROS, JR., ERIC WAFER, RALPH
WAINWRGHT, ERIC WALTON, COREY
WASHINGTON, KENNETH WHITAKER,
DANNY WILSON, and JAMES
WOODELL,

                    Plaintiffs,

        v.

COUNTY OF LOS ANGELES, a public
entity, COUNTY OF LOS ANGELES
SHERIFF'S DEPARTMENT, a law
enforcement agency in Los Angeles County,
LEE BACA, an individual, LARRY
WALDIE, an individual, ED ROGNER, an
individual, KEVIN HEBERT, an individual,
WILLIAM FUJIOKA, an individual,
PAMELA JOHNSON, an individual,
GARY GREENWOOD, an individual,
TODD KOMMER, an individual,
ANDREW JACOB, an individual, KEVIN

NOTICE OF REMOVAL

1  ZABORNIAK, an individual, LAMONT
   STRINGER, an individual, CECILIA
2  RAMIREZ, an individual, JOE SALAS, an
   individual, JILL DESCHAMPS, an
3  individual, REGINALD MEREDITH, an
   individual, JENNY CHRISTIANSEN, an
4  individual, RICHARD CONLEY, JR., an
   individual, MAURICIA AVALOS, an
5  individual, WILLIAM KENNEDY, an
   individual, ROBERT ENGEL, an
6  individual, PROFESSIONAL PEACE
   OFFICERS ASSOCIATION aka PPOA, a
7  union entity, KEITH SMITH, an individual,
   LISA GARRET, an individual, RALPH
8  PLASENCIA, an individual, ANGELA
   HUNT, an individual, and DOES 1 through
9  100, inclusive,

10              Defendants.

NOTICE OF REMOVAL

1  TO THE CLERK OF THE ABOVE ENTITLED COURT:

2        PLEASE TAKE NOTICE THAT COUNTY OF LOS ANGELES,

3  defendant in the action entitled *Coker et al. v. County of Los Angeles et al.*, Case

4  No. 30-2011-00460754-CU-OE-CXC, filed in the Superior Court for the State of

5  California, County of Orange, removes that action to the United States District

6  Court for the Central District of California pursuant to 28 U.S.C. § 1331, § 1367, §

7  1441 and § 1446.  The grounds for removal are as follows:

8        1.    The Complaint in this state court action was filed on March 23, 2011

9  in the Superior Court of the State of California in and for the County of Orange,

10  Case No. 30-2011-00460754-CU-OE-CXC, captioned  *Coker et al. v. County of*

11  *Los Angeles et al.*

12        2.    Defendant County of Los Angeles was served with a summons and

13  copy of the complaint on April 25, 2011.

14        3.    This Notice is being filed with this Court within thirty (30) days after

15  County of Los Angeles was served with a copy of Plaintiff's initial pleading setting

16  forth the claims for relief upon which Plaintiff's action is based, in accordance with

17  28 U.S.C. § 1446(b).

18        4.    This action is a civil action over which this Court has original

19  jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this

20  Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that it

21  arises and alleges claims under 42 U.S.C. § 1983.

22        5.    This Court has supplemental jurisdiction over the related state law

23  claims in this action under 28 U.S.C. § 1367, because those state law claims form

24  part of the same case or controversy as the federal claim over which this Court has

25  original jurisdiction.

26        6.    Plaintiff filed this case in the Superior Court of California, County of

27  Orange.  Therefore, the case may properly be removed to the Southern Division of

28  the Central District of California.  28 U.S.C. § 1441(a).  As discussed in the

1    contemporaneously filed Notice of Related Cases, this action is closely related to an

2    action in the Western Division of the Central District of California, *Esparza et al. v.*

3    *County of Los Angeles et al.*, Case No. CV11 02589 JFW (Ex), which was filed

4    March 28, 2011, and is currently pending before The Honorable John F. Walter.  As

5    such, Defendant believes this case should be related to *Esparza* and transferred to

6    the Western Division of the Central District of California.

7         7.    This case is also related to a simultaneously filed action in the Superior

8    Court of California, County of Orange, captioned *Gamst et al. v. County of Los*

9    *Angeles et al.*, Case No. 30-2011-00460752-CU-OE-CXC.  The plaintiffs in *Gamst*

10   and *Coker* have both filed Notices of Related Case in their respective state cases.

11   Defendant Los Angeles County is also removing *Gamst* to the Central District of

12   California, Southern Division, and requesting its transfer to Judge Walter, Western

13   Division, as *Gamst* is also related to *Esparza*.

14        8.    In accordance with 28 U.S.C. § 1446(a), true and correct copies of all

15   process, pleadings, and orders served upon County of Los Angeles in the state court

16   action are attached hereto as Exhibit A.

17        9.    To the County's knowledge, no defendant other than County of Los

18   Angeles has been served in the state court action and thus joinder of the other

19   defendants in this Notice of Removal is not necessary.  *Salveson v. Western States*

20   *Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (*superceded by statute on*

21   *unrelated grounds*, as noted in *Ethridge v. Harbor House Rest.*, 861 F.2d 1389,

22   1392 n.3 (9th Cir. 1988).

23

24

25

26

27

28

NOTICE OF REMOVAL

1

2                                            Respectfully submitted,

3                                            JONES DAY
   Dated:  May 9, 2011
4

5                                            By: *Elwood Lui /avcor*

6                                                 Elwood Lui

7                                            Attorneys for Defendants

8

9

10
   LAI-3129561v1
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

Exhibit A

**SUMMONS**

*(CITACION JUDICIAL)*

FILED

2011 APR 25 PM 4:00

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES BOARD

**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

03/23/2011 at 10:17:01 AM

Clerk of the Superior Court
By Enrique Veloz, Deputy Clerk

**CE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COUNTY OF LOS ANGELES, a public entity
******See Additional Parties Attachment******

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

STUART J. COKER, ANDREW AGUILAR, BARBARA ALBA,
******See Additional Parties Attachment******

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Orange County Superior Court<br>Civil Complex Center<br>751 West Santa Ana Blvd., Santa Ana, California 92701 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2011-00460754-CU-OE-CXC |
|---|---|
| | Judge Gail A. Andler |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Joel W. Baruch, 2020 Main Street, Suite 900, Irvine, CA 92614   (949) 864-9662

| DATE: 03/23/2011<br>*(Fecha)* | ALAN CARLSON, Clerk of the Court | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

Enrique Veloz

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* COUNTY OF LOS ANGELES, a public entity

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* public entity
4. ☒ by personal delivery on *(date):*

[SEAL]

4-25-11

**SUMMONS**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Page 1 of 1

7

SUM-200(A)

| ~RT TITLE:<br><br>~er, et al. v. County of Los Angeles, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

THEO ANADOLIS, BURLEY ANDERSON, LOUIE BARRAGAN, LEONARD BARRIOS, CARLOS BAZAN, DANIEL BAZAN, STEVEN BELL, RICHARD BENTLEY, STEVEN BIAS, BRIAN BLESSING, LINDA BONNER, EILLEEN BORJA, TERRELL BOYKIN, OLLIE BRASHEARS, RANDY BUDD, HUBERT BUSH, JR., WELLINGTON CABAL, CARLOS CALDERON, JUAN CAMACHO, JUAN CAMPOS, MAURICE CANNON, SEAN CARO, JOSE CARRILLO, CAROL CAUDLE, CARLTON CHAMBERS, KEN CIANCIOSI, MICHAEL CLARK, MICHAEL COHEN, KEVIN COMPISE, DANIEL CORTEZ, SR., THERESA DAUGHERTY, BRIAN DECKER, AARON DEYON, DAVID DOMINGUEZ-HERBERT, MARGIE DUARTE, EDWARD ENTWISLE, ROBERT FRIAR, DANIEL GARCIA, EDGARDO GARCIA, JOHN L. GARCIA, JOHN S. GARCIA, ROBERT GONZALEZ, DANA GOWER, MITCH GRACE, DARRELL GREEN, RONALD GREENE, GEORGE GUERRA, JOSE GUERRERO, STEVEN GUTIERREZ, LINDA-JUDITH HARGRAVE, SHANE HARING, TONY HAYDEN, ANDREW J. HERNANDEZ, GERALD HOLT, ANTHONY W. JACKSON, JAY JACOBSON, AKOUB "JACK" KHOKASIAN, MIKE KIM, JEREMY KITABJIAN, PHILLIP LAKIN, DEREK LEE, GORDON LEE, STEVE LIEBERMAN, CURT LEONARD, ANDREW MACK, JOEL MACKAY, WILLIAM MADRID, GLEN MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, DAVID MCDONALD, LUIS MENDEZ, RUBEN MONTANEZ, FLORIA MORTON, CHARLES MUSE, MURIEL NG-BODE, JAMES B. NOBLE, LENN NORMAN, ARTHUR NOWELL, ANDRUS NORTHRUP, GARY PENDER, MARCOS PEREZ, JEFF PHILLIPS, DOUGLAS PRECIADO, JOHN PREECE, MARIANO PRIETO, STEVEN PRUITT, CHRISTINA RAMIREZ, EDWARD RAMOS, GERARDO RAMOS, JACQUELINE REGALADO, MARTHA REYES, CHERYL ROBINSON, RICHARD ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, LLOYD RUNNING, KENNETH RYNO, WILLIAM SALAZAR, FERDINAND SALGADO, EDWIN SANDOVAL, ANDY SEPULVEDA, SCOTT SHEARING, DOREEN SIMMONS, HOWARD SLACK, JOEL SOKOLOW, MARK SPURLOCK, DANIEL TASCIAN, VERNON THOMPSON, JUDI TREDY, GLEN VALVERDE, JOHN VANN, JOHN VARGAS, RENE VEGA, IGNACIO VILLAROS, JR., ERIC WAFER, RALPH WAINWRIGHT, ERIC WALTON, COREY WASHINGTON, KENNETH WHITAKER, DANNY WILSON, and JAMES WOODELL

Page __1__ of [ 2 ]

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007]

### ADDITIONAL PARTIES ATTACHMENT
**Attachment to Summons**

American LegalNet, Inc.<br>www.FormsWorkflow.com

SUM-200(A)

| RT TITLE:<br>er, et al. v. County of Los Angeles, et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
   Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

COUNTY OF LOS ANGELES, a public entity, COUNTY OF LOS ANGELES SHERIFF'S
DEPARTMENT, a law enforcement agency in Los Angeles County, LEE BACA, an individual, LARRY
WALDIE, an individual, ED ROGNER, an individual, KEVIN HEBERT, an individual, WILLIAM
FUJIOKA, an individual, PAMELA JOHNSON, an individual, GARY GREENWOOD, an individual,
TODD KOMMER, an individual, ANDREW JACOB, an individual, KEVIN ZABORNIAK, an individual,
LAMONT STRINGER, an individual, CECILIA RAMIREZ, an individual, JOE SALAS, an individual,
JILL DESCHAMPS, an individual, REGINALD MEREDITH, an individual, JENNY CHRISTIANSEN,
an individual, RICHARD CONLEY, JR., an individual, MAURICIA AVALOS, an individual, WILLIAM
KENNEDY, an individual, ROBERT ENGEL, an individual, PROFESSIONAL PEACE OFFICERS
ASSOCIATION aka PPOA, a union entity, KEITH SMITH, an individual, LISA GARRETT, an individual,
RALPH PLASENCIA, an individual, ANGELA HUNT, an individual, and DOES 1 through 100, inclusive.

Page  __2__  of  __2__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

9

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**03/23/2011** at 10:17:01 AM
Clerk of the Superior Court
By Enrique Veloz, Deputy Clerk

1  Joel W. Baruch SBN 85903
   Nikki Fermin SBN 271331
2  LAW OFFICES OF JOEL W. BARUCH, P.C.
   2020 Main Street, Suite 900
3  Irvine, California 92614-8203
   Tel:  (949) 864-9662
4  Fax: (949) 851-3185

5  Thomas A. Pistone SBN 77774
   Eric Medel SBN 211808
6  Mitchell Reichmann SBN 238225
   Aaron Watts SBN 246095
7  PISTONE & WOLDER LLP
   2020 Main Street, Suite 900
8  Irvine, California 92614-8203
   Tel:  (949) 622-8980
9  Fax:  (949) 622-8985

10

11 Attorneys for Plaintiffs STUART J. COKER, et al.

12

13           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14        **FOR THE COUNTY OF ORANGE, CIVIL COMPLEX CENTER**

15 | STUART J. COKER, ANDREW | CASE NO.   30-2011-00460754-CU-OE-CXC
16 | AGUILAR, BARBARA ALBA, THEO |
   | ANADOLIS, BURLEY ANDERSON, |
17 | LOUIE BARRAGAN, LEONARD | **COMPLAINT FOR DAMAGES AND**
   | BARRIOS, CARLOS BAZAN, DANIEL | **DEMAND FOR JURY TRIAL**
18 | BAZAN, STEVEN BELL, RICHARD |
   | BENTLEY, STEVEN BIAS, BRIAN | Judge Gail A. Andler
19 | BLESSING, LINDA BONNER, EILLEEN |
   | BORJA, TERRELL BOYKIN, OLLIE |
20 | BRASHEARS, RANDY BUDD, HUBERT |
   | BUSH, JR., WELLINGTON CABAI, |
21 | CARLOS CALDERON, JUAN |
   | CAMACHO, JUAN CAMPOS, MAURICE |
22 | CANNON, SEAN CARO, JOSE |
   | CARRILLO, CAROL CAUDLE, |
23 | CARLTON CHAMBERS, KEN |
   | CIANCIOSI, MICHAEL CLARK, |
24 | MICHAEL COHEN, KEVIN COMPISE, |
   | DANIEL CORTEZ, SR., THERESA |
25 | DAUGHERTY, BRIAN DECKER, |
   | AARON DEYON, DAVID DOMINGUEZ- |
26 | HERBERT, MARGIE DUARTE, |
   | EDWARD ENTWISLE, ROBERT FRIAR, |
27 | DANIEL GARCIA, |

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

EDGARDO GARCIA, JOHN L. GARCIA, JOHN S. GARCIA, ROBERT GONZALEZ, DANA GOWER, MITCH GRACE, DARRELL GREEN, RONALD GREENE, GEORGE GUERRA, JOSE GUERRERO, STEVEN GUTIERREZ, LINDA-JUDITH HARGRAVE, SHANE HARING, TONY HAYDEN, ANDREW J. HERNANDEZ, GERALD HOLT, ANTHONY W. JACKSON, JAY JACOBSON, AKOUB "JACK" KHOKASIAN, MIKE KIM, JEREMY KITABJIAN, PHILLIP LAKIN, DEREK LEE, GORDON LEE, STEVE LIEBERMAN, CURT LEONARD, ANDREW MACK, JOEL MACKAY, WILLIAM MADRID, GLEN MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, DAVID MCDONALD, LUIS MENDEZ, RUBEN MONTANEZ, FLORIA MORTON, CHARLES MUSE, MURIEL NG-BODE, JAMES B. NOBLE, LENN NORMAN, ARTHUR NOWELL, ANDRUS NORTHRUP, GARY PENDER, MARCOS PEREZ, JEFF PHILLIPS, DOUGLAS PRECIADO, JOHN PREECE, MARIANO PRIETO, STEVEN PRUITT, CHRISTINA RAMIREZ, EDWARD RAMOS, GERARDO RAMOS, JACQUELINE REGALADO, MARTHA REYES, CHERYL ROBINSON, RICHARD ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, LLOYD RUNNING, KENNETH RYNO, WILLIAM SALAZAR, FERDINAND SALGADO, EDWIN SANDOVAL, ANDY SEPULVEDA, SCOTT SHEARING, DOREEN SIMMONS, HOWARD SLACK, JOEL SOKOLOW, MARK SPURLOCK, DANIEL TASCIAN, VERNON THOMPSON, JUDI TREDY, GLEN VALVERDE, JOHN VANN, JOHN VARGAS, RENE VEGA, IGNACIO VILLAROS, JR., ERIC WAFER, RALPH WAINWRIGHT, ERIC WALTON, COREY WASHINGTON, KENNETH WHITAKER, DANNY WILSON, and JAMES WOODELL,

Plaintiffs,

-VS-

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

11

| | |
|---|---|
| 1 | COUNTY OF LOS ANGELES, a public entity, COUNTY OF LOS ANGELES |
| 2 | SHERIFF'S DEPARTMENT, a law enforcement agency in Los Angeles |
| 3 | County, LEE BACA, an individual, LARRY WALDIE, an individual, ED |
| 4 | ROGNER, an individual, KEVIN HEBERT, an individual, WILLIAM |
| 5 | FUJIOKA, an individual, PAMELA JOHNSON, an individual, GARY |
| 6 | GREENWOOD, an individual, TODD KOMMER, an individual, ANDREW |
| 7 | JACOB, an individual, KEVIN ZABORNIAK, an individual, LAMONT |
| 8 | STRINGER, an individual, CECILIA RAMIREZ, an individual, JOE SALAS, |
| 9 | an individual, JILL DESCHAMPS, an individual, REGINALD MEREDITH, an |
| 10 | individual, JENNY CHRISTIANSEN, an individual, RICHARD CONLEY, JR., |
| 11 | an individual, MAURICIA AVALOS, an individual, WILLIAM KENNEDY, |
| 12 | an individual, ROBERT ENGEL, an individual, PROFESSIONAL PEACE |
| 13 | OFFICERS ASSOCIATION aka PPOA, a union entity, KEITH SMITH, an individual, |
| 14 | LISA GARRETT, an individual, RALPH PLASENCIA, an individual, ANGELA |
| 15 | HUNT, an individual, and DOES 1 through 100, inclusive, |
| 16 | |
| 17 | Defendants. |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## GENERAL ALLEGATIONS

1.      There are 125 named Plaintiffs in this action.  All plaintiffs named in this Complaint are or were residents of the State of California.

2.      The two primary defendants in this action are Defendant COUNTY OF LOS ANGELES (hereafter LA COUNTY) and Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereafter LASD or LA COUNTY SHERIFF'S DEPARTMENT).  It is understood that Defendant LA COUNTY may later take the position that Defendant LA COUNTY SHERIFF'S DEPARTMENT should be dismissed as a party defendant because that law enforcement agency is an entity within LA COUNTY.  If such a request is made, the plaintiffs named herein will consider dismissing Defendant LA COUNTY SHERIFF'S DEPARTMENT with the understanding that the unlawful acts and omissions of this law enforcement agency and its employees, representatives, and agents will become the responsibility of Defendant LA COUNTY.

3.      There are individual defendants who will be named in this lawsuit where it is appropriate to do so.  These individual defendants will be identified, where possible, in the separate causes of action which follow.  On information and belief, it is alleged that all of these individual defendants are residents of the State of California.  On information and belief, at least two of these individual defendants- Deputy GARY GREENWOOD and Deputy PAMELA JOHNSON- are residents of the County of Orange, State of California, which is the venue chosen for this lawsuit.

4.      Up until on or about September 30, 2010, all plaintiffs were sworn peace officers in the State of California pursuant to the provisions of Penal Code §830.31.  Most of the plaintiffs herein were POST-Certified peace officers in the State of California.  As will be noted more specifically herein, **107 of the named 125 plaintiffs** in this Complaint are no longer sworn peace officers because of the unlawful actions of the Defendants; **18 of the** named plaintiffs in this Complaint have become probationary deputy sheriffs with LASD, but and have sustained various damages because of the unlawful actions of the defendants.

5.      The named plaintiffs herein were at least satisfactorily-performing sworn

1    police officers, and, further, were medically qualified to perform the peace officer position at

2    the Office of Public Safety when the adverse employment actions occurred. Defendants LA

3    COUNTY and LASD, however, rated **about 86%** of these police officers as deficient for

4    one reason or another in 2010.

5        6.      There will be two lawsuits filed in connection with this action by counsel.

6    This is the primary lawsuit because it pertains to those plaintiffs who are 40 years of age or

7    older as of September 30, 2010, and most of the affected plaintiffs are in the age-protected

8    class. The second lawsuit will be for those plaintiff who are under the age of 40 years as of

9    September 30, 2010.

10       7.      Up until on or about September 30, 2010, almost all of the 125 plaintiffs named

11    in this Complaint were certified as competent and qualified peace officers by the

12    Commission on Peace Officer Standards and Training (POST), which was established by the

13    California legislature in 1959. However, as a result of the unlawful actions of the

14    defendants, many of the plaintiffs in this action have lost their POST certifications. Further,

15    many of the plaintiffs herein have lost their ability to wear badges and carry weapons, and

16    some have since experienced episodes that have threatened their safety and the safety of their

17    families because they are now "civilians" and have been recognized by thugs with whom

18    they formerly had dealings as peace officers with the OPS.

19       8.      Up until on or about September 30, 2010, the named plaintiffs were sworn

20    peace officer employees of the now-defunct Los Angeles County Office of Public Safety

21    (hereafter OPS). After on or about September 30, 2010, the OPS ceased to exist and,

22    therefore, those former police officer employees of OPS who were not permitted to laterally

23    transfer into law enforcement positions with Defendant LA COUNTY SHERIFF'S

24    DEPARTMENT, have ceased to become peace officers in the State of California. It is

25    further anticipated that some of the former OPS peace officer employees who were permitted

26    to laterally transfer into law enforcement positions with the LASO will lose their jobs due to

27    further unlawful actions of the defendants while this lawsuit is pending.

28       9.      The former OPS was formed in 1998 by consolidating three Los Angeles

1  County security and law enforcement agencies—the Department of Parks and Recreation

2  Police, the Department of Health Services, and the Internal Services Department's Safety

3  Police.

4       10.    At its apex, the OPS was the fourth largest law enforcement agency in Los

5  Angeles County—it employed about 580 sworn police officers and about 160 civilian

6  personnel. The OPS also utilized about 750 contract security guards.  The mission statement

7  of the OPS was as follows:

8                    "To provide protection for patrons, employees, and

9                    properties of county departments which contract for

10                   such services, and to provide a safe environment

11                   for those who use county parks and recreation areas.

12                   The Office of Public Safety is committed to maintaining

13                   a level of professional competence among its sworn

14                   personnel that will ensure the safety of those receiving

15                   services, as well as protecting the safety of our police

16                   officers."

17      11.    Prior to on or about September 30, 2010, the OPS maintained four bureaus—

18  the Administrative Services Bureau, the Facilities Bureau, the Parks Services Bureau, and the

19  Health Services Bureau. The OPS had several specialized units, including Internal Affairs,

20  Background Investigations, Canine, Boat, Tactical Response Force, Weapons of Mass

21  destruction, and a reserve Mounted Unit.

22      12.    The OPS recruits had to be at least 20 years and six months old at the time of

23  hire, had to have a high school diploma or GED equivalent, had to have a California driver's

24  license, and had to pass all phases of the selection process, consisting of a written

25  examination, an oral interview, a background investigation with a polygraph examination,

26  and medical and psychological examinations.

27      13.    OPS sworn police personnel were killed and injured in the line of duty

28  protecting the residents of Los Angeles County.  OPS sworn personnel were proud of their

1  peace officer status and their role as public servants.  On a daily basis, they would put their

2  respective lives on the line for citizens, including, but not limited, those private citizens who

3  worked "civilian" jobs for Defendant LA COUNTY.  As the story unfolds, these same

4  private citizens who worked "civilian" jobs for Defendant LA COUNTY would demonstrate

5  an almost unprecedented zeal and delight in destroying the careers of these fine OPS officers.

6      14.    The OPS strictly adhered to the Public Safety Officer Procedural Bill of Rights

7  (hereafter POBRA), which is codified at Government Code §§ 3300-3313 when one of its

8  officers was involved in an allegation of misconduct or when a punitive action was about to

9  or had been taken by the OPS.

10      15.    Plaintiffs are informed and believe, and thereon allege, that the OPS officers

11  involved in this action were in fact more qualified to serve than new hires for Defendant LA

12  COUNTY SHERIFF'S DEPARTMENT, since OPS required its officers to have either a

13  POST certification and/or prior law enforcement experience whereas said Defendant LA

14  COUNTY SHERIFF'S DEPARTMENT did not have those requirements for its new hires.

15      16.    In October, 1998, class members who were OPS police officers filed a

16  protected action, alleging causes of action for violations of the California Fair Employment

17  and Housing Act (FEHA, Government Code §12940 et seq.) and federal law, including Title

18  VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.).  The essence of the lawsuit

19  alleged racial and/or national origin discrimination against the Defendants LA COUNTY and

20  LA COUNTY SHERIFF'S DEPARTMENT.  The class action was entitled George Frank, et

21  al. v. County of Los Angeles, et. al., and the venue was in the Los Angeles County Superior

22  Court.  Ultimately, the case was tried by a jury and the aggrieved plaintiffs were awarded

23  millions of dollars.

24      17.    On appeal, the decision in the Frank case was reversed by the Second District

25  Court of Appeal in a decision on or about April 12, 2007.  The California Supreme Court

26  denied review on or about August 8, 2007.

27      18.    Following the verdict in the trial court in the Frank lawsuit, members of

28  Defendant LA COUNTY's Board of Supervisors Angeles County Board of Supervisors

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
7

1  publically declared their intention to "disband" the OPS after the legal proceedings were
2  culminated.  In particular, current Supervisor Don Knabe, on or about June 20, 2002, stated
3  words to the effect of "In the face of $100 million, disbanding (the OPS) is an option we
4  have to look at...It has to be something that would be under consideration, to eliminate
5  them...I just consider this award outrageous...It's unbelievable that someone can rule against
6  us like this."  Current Supervisor Michael Antonovich echoed the sentiments of Supervisor
7  Knabe, stating words to the effect of "the sad part is that many people in the OPS could end
8  up losing their position because of the action of their union."  It has taken awhile, but the
9  Board of Supervisors has made good on their "threat".  The OPS has now been disbanded,
10  and hundreds of lives and careers have been decimated or diminished.
11       19.    Almost immediately following the Supreme's Court denial of review of the
12  appellate court decision in August, 2007, Defendant LA COUNTY and its CEO initiated a
13  feasibility study on September 20, 2007 to be conducted of the OPS law enforcement
14  organization.  This action was not a coincidence.  Reportedly, at issue in the feasibility study
15  was to determine which option, either consolidation or an independent department, would be
16  the most viable for the County of Los Angeles.  In fact, it later became apparent that the
17  initiation of a feasibility study was a ruse and was an effort to disband the OPS at the behest
18  of LA COUNTY's Board of Supervisors who were still smarting over the jury verdict
19  received by the OPS in the Frank lawsuit.  Plaintiffs are informed and believe, and thereon
20  allege, that Defendant LA COUNTY immediately started "take over" studies of the OPS by
21  Co-Defendant LA COUNTY SHERIFF'S DEPARTMENT for the purpose of disbanding the
22  OPS because of the angst created by the filing and prosecution of the Frank lawsuit by OPS
23  sworn police officer personnel.
24       20.    After the "take over" studies were completed, the Board of Supervisors of
25  Defendant LA COUNTY set aside sufficient funding on or about September 22, 2009 to
26  complete what it called the "merger" between the OPS and Co-Defendant LA COUNTY
27  SHERIFF'S DEPARTMENT.  It also became apparent that, in 2009, it would not save, and
28  would cost, the County money to "merge" the functions and personnel of the OPS and

1 | Defendant LA COUNTY SHERIFF'S DEPARTMENT.  In these strained economic times,
2 | any employment action in Defendant LA COUNTY which costs, rather than saves, the
3 | citizens money has to be viewed as unlawfully motivated.

4 |     21.    On or about December 15, 2009, the Board of Supervisors of Defendant LA
5 | COUNTY voted 4 to 1 to "merge" the OPS into Defendant LA COUNTY SHERIFF'S
6 | DEPARTMENT.  At the public forum portion of the meeting, the following occurred:

7 |     A)    Defendant LASD CAPTAIN ED ROGNER told the Board of
8 | Supervisors that "I will be commanding the transition and answering directly to the
9 | Undersheriff (i.e. Defendant LASD UNDERSHERIFF LARRY WALDIE)."

10 |     B)    Defendant LA COUNTY CEO WILLIAM FUJIOKA admitted to the
11 | Board of Supervisors that "...essentially the OPS would no longer exist...those individuals
12 | who are qualified will become deputy sheriffs....the Sheriff will, in turn, be responsible for
13 | managing or providing the overall management of the current functions that are provided by
14 | the OPS, including park patrol and also the security of our various County facilities, from
15 | D.P.S.S,, Health Services, and even this particular facility.  And so we'll have a single law
16 | enforcement agency within the County of Los Angeles that I believe we should have.  And
17 | we'll have our law enforcement, our Sheriff, the person responsible for law enforcement
18 | activities herein the County, responsible for what OPS currently handles."

19 |     C)    Defendant LA COUNTY CEO WILLIAM FUJIOKA also admitted to
20 | Board of Supervisors that Defendant LA COUNTY SHERIFF LEE BACA made a personal
21 | commitment not to cut the budget for the service of the OPS functions that would soon be
22 | assumed by Defendant LASD.

23 |     D)    Defendant LASD CAPTAIN ED ROGNER, despite his stated position
24 | to others in the management of the OPS that the planned action would violate pertinent
25 | provisions of the Public Safety Officers Procedural Bill of Rights (hereafter "POBRA" or
26 | "the POBRA"), represented to the Board of Supervisors that a polygraph examination, a
27 | background examination, an *age-appropriate* medical examination and a psychological
28 | examination, would "all be conducted".

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
9

E)      When asked the difference between a medical examination and an *"age-appropriate"* medical examination by Supervisor Antonovich, Defendant LASD CAPTAIN ED ROGNER stated as follows: "The height-weight standards for an entry level deputy sheriff at age 21 are fairly strict, and probably nobody over the age of 40 would pass those requirements, and so by doing age-appropriate, it allows the medical staff to look at the person's total health situation, not just their height and weight, as to whether or not they feel they could still perform the functions."

F)      Defendant LA COUNTY CEO WILLIAM FUJIOKA represented to the Board of Supervisors as follows: "There's one important thing though, is the overreaching point that I want to bring focus to.  We are not going to compromise the standards of the LA County Sheriff's Department.  There will not be individuals who will be allowed to be part of this department, regardless of the process or program, who do not meet the qualifications or are not able to do the job.  The age-appropriate medical does not compromise.  The individuals, in the assessment of our occupational health division, will still be fully capable of performing this job."

G)      BRIAN MORIGUCHI, President of Co-Defendant PROFESSIONAL PEACE OFFICERS IN LA COUNTY (hereafter "PPOA") and then a lieutenant in Defendant LASD, informed the Board of Supervisors that PPOA represented thousands of peace officers in Los Angeles County, including the 400 plus officers in the OPS. He represented to the Board of Supervisors that all of the OPS employees had been notified about what was to occur with respect to the so-called "merger- workforce reduction".  He also represented that the OPS officers were "overwhelmingly in favor" of the proposal for "consolidation".  He made a personal plea that the Board of Supervisors vote in favor of the planned "merger" and in favor of Co-Defendants FUJIOKA's and BACA's support of the "consolidation".

H)      Defendant LA COUNTY CEO FUJIOKA then indicated an attempt would be made to find civilian jobs within LA COUNTY for those who did not "qualify" to remain as police officers and who would suffer the action of losing their peace officer jobs.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
10

1    He admitted, however, that the final outcome was impossible to estimate.  Even so, he

2    promised the Board of Supervisors that "we have a strong commitment to make every

3    appropriate and every reasonable effort to address the needs" for each OPS officer.

4         22.    The two members of the Board of Supervisors who had made retaliatory

5    statements about disbanding the OPS following the trial of the aforementioned Frank case

6    were directly involved in initiating the voting process for what was to occur.  Supervisor

7    Knabe made the motion and it was seconded by Supervisor Antonovich.  The vote taken in

8    favor of the proposal was 4-1, with Supervisor Gloria Molina the sole vote against the

9    process.

10        23.    As noted, plaintiffs are informed and believe, and thereon allege, that the

11   "merger" of the OPS into Defendant LA COUNTY SHERIFF'S DEPARTMENT was in

12   direct retaliation for the participation of sworn police officer personnel in the OPS in the

13   aforesaid Frank lawsuit.

14        24.    As noted, plaintiffs are informed and believe, and thereon allege, that proof of

15   the unlawful motive of Defendant LA COUNTY in disbanding the OPS by "merging" it with

16   Co-Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT is that the process

17   did not save and in fact cost Los Angeles County money.  Given the bleak economic forecast

18   which existed in December, 2009, personnel moves which cost rather than save a county

19   government money must, by definition, be prompted by an unlawful and/or retaliatory

20   motive.

21        25.    Defendant LA COUNTY is named as a defendant in this lawsuit based on the

22   allegations in this Complaint and based on the fact that it was a public entity employer of

23   all of the plaintiffs named in this Complaint and is still the public entity employer of many of

24   the plaintiffs.  Many of the plaintiffs herein, after they were unlawfully "disqualified" from

25   their law enforcement positions and careers, became civilian employees of Defendant LA

26   COUNTY, although earning a lot less money and enjoying a lot less benefits than their peace

27   officer counterparts.  Defendant LA COUNTY ignored, and continues to ignore, the fact that

28   the former OPS officers, although County employees, were different than their civilian

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
11

1   counterparts.  Police officers in this state have rights that are not afforded to their civilian

2   counterparts in government employment.  By engaging in the actions subsequently referred

3   to herein, Defendant LA COUNTY and Defendant LA COUNTY SHERIFF'S

4   DEPARTMENT committed wholesale violations of the POBRA and destroyed the careers

5   and the standard of living of families of many of the OPS employees.

6        26.    Defendant LA COUNTY, although claiming that the OPS was being "merged"

7   into Defendant LA COUNTY SHERIFF'S DEPARTMENT, did not treat the job action as a

8   true "merger".  Customarily, in a true "merger", two or more entities combine to form a

9   single entity, and sound employment policies and practices dictate that employees of each of

10   the entities are subjected to the same scrutiny in performance and other factors where

11   consolidation of personnel or functions is required.  In other words, if polygraph

12   examinations, background investigations, medical examinations, and psychological

13   examinations are the methods used to determine who will remain employed after the

14   "merger", then every person in each of the entities affected by the "merger" have to undergo

15   those examinations and investigations. In this "merger", however, only the OPS peace officer

16   personnel were subjected to examinations and investigations and not the deputy sheriffs from

17   Defendant LA COUNTY SHERIFF'S DEPARTMENT—why?  Because the "merger" was a

18   ruse for disbanding the OPS in retaliation for the <u>Frank</u> lawsuit and because deputy sheriffs

19   were treated differently in terms of their POBRA rights in that they could not be subjected to

20   additional examinations and investigations because it would run afoul of their inalienable

21   rights under the POBRA.

22        27.    Defendant LA COUNTY SHERIFF'S DEPARTMENT is being named as a

23   defendant in this lawsuit in an abundance of caution.  Plaintiffs recognize that Defendant LA

24   COUNTY SHERIFF'S DEPARTMENT is a law enforcement agency within Defendant LA

25   COUNTY and, as with other litigation of this type, Defendant LA COUNTY will agree to

26   assume any responsibility for damages on behalf of Defendant LA COUNTY SHERIFF'S

27   DEPARTMENT.

28        28.    There are individual defendants being named in this lawsuit as to specific

1  causes of action.   Where necessary, these individual defendants will be specifically
2  identified with the particular cause of action.  Venue in Orange County, California is
3  appropriate because one or more of these individual defendants is a resident of Orange
4  County and has been a resident of this County at all times herein mentioned.
5       29.    Each plaintiff herein has appropriately and timely filed government claims
6  against Defendant LA COUNTY, LA COUNTY SHERIFF'S DEPARTMENT, and
7  individual defendant to be identified later. These government claims were filed at different
8  time. The initial government claims were filed on August 10, 2010 and were rejected on
9  September 27, 2010. All other subsequently-filed government claims were rejected after
10  September 27, 2010.   All of the government claims filed on behalf of all 125 plaintiffs have
11  been rejected, either by affirmative conduct or by operation of law.  A copy of the
12  government claims and the rejections for each of the 125 plaintiffs named herein will be
13  provided upon request.
14       30.    Each of the 125 plaintiffs herein has appropriately and timely filed an
15  administrative complaint with the California Department of Fair Employment and Housing,
16  asking for "right to sue" letters for claims regarding age discrimination, disability
17  discrimination, and retaliation.  The DFEH has recently closed its Orange County office and
18  has now referred all administrative complaints to be filed to its office in Los Angeles County.
19  Some of the required "right to sue" letters have been obtained and others are stuck in the
20  backlog.  The director for the DFEH's office in Los Angeles County has promised that "right
21  to sue" letters will be provided for each plaintiff herein a timely manner.  If these "right to
22  sue" letters are not all provided by the time of the filing of this Complaint, the affected
23  plaintiffs reserve the right to amend this Complaint to allow for those "right to sue" letters.
24  ///
25  ///
26  ///
27  ///
28  ///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
13

## FIRST CAUSE OF ACTION

**(INTENTIONAL AGE DISCRIMINATION- ARISING UNDER THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACTION- BY ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100)**

31.     Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 30 as though fully set forth..

32.     At all times herein mentioned, the California Fair Employment and Housing Act, codified at Government Code §12900, et. seq., was in full force and effect.

33.     Pursuant to Government Code §12920, discrimination based on a person's age is an unlawful employment practice and is against the public policy of the State of California.

34.     Pursuant to Government Code §12926(b), "age" is defined as the chronological age of any individual who has reached his or her 40th birthday.  All plaintiffs named in this Complaint reached their respective 40th birthday on or before September 30, 2010.

35.     Pursuant to Government Code §12940(a), it is an unlawful employment practice to discriminate against any employee in California in compensation or in the terms, conditions, or privileges of employment.

36.     At all times herein mentioned, all plaintiffs named in this Complaint were employees of Defendant LA COUNTY, which, pursuant to Government Code §12926(d) was a qualified employer under the FEHA.

37.     At all times herein mentioned, each plaintiff named in this Complaint belonged to an age-protected class, in that he or she was at least 40 years of age as of September 30, 2010.

38.     Each plaintiff named in this Complaint was subjected to an adverse employment action in that he or she was terminated from his or her respective peace officer position with the Office of Public Safety as of on or about September 30, 2010, or was denied salary and benefits to which he or she was entitled.  As noted previously herein, the

1   Office of Public Safety was a law enforcement organization within Defendant LA COUNTY.

2       39.    At all times herein mentioned, each plaintiff named in this Complaint was also

3   subjected to a second adverse employment action in that he or she was not retained as a

4   sworn peace officer after the aforesaid "workforce merger", or, if retained as a peace officer,

5   he or she lost salary and benefits to which he or she would otherwise have been entitled if he

6   or she had been "laterally transferred" into a deputy sheriff position with Defendant LASD.

7       40.    At all times herein mentioned, each plaintiff named in this Complaint was

8   treated differently in the terms, conditions, and privileges of employment than similarly

9   situated employees of the Office of Public Safety and/or the Los Angeles County Sheriff's

10  Department who were under the age of 40 years as of on or about September 30, 2010.

11      41.    Each plaintiff named in this Complaint is informed and believes, and thereon

12  alleges, that he and she were subjected to intentional age discrimination in the terms,

13  conditions, and privileges of their employment as sworn police officers, and were further

14  terminated from the Office of Public Safety and were disqualified from "merging" into

15  Defendant LA COUNTY SHERIFF'S DEPARTMENT as deputy sheriffs of equivalent rank,

16  grade, and pay, based on facts which include, but are not limited to, the following:

17          A)    There were various individual background investigators who were

18  deputy sheriffs with Defendant LA COUNTY SHERIFF'S DEPARTMENT.  Each

19  deputy sheriff/ background investigator had unfettered discretion to determine which sworn

20  police officers from the Office of Public Safety would "pass" their background investigation

21  and would be eligible to laterally transfer into the deputy sheriff position.  There was not a

22  single deputy sheriff/ background investigator interviewing and/or testing all the candidates

23  so that a standard utilized for selection or disqualification could be adhered to and/or

24  determined.

25          B)    Similarly, there were various polygraphers hired by Defendant LA

26  COUNTY to determine which sworn police officers would "pass" their polygraphs and

27  would become eligible to eventually transition into the deputy sheriff position.  Each

28  polygrapher had unfettered discretion to determine which sworn police officers from the

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
15

1   Office of Public Safety would "pass" their polygraph examination(s) and would be eligible to

2   eventually transfer into the deputy sheriff position.  There was not a single polygrapher

3   examining all the candidates so that a standard utilized for selection or disqualification could

4   be adhered to and/or determined.

5           C)     Neither Defendant LA COUNTY nor Defendant LA COUNTY

6   SHERIFF'S DEPARTMENT provided particularized training to the background

7   investigators/ deputy sheriffs and/or polygraphers who were involved in the selection

8   process.  Therefore, these background investigators/ deputy sheriffs and/or polygraphers

9   were left to their own devices to determine the questions that would be asked, the methods by

10   which information could be obtained, and the manner in which the information would be

11   used.  Many of the background investigators were promised promotions, and then were

12   "rewarded" with promotions to the sergeant position after "failing" plaintiffs in the

13   background investigation.

14           D)     Prior to the background investigation, neither Defendant LA COUNTY

15   nor Defendant LA COUNTY SHERIFF'S DEPARTMENT provided any guidelines for the

16   deputy sheriff/ background investigators and/or polygraphers with respect to the

17   disqualification of police officers as to protected class distinctions such, for example, as

18   gender, race, and age.  Prior to the polygraph examinations and the background investigation,

19   neither Defendant LA COUNTY nor Defendant LA COUNTY SHERIFF'S DEPARTMENT

20   had any specific survey information of the ages of the OPS officers seeking lateral transfer

21   and whether or not they were below 40 years of age or 40 years of age or older.  Before

22   terminating a large number of employees, and according to standard and sound human

23   resources practices, it is crucial that such matters as the gender, race, and age of the potential

24   termination and retention should be known to the decision-makers.  Otherwise, there is a real

25   danger of the large termination unfairly and adversely impacting a particular group of

26   employees (i.e. as to age or some other protected class interest).

27           E)     Neither Defendant LA COUNTY nor Defendant LA COUNTY

28   SHERIFF'S DEPARTMENT established any standardized procedures for the various

1   disqualification categories.  Thus, for example, one female plaintiff peace officer was

2   terminated and disqualified from lateral transfer into a deputy sheriff position because her

3   background investigator determined she had exhibited "impetuous behavior".  In another

4   example, another deputy sheriff/ background investigator contacted a plaintiff's wife and

5   informed her of confidential information he had obtained during the background

6   investigation, asking her "did you know that your husband had an affair?"  In another

7   example, one Hispanic plaintiff was disqualified for "gang *affiliation*" because he had a

8   distant relative who may have been a gang member while an African-American plaintiff who

9   also had a relative who may have been a gang member was disqualified for "gang

10   *association*".

11          F)   Some deputy sheriff/ background investigators were more critical and

12   more "punitive" than others, leading to inequities in the selection process.  On information

13   and belief, one particular deputy sheriff/ background investigator (Defendant PAMELA

14   JOHNSON) disqualified about 90% of the OPS officers assigned to her investigation

15   process.  It is likely that one or more deputy sheriffs/ background investigators and/or

16   polygraphers had a discriminatory animus based on the age of the OPS peace officers whom

17   they were investigating.

18          G)   Both Defendant LA COUNTY and Defendant LA COUNTY

19   SHERIFF'S DEPARTMENT treated the so-called "workforce reduction-merger" and the so-

20   called lateral transfer into the deputy sheriff position as a process of hiring new applicants for

21   the deputy sheriff positions.  Plaintiffs in fact were not new hires or new applicants, and

22   almost all of them had been POST-certified police officers for 10, 20, and 30 years.  As a

23   group, therefore, plaintiffs were considerably older than new hires who only had to meet the

24   minimum age of 21 years to become eligible for hire as a deputy sheriff.  Because plaintiffs

25   were treated as new hires, even though a majority of them were over the age of 40 years,

26   discrimination based on age was bound to occur, particularly when standard policies and

27   procedures for disqualification and lateral transfer were not forthcoming.

28          H)   As more particularly noted a companion Complaint under the rubric

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
17

26

1   of disability discrimination causes of action, the OPS officers who did "pass" the polygraph

2   and background investigation were required to take pre-employment medical and

3   psychological examinations.  The medical examinations to which they were subjected were

4   not "age appropriate", meaning that they were examined as if they were new hires in their

5   early 20's. A considerable number of the plaintiffs who were age 40 years and over "failed"

6   the inappropriate medical examinations for such things as some hearing loss and color vision

7   issues, as well as other maladies which are normally associated with the aging process.

8   These plaintiffs within the protected class of age were medically disqualified, and lost their

9   jobs as police officers, whereas similarly-situated deputy sheriffs, who were also over the age

10  of 40 years and who undoubtedly had the same medical conditions associated with aging,

11  were not affected and were able to continue with their respective careers in law enforcement.

12         I)      As more particularly noted in the Retaliation- FEHA cause of action in

13  this Complaint, some of the polygraphers and all of the background investigators were law

14  enforcement officers employed by Defendants LA COUNTY and LA COUNTY SHERIFF'S

15  DEPARTMENT.  For a number of years prior to this job action, plaintiffs, as law enforcement

16  officers, were looked at within disdain and lack of respect by law enforcement officers with

17  Defendant LA COUNTY SHERIFF'S DEPARTMENT, and there was a considerable amount

18  of animosity towards the plaintiffs and their colleagues.  Having law enforcement officers of

19  the LA COUNTY SHERIFF'S DEPARTMENT do some of the polygraphs and perform all of

20  the background investigations could be analogized to having "the fox run the hen house".  The

21  polygraphers and background investigators who felt and exhibited that animosity were

22  improperly motivated by considerations of age in determining whether or not plaintiffs would

23  "pass" the polygraph and background investigations.

24         J)      Prior to the polygraph and background investigation process, Defendants

25  LA COUNTY and LA COUNTY SHERIFF'S DEPARTMENT had an agenda to allow a

26  specific number of the former OPS officers to "pass" the polygraph and background

27  investigation process and/or to pass the medical and psychological examination.  After

28  "passing" the polygraph and background investigation process, as well as "passing" the

1  medical and psychological examination, a particular OPS officer would be "laterally

2  transferred" into a deputy sheriff position and would be placed on probationary status for one

3  year. Following the so-called "lateral transfer", many of the OPS officers who had "passed"

4  the process would be placed in beginning deputy positions.  Beginning deputy positions

5  included staffing the jails and to be placed in patrol functions.  Defendants LA COUNTY and

6  LA COUNTY SHERIFF'S DEPARTMENT considered the deputy positions staffing the jails

7  and/or performing patrol functions to be a job for individuals who were under the age of 40

8  years.  On information and belief, one Captain employed by Defendant LA COUNTY

9  SHERIFF'S DEPARTMENT made and/or wrote a statement to the effect that: "when these

10  guys (former OPS officers who had been permitted to "laterally transfer" into deputy sheriff

11  positions) can't cut it because they are too old, we will get rid of them on probation."

12                    K)      Defendants LA COUNTY and LA COUNTY SHERIFF'S

13  DEPARTMENT also had issues with respect to the amount of pay that plaintiffs were

14  earning.  Plaintiffs, since they were over the age of 40 years as of September 30, 2010,

15  generally earned more money than their younger counterparts because they had been POST-

16  certified sworn police officers longer than their younger counterparts.  Defendants took the

17  very public stance that, under no circumstances, would any of the former OPS officers who

18  were permitted to "laterally transfer" into deputy sheriff positions receive a raise in pay as a

19  result of the transfer.  Although not affecting most of the plaintiffs in this cause of action,

20  Defendants' position did affect those former OPS officers herein who "passed" all the

21  examinations and requirements and then who became deputy sheriffs.  For example, a plaintiff

22  who had been a relatively long-time sergeant in the former OPS had "passed" the

23  examinations and became a deputy sheriff II with Defendant LA COUNTY SHERIFF'S

24  DEPARTMENT.  This plaintiff should have not been reduced in rank and grade and should

25  have entered the workforce with LA COUNTY SHERIFF'S DEPARTMENT as a sergeant of

26  equivalent rank and grade as he had enjoyed at the former OPS.  The pay difference between a

27  top-step sergeant and a deputy sheriff II in LA COUNTY SHERIFF'S DEPARTMENT is

28  substantial.  Again, although not affecting most of the plaintiffs in this cause of action, this

1   disparity is evidence of age discrimination against plaintiffs in a companion Complaint, and it
2   is also a violation of the FEHA as codified at Government Code §12941.

3          L)     As previously noted herein, there are 125 plaintiffs named in this lawsuit,
4   all of whom were within the age-protected class.  75 of these plaintiffs were disqualified for
5   reasons related to the polygraph/ background.  32 of these plaintiffs were disqualified for
6   medical, related medical, or psychological reasons.  Only 18 of these plaintiffs were permitted
7   to "laterally transfer" into the deputy sheriff position, with some of these 18 plaintiffs initially
8   being excluded for medical, related medical, and/or psychological reasons (i.e. however, their
9   appeals were granted).  In other words, about 86% of these age-protected plaintiffs were
10  disqualified, an extremely high number given that all of the plaintiffs named herein were
11  functioning police officers able to perform their jobs at least on a satisfactory basis prior to the
12  adverse employment actions discussed herein.

13         42.    As a direct result of the aforesaid intentional age discrimination, each plaintiff
14  herein has sustained, and will continue to sustain for a period of time, compensatory damages,
15  including, but not limited to, lost earnings and lost future earning capacity, all to his or her
16  detriment in an amount according to proof at the trial of this action.

17         43.    As a further direct result of the aforesaid intentional age discrimination, each
18  plaintiff herein has sustained, and will continue to sustain for a period of time, general (non-
19  economic) damages in an amount according to proof at the trial of this action.

20         44.    Each plaintiff herein, and his or her counsel of record, are entitled to their
21  reasonable attorney's fees and costs in an amount according to proof after trial pursuant to
22  Government Code § 12965(b).

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## SECOND CAUSE OF ACTION

**(AGE DISCRIMINATION BASED ON DISPARATE IMPACT- ARISING UNDER THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT- BY ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100)**

45.     Paragraphs 1 through 44 are realleged and incorporated herein by this reference as though fully set forth.

46.     At all times herein mentioned, the California Fair Employment and Housing Act, codified at Government Code §12900, et. seq., was in full force and effect.

47.     Pursuant to Government Code §12920, discrimination based on a person's age is an unlawful employment practice and is against the public policy of the State of California.

48.     Pursuant to Government Code §12926(b), "age" is defined as the chronological age of any individual who has reached his or her 40th birthday.  All plaintiffs named in this Complaint reached their respective 40th birthday on or before September 30, 2010.

49.     Pursuant to Government Code §12940(a), it is an unlawful employment practice to discriminate against any employee in California in compensation or in the terms, conditions, or privileges of employment.

50.     Pursuant to Government Code §12941, it is an unlawful employment practice to discriminate against any employee in California in compensation or in the terms, conditions, or privileges of employment, even if the discrimination is not intentional but has a disparate impact on those 40 years of age or older.

51.     At all times herein mentioned, all plaintiffs named in this Complaint were employees of Defendant LA COUNTY, which, pursuant to Government Code §12926(d) was a qualified employer under the FEHA.

52.     At all times herein mentioned, each plaintiff named in this Complaint belonged to an age-protected class, in that he or she was at least 40 years of age as of September 30, 2010.

53.     Each plaintiff named in this Complaint was subjected to an adverse

employment action in that he or she was terminated from his or her respective peace officer

position with the Office of Public Safety as of on or about September 30, 2010, or was denied

salary and benefits to which he or she was entitled. As noted previously herein, the

Office of Public Safety was a law enforcement organization within Defendant LA COUNTY.

54.     At all times herein mentioned, each plaintiff named in this Complaint was also

subjected to a second adverse employment action in that he or she was not retained as a sworn

peace officer after the aforesaid "workforce merger", or, if retained as a peace officer, he or

she lost salary and benefits to which he or she would otherwise have been entitled if he or she

had been "laterally transferred" into a deputy sheriff position with Defendant LASD.

55.     At all times herein mentioned, each plaintiff named in this Complaint was

treated differently in the terms, conditions, and privileges of employment than similarly

situated employees of the Office of Public Safety and/or the Los Angeles County Sheriff's

Department who were under the age of 40 years as of on or about September 30, 2010.

56.     Each plaintiff named in this Complaint is informed and believes, and thereon

alleges, that he and she were subjected to intentional age discrimination in the terms,

conditions, and privileges of their employment as sworn police officers, and were further

terminated from the Office of Public Safety and were disqualified from "merging" into

Defendant LA COUNTY SHERIFF'S DEPARTMENT as deputy sheriffs of equivalent rank,

grade, and pay, based on facts which include, but are not limited to, the following:

A)     There were various individual background investigators who were

deputy sheriffs with Defendant LA COUNTY SHERIFF'S DEPARTMENT. Each

deputy sheriff/ background investigator had unfettered discretion to determine which sworn

police officers from the Office of Public Safety would "pass" their background investigation

and would be eligible to laterally transfer into the deputy sheriff position. There was not a

single deputy sheriff/ background investigator interviewing and/or testing all the candidates so

that a standard utilized for selection or disqualification could be adhered to and/or determined.

B)     Similarly, there were various polygraphers hired by Defendant LA

1   COUNTY to determine which sworn police officers would "pass" their polygraphs and would

2   become eligible to eventually transition into the deputy sheriff position. Each

3   polygrapher had unfettered discretion to determine which sworn police officers from the

4   Office of Public Safety would "pass" their polygraph examination(s) and would be eligible to

5   eventually transfer into the deputy sheriff position. There was not a single polygrapher

6   examining all the candidates so that a standard utilized for selection or disqualification could

7   be adhered to and/or determined.

8          C)      Neither Defendant LA COUNTY nor Defendant LA COUNTY

9   SHERIFF'S DEPARTMENT provided particularized training to the background

10  investigators/ deputy sheriffs and/or polygraphers who were involved in the selection process.

11  Therefore, these background investigators/ deputy sheriffs and/or polygraphers were left to

12  their own devices to determine the questions that would be asked, the methods by which

13  information could be obtained, and the manner in which the information would be used.

14  Many of the background investigators were promised promotions, and then were "rewarded"

15  with promotions to the sergeant position after "failing" plaintiffs in the background

16  investigation.

17         D)      Prior to the background investigation, neither Defendant LA COUNTY

18  nor Defendant LA COUNTY SHERIFF'S DEPARTMENT provided any guidelines for the

19  deputy sheriff/ background investigators and/or polygraphers with respect to the

20  disqualification of police officers as to protected class distinctions such, for example, as

21  gender, race, and age. Prior to the polygraph examinations and the background investigation,

22  neither Defendant LA COUNTY nor Defendant LA COUNTY SHERIFF'S DEPARTMENT

23  had any specific survey information of the ages of the OPS officers seeking lateral transfer

24  and whether or not they were below 40 years of age or 40 years of age or older. Before

25  terminating a large number of employees, and according to standard and sound human

26  resources practices, it is crucial that such matters as the gender, race, and age of the potential

27  termination and retention should be known to the decision-makers. Otherwise, there is a real

28  danger of the large termination unfairly and adversely impacting a particular group of

1   interest).

2        E)    Neither Defendant LA COUNTY nor Defendant LA COUNTY

3   SHERIFF'S DEPARTMENT established any standardized procedures for the various

4   disqualification categories.  Thus, for example, one female plaintiff peace officer was

5   terminated and disqualified from lateral transfer into a deputy sheriff position because her

6   background investigator determined she had exhibited "impetuous behavior".  In another

7   example, another deputy sheriff/ background investigator contacted a plaintiff's wife and

8   informed her of confidential information he had obtained during the background

9   investigation, asking her "did you know that your husband had an affair?"  In another

10  example, one Hispanic plaintiff was disqualified for "gang *affiliation*" because he had a

11  distant relative who may have been a gang member while an African-American plaintiff who

12  also had a relative who may have been a gang member was disqualified for "gang

13  *association*".

14       F)    Some deputy sheriff/ background investigators were more critical and

15  more "punitive" than others, leading to inequities in the selection process.  On information

16  and belief, one particular deputy sheriff/ background investigator (Defendant PAMELA

17  JOHNSON) disqualified about 80% of the OPS officers assigned to her investigation process.

18  It is likely that one or more deputy sheriffs/ background investigators and/or polygraphers had

19  a discriminatory animus based on the age of the OPS peace officers whom they were

20  investigating.

21       G)    Both Defendant LA COUNTY and Defendant LA COUNTY

22  SHERIFF'S DEPARTMENT treated the so-called "workforce reduction-merger" and the so-

23  called lateral transfer into the deputy sheriff position as a process of hiring new applicants for

24  the deputy sheriff positions.  Plaintiffs in fact were not new hires or new applicants, and many

25  had been POST-certified police officers for 10, 20, and 30 years.  As a group, therefore,

26  plaintiffs were considerably older than new hires who only had to meet the minimum age of

27  21 years to become eligible for hire as a deputy sheriff.  Because plaintiffs

28  were treated as new hires, even though a majority of them were over the age of 40 years,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
24

1   discrimination based on age was bound to occur, particularly when standard policies and

2   procedures for disqualification and lateral transfer were not forthcoming.

3           H)   As more particularly noted a companion Complaint under the rubric

4   of disability discrimination causes of action, the OPS officers who did "pass" the polygraph

5   and background investigation were required to take pre-employment medical and

6   psychological examinations.  The medical examinations to which they were subjected were

7   not "age appropriate", meaning that they were examined as if they were new hires in their

8   early 20's. A considerable number of the plaintiffs who were age 40 years and over "failed"

9   the inappropriate medical examinations for such things as some hearing loss and color vision

10  issues, as well as other maladies which are normally associated with the aging process.  These

11  plaintiffs within the protected class of age were medically disqualified, and lost their jobs as

12  police officers, whereas similarly-situated deputy sheriffs, who were also over the age of 40

13  years and who undoubtedly had the same medical conditions associated with aging, were not

14  affected and were able to continue with their respective careers in law enforcement.

15          I)   As more particularly noted in the Retaliation- FEHA cause of action in

16  this Complaint, some of the polygraphers and all of the background investigators were law

17  enforcement officers employed by Defendants LA COUNTY and LA COUNTY SHERIFF'S

18  DEPARTMENT.  For a number of years prior to this job action, plaintiffs, as law enforcement

19  officers, were looked at within disdain and lack of respect by law enforcement officers with

20  Defendant LA COUNTY SHERIFF'S DEPARTMENT, and there was a considerable amount

21  of animosity towards the plaintiffs and their colleagues.  Having law enforcement officers of

22  the LA COUNTY SHERIFF'S DEPARTMENT do some of the polygraphs and perform all of

23  the background investigations could be analogized to having "the fox run the hen house".  The

24  polygraphers and background investigators who felt and exhibited that animosity were

25  improperly motivated by considerations of age in determining whether or not plaintiffs would

26  "pass" the polygraph and background investigations.

27          J)   Prior to the polygraph and background investigation process, Defendants

28  LA COUNTY and LA COUNTY SHERIFF'S DEPARTMENT had an agenda to allow a

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
25

1 specific number of the former OPS officers to "pass" the polygraph and background
2 investigation process and/or to pass the medical and psychological examination. After
3 "passing" the polygraph and background investigation process, as well as "passing" the
4 medical and psychological examination, a particular OPS officer would be "laterally
5 transferred" into a deputy sheriff position and would be placed on probationary status for one
6 year. Following the so-called "lateral transfer", many of the OPS officers who had "passed"
7 the process would be placed in beginning deputy positions. Beginning deputy positions
8 included staffing the jails and to be placed in patrol functions. Defendants LA COUNTY and
9 LA COUNTY SHERIFF'S DEPARTMENT considered the deputy positions staffing the jails
10 and/or performing patrol functions to be a job for individuals who were under the age of 40
11 years. On information and belief, one Captain employed by Defendant LA COUNTY
12 SHERIFF'S DEPARTMENT made and/or wrote a statement to the effect that: "when these
13 guys (former OPS officers who had been permitted to "laterally transfer" into deputy sheriff
14 positions) can't cut it because they are too old, we will get rid of them on probation."
15        K)       Defendants LA COUNTY and LA COUNTY SHERIFF'S
16 DEPARTMENT also had issues with respect to the amount of pay that plaintiffs were
17 earning. Plaintiffs, since they were over the age of 40 years as of September 30, 2010,
18 generally earned more money than their younger counterparts because they had been POST-
19 certified sworn police officers longer than their younger counterparts. Defendants took the
20 very public stance that, under no circumstances, would any of the former OPS officers who
21 were permitted to "laterally transfer" into deputy sheriff positions receive a raise in pay as a
22 result of the transfer. Although not affecting most of the plaintiffs in this cause of action,
23 Defendants' position did affect those former OPS officers herein who "passed" all the
24 examinations and requirements and then who became deputy sheriffs. For example, a plaintiff
25 who had been a relatively long-time sergeant in the former OPS had "passed" the
26 examinations and became a deputy sheriff II with Defendant LA COUNTY SHERIFF'S
27 DEPARTMENT. This plaintiff should have not been reduced in rank and grade and should
28 have entered the workforce with LA COUNTY SHERIFF'S DEPARTMENT as a sergeant of

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
26

1 equivalent rank and grade as he had enjoyed at the former OPS. The pay difference between a
2 top-step sergeant and a deputy sheriff II in LA COUNTY SHERIFF'S DEPARTMENT is
3 substantial. Again, although not affecting most of the plaintiffs in this cause of action, this
4 disparity is evidence of age discrimination against plaintiffs in a companion Complaint, and it
5 is also a violation of the FEHA as codified at Government Code §12941.

6          L)          As previously noted herein, there are 125 plaintiffs named in this lawsuit,
7 all of whom were within the age-protected class. 75 of these plaintiffs were disqualified for
8 reasons related to the polygraph/ background. 32 of these plaintiffs were disqualified for
9 medical, related medical, or psychological reasons. Only 18 of these plaintiffs were permitted
10 to "laterally transfer" into the deputy sheriff position, with some of these 18 plaintiffs initially
11 being excluded for medical, related medical, and/or psychological reasons (i.e. however, their
12 appeals were granted). In other words, about 86% of these age-protected plaintiffs were
13 disqualified, an extremely high number given that all of the plaintiffs named herein were
14 functioning police officers able to perform their jobs at least on a satisfactory basis prior to the
15 adverse employment actions discussed herein.

16          57.          The adverse employment action affecting sworn police officers in the OPS was
17 intentional and had a disparate impact on plaintiffs, in that the action adversely affected and
18 impacted those plaintiff who had reached 40 years age on or before September 30, 2010.

19          58.          As a direct result of the aforesaid disparate impact age discrimination, each
20 plaintiff herein has sustained, and will continue to sustain for a period of time, compensatory
21 damages, including, but not limited to, lost earnings and lost future earning capacity, all to his
22 or her detriment in an amount according to proof at the trial of this action.

23          59.          As a further direct result of the aforesaid disparate impact age discrimination,
24 each plaintiff herein has sustained, and will continue to sustain for a period of time, general
25 (non-economic) damages in an amount according to proof at the trial of this action.

26          60.          Each plaintiff herein, and his or her counsel of record, are entitled to their
27 reasonable attorney's fees and costs in an amount according to proof after trial pursuant to
28 Government Code §12965(b).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
27

## THIRD CAUSE OF ACTION

### (RETALIATION- ARISING UNDER THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT- BY ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100)

61.    Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 60 as though fully set forth.

62.    In October, 1998, class members who were OPS police officers filed a protected action, alleging causes of action for violations of the California Fair Employment and Housing Act (FEHA, Government Code §12940 et seq.) and federal law, including Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.). The essence of the lawsuit alleged racial and/or national origin discrimination against the Defendants LA COUNTY and LA COUNTY SHERIFF'S DEPARTMENT. The class action was entitled George Frank, et al. v. County of Los Angeles, et. al., and the venue was in the Los Angeles County Superior Court. Ultimately, the case was tried by a jury and the aggrieved plaintiffs were awarded millions of dollars.

63.    Following the verdict in the trial court in the Frank lawsuit, members of Defendant LA COUNTY's Board of Supervisors Angeles County Board of Supervisors publically declared their intention to "disband" the OPS after the legal proceedings were culminated

64.    Defendant LA COUNTY, et al, appealed from the trial court verdict in which millions of dollars were awarded in the case based on a finding that the OPS class members were discriminated against on the basis of the protected class of race and/or national origin. On appeal, the decision in the Frank case was reversed by the Second District Court of Appeal in a decision on or about April 12, 2007. The California Supreme Court denied review on or about August 8, 2007.

65.    Following the verdict in the trial court in the Frank lawsuit, members of Defendant LA COUNTY's Board of Supervisors Angeles County Board of Supervisors

1   publically declared their intention to "disband" the OPS after the legal proceedings were

2   culminated. It has taken awhile, but the Board of Supervisors has made good on their

3   "threat". The OPS has now been disbanded, and hundreds of lives and careers have been

4   decimated.

5        66.   Almost immediately following the Supreme's Court denial of review of the

6   appellate court decision in August, 2007, Defendant LA COUNTY and its CEO initiated a

7   feasibility study on September 20, 2007 to be conducted of the OPS law enforcement

8   organization. This action was not a coincidence. Reportedly, at issue in the feasibility study

9   was to determine which option, either consolidation or an independent department, would be

10  the most viable for the County of Los Angeles. In fact, it later became apparent that the

11  initiation of a feasibility study was a ruse and was an effort to disband the OPS at the behest

12  of LA COUNTY's Board of Supervisors who were still smarting over the jury verdict

13  received by the OPS in the Frank lawsuit. Plaintiffs are informed and believe, and thereon

14  allege, that Defendant LA COUNTY immediately started "take over" studies of the OPS by

15  Co-Defendant LA COUNTY SHERIFF'S DEPARTMENT for the purpose of disbanding the

16  OPS because of the angst created by the filing and prosecution of the Frank lawsuit by OPS

17  sworn police officer personnel.

18       67.   After the "take over" studies were completed, the Board of Supervisors of

19  Defendant LA COUNTY set aside sufficient funding on or about September 22, 2009 to

20  complete what it called the "merger" between the OPS and Co-Defendant LA COUNTY

21  SHERIFF'S DEPARTMENT. It also became apparent that, in 2009, it would not save, and

22  would cost, the County money to "merge" the functions and personnel of the OPS and

23  Defendant LA COUNTY SHERIFF'S DEPARTMENT. In these strained economic times,

24  any economic program in Defendant LA COUNTY which costs, rather than saves, money has

25  to be viewed as unlawfully motivated.

26       68.   On or about December 15, 2009, the Board of Supervisors of Defendant LA

27  COUNTY voted 4 to 1 to "merge" the OPS into Defendant LA COUNTY SHERIFF'S

28  DEPARTMENT.

69.     As noted, plaintiffs are informed and believe, and thereon allege, that the "merger" of the OPS into Defendant LA COUNTY SHERIFF'S DEPARTMENT was in direct retaliation for the participation of sworn police officer personnel in the OPS in the aforesaid <u>Frank</u> lawsuit.

70.     As noted, plaintiffs are informed and believe, and thereon allege, that proof of the unlawful motive of Defendant LA COUNTY in disbanding the OPS by "merging" it with Co-Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT is that the process did not save and in fact cost Los Angeles County money.  Given the bleak economic forecast which existed in December, 2009, personnel moves which cost rather than save a county government money must, by definition, be prompted by an unlawful and/or retaliatory motive.

71.     Defendant LA COUNTY is named as a defendant in this lawsuit based on the allegations in this Complaint and based on the fact that it was a public entity employer of all of the plaintiffs named in this Complaint and is still the public entity employer of many of the plaintiffs.  Many of the plaintiffs herein, after they were unlawfully "disqualified" from their law enforcement positions and careers, became civilian employees of Defendant LA COUNTY, although earning a lot less money and enjoying a lot less benefits than their peace officer counterparts.  Defendant LA COUNTY ignored, and continues to ignore, the fact that the former OPS officers, although County employees, were different than their civilian counterparts.  Police officers in this state have rights that are not afforded to their civilian counterparts in government employment.  By engaging in the actions subsequently referred to herein, Defendant LA COUNTY and Defendant LA COUNTY SHERIFF'S DEPARTMENT committed wholesale violations of the POBRA and destroyed the careers and families of the OPS employees.

72.     Defendant LA COUNTY, although claiming that the OPS was being "merged" into Defendant LA COUNTY SHERIFF'S DEPARTMENT, did not treat the job action as a true "merger".  Customarily, in a true "merger", two or more entities combine to form a single entity, and sound employment policies and practices dictate that employees of each of the entities are subjected to the same scrutiny in performance and other factors where

1  consolidation of personnel or functions is required.  In other words, if polygraph

2  examinations, background investigations, medical examinations, and psychological

3  examinations are the methods used to determine who will remain employed after the

4  "merger", then every person in each of the entities affected by the "merger" have to undergo

5  those examinations and investigations. In this "merger", however, only the OPS peace officer

6  personnel were subjected to examinations and investigations and not the deputy sheriffs from

7  Defendant LA COUNTY SHERIFF'S DEPARTMENT—why?  Because the "merger" was a

8  ruse for disbanding the OPS in retaliation for the <u>Frank</u> lawsuit and because deputy sheriffs

9  were treated differently in terms of their POBRA rights in that they could not be subjected to

10  additional examinations and investigations because it would run afoul of their inalienable

11  rights under the POBRA.

12       73.    At all times herein mentioned, Government Code §12940(h) made it an

13  unlawful employment practice for an employer covered under the FEHA to retaliate against

14  an employee or employees who opposed discrimination, harassment, and/or retaliation in the

15  workplace.  Plaintiffs contend that this provision against retaliation applied to Defendant LA

16  COUNTY's dismantling of the OPS in retaliation for some of their colleagues filing and

17  participating in the aforesaid <u>Frank</u> lawsuit, in that filing and participating in that lawsuit

18  alleging race and/or national origin discrimination was an activity protected under the FEHA.

19  Even though all plaintiffs named herein may not have been parties in the <u>Frank</u> lawsuit,

20  nevertheless they were victimized by losing their peace officer jobs because of their

21  association with those plaintiffs who were parties and with the law enforcement organization

22  in which those parties were employed.

23       74.    As a direct result of the aforesaid retaliation in violation of the FEHA, each

24  plaintiff named herein has sustained, and will continue to sustain for a period of time in the

25  future, compensatory damages, including, but not limited to, lost income and lost future

26  earning capacity, in an amount according to proof at the trial of this action.

27       75.    As a further direct result of the aforesaid retaliation in violation of the FEHA,

28  each plaintiff named herein has sustained, and will continue to sustain for a period of time in

1 | the future, general (non-economic) damages, all in an amount according to proof at the trial of
2 | this action.

3 |       76.      Each plaintiff herein, and his or her counsel of record, are entitled to their
4 | reasonable attorney's fees and costs in an amount according to proof after trial pursuant to
5 | Government Code §12965(b).

6 |

7 |                                **FOURTH CAUSE OF ACTION**
8 |       (FAILURE TO PREVENT HARASSMENT, DISCRIMINATION, AND
9 |       RETALIATION- ARISING UNDER THE CALIFORNIA FAIR
10 |      EMPLOYMENT AND HOUSING ACT- BY ALL PLAINTIFFS AGAINST
11 |      DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS
12 |      ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100)

13 |      77.      Plaintiffs reallege and incorporate herein those matters contained in paragraphs
14 | 1 through 76 as though fully set forth.

15 |      78.      At all times herein mentioned, all plaintiffs named herein were subjected to
16 | harassment, discrimination, and retaliation on account of their age, as more particularly
17 | appears in the General Allegations and in the First and Second Cause of Action of this
18 | Complaint.

19 |      79.      At all times herein mentioned, some, but not all, of the plaintiffs named herein
20 | were subjected to discrimination on account of their respective actual or perceived physical or
21 | mental disabilities.

22 |      80.      At all times herein mentioned, Government Code §12940(i) was in full force
23 | and effect.  This statute made it an unlawful employment practice for an employer in this state
24 | to fail to take all reasonable and necessary steps to prevent harassment and discrimination
25 | from occurring.

26 |      81.      At all times herein mentioned, and as more particularly appears in the Third
27 | Cause of Action of this Complaint, all plaintiffs named herein were subjected to retaliation
28 | because of their participation in the aforesaid Frank lawsuit, or because of their association

1  with their police officer colleagues who were employed by the former Office of Public Safety.

2      82.    Defendants LA COUNTY and LA COUNTY SHERIFF'S DEPARTMENT

3  were aware that members of the Board of Supervisors wanted to "disband" the Office of

4  Public Safety in retaliation for the filing and maintenance of the aforesaid <u>Frank</u> lawsuit.

5      83.    On or about December 15, 2009, after feasibility and other studies were

6  conducted, Defendant LA COUNTY decided to implement the so-called "merger/ work force

7  reduction" for the Office of Public Safety. Because the jobs of police officers were affected

8  by the decision to dismantle the Officer of Public Safety, Defendant LA COUNTY assigned

9  the task of performing polygraphs and background investigations to Co-Defendant LA

10  COUNTY SHERIFF'S DEPARTMENT. Initially, Defendant LA COUNTY required the

11  dismantling of the Office of Public Safety and the so-called lateral transfer of former OPS

12  police officers into deputy sheriff positions by June 30, 2010. However, because of numerous

13  problems with completing the process, the time period was extended to September 30, 2010.

14  By September 30, 2010, almost all of the affected former OPS police officers were either

15  working as deputy sheriffs on probation, or were working in some civilian job within Los

16  Angeles County, or were no longer working in any capacity for Los Angeles County either

17  because they were terminated outright or for some other reason such as having retired from

18  the employment to avoid losing all compensation and/or privileges of having been a sworn

19  police officer.

20      84.    More specifically, following the completion of the initial process of requiring

21  each OPS officer to undergo polygraph and background investigations administered by or

22  under the auspices of Defendant LA COUNTY SHERIFF'S DEPARTMENT, the former OPS

23  officers were required to undergo pre-employment medical and psychological examinations if

24  they had "passed" the polygraph and background investigation. It is believed that these

25  medical and psychological examinations were administered under the auspices and

26  supervision by both Defendants LA COUNTY and LA COUNTY SHERIFF'S

27  DEPARTMENT. As noted elsewhere herein, some of the affected plaintiffs named herein

28  contend that the medical examinations were not "age appropriate" and the psychological

1  examinations were utilized as a second background investigation in violation of the POBRA.
2  Further, some of the plaintiffs named herein contend that the medical and psychological
3  examinations violated the applicable law against requiring pre-employment physical and/or
4  psychological examinations.

5    85.    Some of the plaintiffs named herein who had "passed" the polygraph and
6  background investigations were disqualified from being "laterally transferred" into deputy
7  sheriff positions for reasons allegedly related to their medical and/or psychological condition.
8  Still others plaintiffs were disqualified because they allegedly "lied" in providing information
9  about their medical or psychological condition.  Some of those disqualified plaintiffs lost their
10 police officer status and were involuntarily demoted to civilian positions with Defendant LA
11 COUNTY.  Some of these disqualified plaintiffs lost their police officer status and were
12 terminated as opposed to demoted into a civilian position with Defendant LA COUNTY.

13   86.    From and after December 15, 2009, once it became apparent that the OPS would
14 be dismantled and subjected to the "workforce reduction/ merger", Defendant LA COUNTY
15 had the opportunity to ensure that the process of dismantling the Office of Public Safety was
16 performed in compliance with the anti-discrimination laws of the State of California as
17 codified in the FEHA.  In particular, Defendant LA COUNTY could have determined how
18 many OPS police officers would be affected by the job actions to be taken and, also, the
19 protected class status of each of those officers.

20   87.    Defendant LA COUNTY, however, miserably failed and/or refused to take into
21 account the protected status of each officer that was affected by the job action, including, but
22 not limited to, his or her age and disability and/or participation in the aforesaid Frank lawsuit.
23 Plaintiff are informed and believe, and thereon allege, that Defendant LA COUNTY was in
24 such a hurry to implement the wishes of its Board of Supervisors to retaliate against the OPS
25 by dismantling it that the protected class status of each of the officers affected by the job
26 action was not taken into consideration.  The result was that Defendant LA COUNTY
27 violated pertinent provisions of the FEHA which were designed to prevent harassment,
28 discrimination, and/or retaliation, and caused the hereinafter described damages to the named

1  plaintiffs herein.

2      88.    As a direct result of the aforesaid failure to prevent harassment, discrimination,

3  and/or retaliation in violation of the FEHA, each plaintiff named herein has sustained, and

4  will continue to sustain for a period of time in the future, compensatory damages, including,

5  but not limited to, lost income and lost future earning capacity, in an amount according to

6  proof at the trial of this action.

7      89.    As a further direct result of the aforesaid failure to prevent harassment,

8  discrimination, and/or retaliation in violation of the FEHA, each plaintiff named herein has

9  sustained, and will continue to sustain for a period of time in the future, general (non-

10  economic) damages, all in an amount according to proof at the trial of this action.

11      90.    Each plaintiff herein, and his or her counsel of record, are entitled to their

12  reasonable attorney's fees and costs in an amount according to proof after trial pursuant to

13  Government Code §12965(b).

14

15  **FIFTH CAUSE OF ACTION**

16  **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**

17  **BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3307- BY ALL**

18  **PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES,**

19  **COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1**

20  **THROUGH 100 FOR ADMINISTRATION OF POLYGRAPH**

21  **EXAMINATIONS)**

22      91.    Plaintiffs reallege and incorporate herein those matters contained in paragraphs

23  1 through 90 as though fully set forth.

24      92.    The named plaintiffs herein were not new hires.  In fact, they were still working

25  as sworn police officers employed by Defendant LA COUNTY at the time of the job action

26  and continued to be employed by Defendant LA COUNTY until on or about September 30,

27  2010.  Consequently, they could not be required to take polygraph examinations as a condition

28  for retaining their employment as sworn law enforcement officers with Defendant LA

44

1   COUNTY. Moreover, each plaintiff named herein, had already taken a polygraph examination
2   and had been subjected to a background investigation before becoming sworn police officers
3   employed by the OPS and before obtaining their POST certification. And, in fact, Defendant
4   Captain ED ROGNER admitted to at least one the plaintiffs herein that it would be unlawful
5   under the POBRA for the OPS officers to have to take a polygraph examination.

6       93.     The intent of Defendant LA COUNTY and Defendant LA COUNTY
7   SHERIFF'S DEPARTMENT was to eliminate the functions of the OPS as a law enforcement
8   organization and replace those OPS personnel performing those functions with deputy
9   sheriffs. For example, if before the "workforce reduction/ merger", a particular OPS officer
10  performed in the law enforcement function of guarding a county medical center facility, it was
11  intended by defendants that the function of guarding that same county medical center facility
12  would continue after the "workforce reduction/ merger" with the only difference being that a
13  deputy sheriff instead of an OPS officer would be performing those guard duties. In other
14  words, the OPS sworn peace officer personnel were not losing their jobs because their
15  respective positions were being eliminated.

16      94.     At all times herein mentioned, Government Code §3307(a) was in full force and
17  effect, and read as follows:

18              "No public safety officer shall be compelled to submit
19              to a lie detector test against his or her will. No disciplinary
20              action or other recrimination shall be taken against a public
21              safety officer refusing to submit to a lie detector test, nor
22              shall any comment be entered anywhere in the investigator's
23              notes or anywhere else that the public safety officer refused
24              to take, or did not take, a lie detector test, nor shall any
25              testimony or evidence be admissible at a subsequent
26              hearing, trial, or proceeding, judicial or administrative
27              to the effect that the public safety officer refused to take,
28              or was subjected to a lie detector test."

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
36

45

95. At all times herein mentioned, Government Code §3307(b) was in full force and effect, and read as follows:

> "For the purpose of this section, 'lie detector' means a polygraph, deceptograph, voice stress analyzer, psychological stress evaluator, or any other similar device, whether mechanical or electrical, that is used, or the results of which are used, for the purpose of rendering a diagnostic opinion regarding the honesty or dishonesty of an individual."

96. At all times herein mentioned, the law of the State of California provided that the prohibitions of Government Code §3307(a) and §3307(b), protected existing police officers, such as plaintiffs herein, and the applicable law did not prevent polygraph examinations to be administered to new hires. Under these POBRA protections, existing police officers could only be given a polygraph if they were applying for a specialized position within their own agency, such as the narcotics division. Under such circumstances, the questions asked on the polygraph would be limited to questions designed to ferret out the applicant's qualifications for the particular assignment in the narcotics division and, if the existing police officer applicant failed the polygraph, the results would not be placed in his or her police personnel file and, further, the particular agency could not take any "punitive action" against that applicant for failing the polygraph examination.

97. On or about December 15, 2009, when the so-called "workforce reduction/ merger" was announced and the process of dismantling the OPS was initiated by defendants, Co-Defendant ED ROGNER of Defendant LA COUNTY SHERIFF'S DEPARTMENT was placed in charge of the OPS law enforcement unit. In other words, a highly-placed official of the LA COUNTY SHERIFF'S DEPARTMENT was then the primary supervisor of the named plaintiffs herein, and he reported directly to Co-Defendant UNDERSHERIFF LEE WALDIE who, in turn, reported directly to SHERIFF LEE BACA. Defendant LA COUNTY SHERIFF'S DEPARTMENT remained the primary supervisor of the named plaintiffs herein until September 30, 2010. Therefore, during this transitionary period, the named plaintiffs

1  herein were reporting to a high level management official of Defendant LA COUNTY
2  SHERIFF'S DEPARTMENT who was responsible to them to ensure that their various rights
3  and protections under the POBRA were being safeguarded.  Nevertheless, all of the
4  challenged and unlawful polygraph examinations of the named plaintiffs herein were
5  conducted during the inclusive period of time when Defendant ED ROGNER, a Captain of
6  the LA COUNTY SHERIFF'S DEPARTMENT was in charge of the OPS law enforcement
7  agency and when the named plaintiffs herein were still employed as sworn police officers
8  with the OPS law enforcement organization of Defendant LA COUNTY.

9       98.     Existing deputy sheriffs and management law enforcement personnel employed
10  with Defendant LA COUNTY SHERIFF'S DEPARTMENT were not required to take
11  polygraph examinations between December 15, 2009 and September 30, 2010 as a condition
12  of keeping their sworn police officer positions; instead, only the sworn police officers with the
13  OPS, like the named plaintiffs herein, were required to take the polygraph examinations in
14  order to retain their law enforcement jobs with Defendant LA COUNTY.  Indeed, if
15  Defendant LA COUNTY had required existing deputy sheriffs and/or management personnel
16  of Defendant LA COUNTY SHERIFF'S DEPARTMENT to take polygraph examinations in
17  order to retain their sworn peace officer positions, Defendant LA COUNTY would have
18  violated the POBRA as to each such polygraph examination required of the law enforcement
19  counterparts of the named plaintiffs herein.  If this were a true "workforce reduction/ merger"
20  between the sworn peace officers of both the OPS and the LA COUNTY DEPUTY
21  SHERIFF'S DEPARTMENT, and if Defendant LA COUNTY did not have an unlawful
22  motivation in undertaking the subject adverse actions, one would expect either that unlawful
23  polygraph examinations would not have been required of any LA COUNTY peace officer or,
24  if these examinations were required, peace officers from both the OPS and the Sheriff's
25  Department would equally be at risk in taking the examinations.

26       99.     Based on the foregoing paragraphs in this cause of action, Defendants LA
27  COUNTY and LA COUNTY SHERIFF'S DEPARTMENT violated the rights and protections
28  of the POBRA as to each named plaintiff herein (i.e. as set forth in Government Code

1  §§3307(a) and 3307(b).

2     100.   Many of the named plaintiffs herein were required to take more than one

3  polygraph examination between December 15, 2009 and September 30, 2010. The named

4  plaintiffs herein contend that each taking of the polygraph examination was a separate and

5  distinct violation of their respective POBRA rights and entitles them to the damages and

6  remedies provided under the POBRA for each taking of the polygraph examination.

7     101.   Each plaintiff herein was required to take at least one polygraph examination in

8  order to retain his or her position as a sworn POST-certified police officer.

9     102.   At all times herein mentioned, Government Code §3309.5(e) was in full force

10  and effect. This statute provided, in pertinent part, as follows:

11           "In addition to the extraordinary relief afforded by

12           this chapter, upon a finding by a superior court that

13           a public safety officer department, its employees,

14           agents, or assigns, with respect to acts taken within

15           the scope of employment, maliciously violated any

16           provision of this chapter with the intent to injure the

17           public safety officer, the public safety department

18           shall, for each and every violation, be liable for a civil

19           penalty not to exceed $25,000 to be awarded to the

20           public safety officer whose right or protection was

21           denied and for reasonable attorney's fees as may be

22           determined by the court. If the court so finds, and

23           there is sufficient evidence to establish actual damages

24           by the officer whose right or protection was denied,

25           the public safety department shall also be liable for

26           the amount of actual damages...."

27     103.   At all times herein mentioned, Government Code §3309.5(d)(1) was in full

28  force and effect. This statute provided, in pertinent part, as follows:

1       "In any case where the superior court finds that a public

2       safety department has violated any of the provisions of this

3       chapter, the court shall render appropriate injunctive or other

4       extraordinary relief to remedy the violation and to prevent

5       future violations of a like or similar nature, including, but

6       not limited to, the granting of a temporary restraining order,

7       preliminary injunction, or permanent injunction from taking

8       any punitive action against the public safety officer."

9     104.   Most of the named plaintiffs in this particular Complaint "failed" the polygraph

10 examination(s) and/or background investigations; consequently, they were either placed in

11 civilian jobs with Defendant LA COUNTY or they were terminated from the employment of

12 Defendant LA COUNTY or they were forced to retire if they were eligible to do so.

13     105.   Most of the named plaintiffs in this particular Complaint were verbally,

14 mentally, and emotionally abused by either their polygraphers or their background investigator

15 (deputy sheriff from the Sheriff's Department), or by both.  Thus, for example, one of the

16 named plaintiffs herein, who had been a police officer for about 30 years, was instructed  by

17 her particular background investigator to report to a particular room for an interview; and,

18 when, she reported to that particular room as instructed, it was a broom closet.  Several

19 background investigators witnessed this plaintiff opening the door to the broom closet and had

20 a hearty laugh at her expense.

21     106.   Each plaintiff named herein contends that the conduct of the named defendants

22 in this cause of action, in subjecting them to polygraph examinations under the circumstances

23 as stated in this Complaint, was a malicious action designed to injure them specifically.

24     107.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

25 civil penalty of up to $25,000 for each time they were required to take a polygraph

26 examination.

27     108.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his

28 or her actual damages, including, but not limited to, compensatory (economic) damages such

1 | as loss of income and lost future earning capacity, and general (non-economic) damages such
2 | as monetary recovery for physical, mental, and emotional damages.  These damages are in an
3 | amount according to proof at the trial of this action.

4 |   109. Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her
5 | counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to
6 | proof at the trial of this action.

7 |   110. On information and belief, each plaintiff named herein alleges information
8 | pertaining to the polygraph examinations have been included into his or her police personnel
9 | file or other file kept for personnel purposes.  The information obtained about each plaintiff
10 | named herein as a result of the polygraph examination(s) to which he or she was unlawfully
11 | subjected should be purged from his or her police personnel file or other file kept for
12 | personnel purposes.  Each plaintiff named herein therefore prays for extraordinary relief
13 | directed to the custodian of the file(s) to purge the file of all information and data, positive or
14 | negative, that was derived from the unlawful polygraph examination(s).  This relief is
15 | requested pursuant to the provisions of Government Code §3309.5(d)(1) as set forth above.

16 |   111. The provisions of the POBRA are, pursuant to Government Code §3300 and
17 | §3301, intended for a public benefit.  The attorneys for each named plaintiff herein therefore
18 | request an award of attorney fees and costs pursuant to the private attorney general doctrine
19 | provisions of Code of Civil Procedure §1021.5.

20 |

21 | **SIXTH CAUSE OF ACTION**
22 | **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**
23 | **BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3305- BY**
24 | **THE PLAINTIFFS NAMED BELOW AGAINST DEFENDANTS COUNTY OF**
25 | **LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT,**
26 | **AND DOES 1 THROUGH 100)**

27 |   112. Plaintiffs reallege and incorporate herein those matters contained in paragraphs
28 | 1 through 111 as though fully set forth.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
41

113.   At all times herein mentioned, Government Code §3305 was in full force and
effect. This statute was part of the POBRA and provided as follows:

> "No public safety officer shall have any comment adverse
> to his interest entered into his personnel file, or any other
> file used for any personnel purposes by his employer.
> without the public safety officer having first read and
> signed the instrument containing the adverse comment
> indicating he is aware of such comment, except that such
> entry may be made if after reading such instrument the
> public safety officer refuses to sign it.  Should a public
> safety officer refuse to sign, that fact shall be noted on that
> document, and signed or initialed by such officer."

114.   Not all of the plaintiffs named in this Complaint contend they "failed" the
polygraph examination(s) and/or background investigations, or that they were disqualified for
a medical and/or psychological reason.  Indeed, some of the plaintiffs named in this
Complaint were allowed to "laterally transfer" into deputy sheriff positions in Defendant
LASD, but were placed on a probationary status as deputy sheriffs.  On information and
belief, those plaintiffs who were not permitted to "laterally transfer" into deputy sheriff
positions with Defendant LASD, all had adverse comments placed into their personnel file
without the particular named plaintiff be able first read and sign the documents containing the
adverse comments.

115.   The named plaintiffs who have been "disqualified" for some reason are
maintaining this cause of action, and are identified as follows: STUART J. COKER,
ANDREW AGUILAR, BARBARA ALBA, THEO ANADOLIS, BURLEY ANDERSON,
LEONARD BARRIOS, CARLOS BAZAN, STEVEN BELL, RICHARD BENTLEY,
BRIAN BLESSING, LINDA BONNER, EILEEN BORJA, TERRELL BOYKIN, RANDY
BUDD, HUBERT BUSH, JR., CARLOS CALDERON, JUAN CAMACHO, JUAN
CAMPOS, MAURICE CANNON, SEAN CARO, JOSE CARRILLO, CAROL CAUDLE,

1  CARLTON CHAMBERS, MICHAEL CLARK, MICHAEL COHEN, KEVIN COMPISE,
2  DANIEL CORTEZ, SR., THERESA DAUGHERTY, BRIAN DECKER, AARON DEYON,
3  DAVID DOMINGUEZ-HERBERT, MARGIE DUARTE, EDWARD ENTWISLE, ROBERT
4  FRIAR, DANIEL GARCIA, JOHN L. GARCIA, JOHN S. GARCIA, ROBERT
5  GONZALEZ, MITCH GRACE, DARRELL GREEN, RONALD GREENE, JOSE
6  GUERRERO, STEVEN GUTIERREZ, LINDA-JUDITH HARGRAVE, SHANE HARING,
7  TONY HAYDEN, ANDREW J. HERNANDEZ, ANTHONY W. JACKSON, JAY
8  JACOBSON, AKOUB "JACK" KHOKASIAN, MIKE KIM, JEREMY KITABJIAN,
9  PHILLIP LAKIN, DEREK LEE, GORDON LEE, **STEVE LIEBERMAN**, CURT
10  LEONARD, ANDREW MACK, JOEL MACKAY, WILLIAM MADRID, GLEN
11  MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, DAVID MCDONALD,
12  LUIS MENDEZ, FLORIA MORTON, CHARLES MUSE, MURIEL NG-BODE, LENN
13  NORMAN, ARTHUR NOWELL, ANDRUS NORTHRUP, MARCOS PEREZ, JEFF
14  PHILLIPS, JOHN PREECE, STEVEN PRUITT, CHRISTINA RAMIREZ, EDWARD
15  RAMOS, GERARDO RAMOS, MARTHA REYES, CHERYL ROBINSON, RICHARD
16  ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, LLOYD RUNNING,
17  KENNETH RYNO, WILLIAM SALAZAR, FERDINAND SALGADO, EDWIN
18  SANDOVAL, SCOTT SHEARING, DOREEN SIMMONS, HOWARD SLACK, JOEL
19  SOKOLOW, MARK SPURLOCK, DANIEL TASCIAN, VERNON THOMPSON, JUDI
20  TREDY, JOHN VANN, JOHN VARGAS, RENE VEGA, IGNACIO VILLAROS, JR., ERIC
21  WAFER, RALPH WAINWRIGHT, ERIC WALTON, COREY WASHINGTON, KENNETH
22  WHITAKER, DANNY WILSON, and JAMES WOODELL.
23      116.   Also named as plaintiffs in this action are those individual plaintiffs who are
24  now probationary deputy sheriffs, but who were initially "disqualified" for some reason
25  before his or her appeal was "granted": LOUIE BARRAGAN, EDGARDO GARCIA,
26  RUBEN MONTANEZ, GARY PENDER, DOUGLAS PRECIADO, JACQUELINE
27  REGALADO, and GLEN VALVERDE.
28      117.   Each plaintiff named herein is informed and believes that he was initially or

1  forever disqualified from laterally transferring into a deputy sheriff position with Defendant
2  LA COUNTY SHERIFF'S DEPARTMENT because he or she either "failed" the polygraph
3  and/or background investigation, or because he or she "failed" the pre-employment physical
4  and/or psychological examination, or because he or she allegedly made an inaccurate
5  statement on his or her medical questionnaire. In any of those cases, each plaintiff named
6  herein is informed and believe, and thereon alleges, that comments adverse to his or her
7  interest were entered into his or her police personnel file or other file kept for personnel
8  purposes, without each named plaintiff having first read and signed the instrument containing
9  the adverse comment or comments.

10      118.    Each plaintiff named herein further alleges that Defendants LA COUNTY and
11  LA COUNTY SHERIFF'S DEPARTMENT failed and/or refused to allow him or her to
12  review and then "sign off" on the adverse comments being entered into his or her police
13  personnel file or other file kept for personnel purposes. This failure and/or refusal to allow
14  each plaintiff named herein to review and then "sign off" on the adverse comments before
15  these comments were placed in his or her police personnel file or other file kept for personnel
16  purposes was unlawful and in violation of Government Code §3305.

17      119.    At all times herein mentioned, Government Code §3309.5(e) was in full force
18  and effect. This statute provided, in pertinent part, as follows:

19              "In addition to the extraordinary relief afforded by
20              this chapter, upon a finding by a superior court that
21              a public safety officer department, its employees,
22              agents, or assigns, with respect to acts taken within
23              the scope of employment, maliciously violated any
24              provision of this chapter with the intent to injure the
25              public safety officer, the public safety department
26              shall, for each and every violation, be liable for a civil
27              penalty not to exceed $25,000 to be awarded to the
28              public safety officer whose right or protection was

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
44

1      denied and for reasonable attorney's fees as may be

2      determined by the court.  If the court so finds, and

3      there is sufficient evidence to establish actual damages

4      by the officer whose right or protection was denied,

5      the public safety department shall also be liable for

6      the amount of actual damages...."

7   120. At all times herein mentioned, Government Code §3309.5(d)(1) was in full

8 force and effect.  This statute provided, in pertinent part, as follows:

9      "In any case where the superior court finds that a public

10      safety department has violated any of the provisions of this

11      chapter, the court shall render appropriate injunctive or other

12      extraordinary relief to remedy the violation and to prevent

13      future violations of a like or similar nature, including, but

14      not limited to, the granting of a temporary restraining order,

15      preliminary injunction, or permanent injunction from taking

16      any punitive action against the public safety officer."

17   121. Each plaintiff named herein contends that the conduct of the named defendants

18 in this cause of action, in violating the provisions of Government Code §3305, was a

19 malicious action designed to injure them specifically.

20   122. Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

21 civil penalty of up to $25,000 as a result of the defendants' malicious violation of Government

22 Code §3305

23   123. Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his

24 or her actual damages, including, but not limited to, compensatory (economic) damages such

25 as loss of income and lost future earning capacity, and general (non-economic) damages such

26 as monetary recovery for physical, mental, and emotional damages.  These damages are in an

27 amount according to proof at the trial of this action.  In the event that each plaintiff named

28 herein were to apply for employment with another law enforcement agency, the adverse

1  comments entered into their respective police personnel files are required by law to be shared

2  with the prospective employing agency. Adverse comments would, in all likelihood, prevent

3  the plaintiff from obtaining a job in law enforcement for life.

4      124.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her

5  counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to

6  proof at the trial of this action.

7      125.   Each plaintiff named herein therefore prays for extraordinary relief directed to

8  the custodian of the police personnel file(s) of the named plaintiffs herein to purge the file of

9  all adverse comments, information and data that was entered into the file in violation of the

10 provisions of Government Code §3305. This relief is requested pursuant to the provisions of

11 Government Code §3309.5(d)(1) as set forth above.

12      126.   The provisions of the POBRA are, pursuant to Government Code §3300 and

13 §3301, intended for a public benefit. The attorneys for each named plaintiff herein therefore

14 request an award of attorney fees and costs pursuant to the private attorney general doctrine

15 provisions of Code of Civil Procedure §1021.5.

16

17                          **SEVENTH CAUSE OF ACTION**

18      **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**

19      **BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3308- BY ALL**

20      **PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES,**

21      **COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1**

22      **THROUGH 100)**

23      127.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

24 1 through 126 as though fully set forth.

25      128.   At all times herein mentioned, Government Code §3308 of the POBRA was in

26 full force and effect. This statute provided as follows:

27          "No public safety officer shall be required or requested for

28          purposes of job assignment or other personnel action to disclose

         any item of his property, income, assets, source of income,

         debts or personal or domestic expenditures (including those of

         any member of his family or household) unless such information

         is obtained or required under state law or proper legal procedure,

         tends to indicate a conflict of interest with respect to the

         performance of his official duties, or is necessary for the employing

         agency to ascertain the desirability of assigning the public safety

         officer to a specialized unit in which there is a strong possibility

         that bribes or other improper inducements may be offered."

129. Each plaintiff named herein was questioned about, and was required to disclose information regarding, his or her "property, income, assets, source of income, debts or personal or domestic expenditures (including those of any member of his family or household)" during the polygraph examinations and background investigations. In fact, some of the named plaintiffs herein were informed that they "failed" the polygraph examinations and/or background investigations, and were precluded from being "laterally transferred" into deputy sheriff positions on the basis of alleged "financial irresponsibility".

130. Regardless of whether a particular plaintiff was disqualified because of his or her "financial irresponsibility", the requirement that each plaintiff named herein respond to questions about his or her "property, income, assets, source of income, debts or personal or domestic expenditures (including those of any member of his family or household)" during the polygraph examinations and background investigations violated the provisions of the POBRA at Government Code §3308, and caused each plaintiff named herein damages under the provisions of the statutory schemes.

131. Each named plaintiff herein was not a "new hire" and was an existing police officer who had rights under the POBRA. Moreover, similarly situated deputy sheriffs from Defendant LA COUNTY SHERIFF'S DEPARTMENT were not required to submit to polygraph examinations and/or background investigations in which questions about their financial condition were required to be answered, and where objectionable responses caused

1  them to lose their jobs as sworn police officers.

2      132.  At all times herein mentioned, Government Code §3309.5(e) was in full force

3  and effect.  This statute provided, in pertinent part, as follows:

> "In addition to the extraordinary relief afforded by
> this chapter, upon a finding by a superior court that
> a public safety officer department, its employees,
> agents, or assigns, with respect to acts taken within
> the scope of employment, maliciously violated any
> provision of this chapter with the intent to injure the
> public safety officer, the public safety department
> shall, for each and every violation, be liable for a civil
> penalty not to exceed $25,000 to be awarded to the
> public safety officer whose right or protection was
> denied and for reasonable attorney's fees as may be
> determined by the court.  If the court so finds, and
> there is sufficient evidence to establish actual damages
> by the officer whose right or protection was denied,
> the public safety department shall also be liable for
> the amount of actual damages...."

20      133.  At all times herein mentioned, Government Code §3309.5(d)(1) was in full

21  force and effect.  This statute provided, in pertinent part, as follows:

> "In any case where the superior court finds that a public
> safety department has violated any of the provisions of this
> chapter, the court shall render appropriate injunctive or other
> extraordinary relief to remedy the violation and to prevent
> future violations of a like or similar nature, including, but
> not limited to, the granting of a temporary restraining order,
> preliminary injunction, or permanent injunction from taking

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
48

57

any punitive action against the public safety officer."

134.    Each plaintiff named herein contends that the conduct of the named defendants in this cause of action, in violating the provisions of Government Code §3308, was a malicious action designed to injure them specifically.

135.    Further, each plaintiff named herein is concerned that his or her police personnel file or other file kept for personnel purposes contains information about his or her financial situation and/or condition which was obtained unlawfully according to the express provisions of Government Code §3308.  To the extent necessary, each plaintiff named herein prays for extraordinary relief from the court to purge his or her personnel file of any information whatsoever (positive or negative) about his or her financial condition and/or situation.  This relief is requested pursuant to the provisions of Government Code §3309.5(d)(1) as set forth above.

136.    Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a civil penalty of up to $25,000 as a result of the defendants' malicious violation of Government Code §3308, in that the defendants violated the POBRA by requiring each named plaintiff herein to respond to questions about his or her financial condition and/or situation at the polygraph examinations and at the background investigations.

137.    Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his or her actual damages, including, but not limited to, compensatory (economic) damages such as loss of income and lost future earning capacity, and general (non-economic) damages such as monetary recovery for physical, mental, and emotional damages.  These damages are in an amount according to proof at the trial of this action.  In the event that each plaintiff named herein were to apply for employment with another law enforcement agency, the adverse comments entered into their respective police personnel files are required by law to be shared with the prospective employing agency.  Adverse comments would, in all likelihood, prevent the plaintiff from obtaining a job in law enforcement for life.

138.    Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to

1  proof at the trial of this action.

2      139.   The provisions of the POBRA are, pursuant to Government Code §3300 and

3  §3301, intended for a public benefit.  The attorneys for each named plaintiff herein therefore

4  request an award of attorney fees and costs pursuant to the private attorney general doctrine

5  provisions of Code of Civil Procedure §1021.5.

6

7                              **EIGHTH CAUSE OF ACTION**

8      **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**

9      **BILL OF RIGHTS- BLANKET WAIVERS OF RIGHT TO VIEW POLICE**

10     **PERSONNEL FILE AS PERMITTED UNDER GOVERNMENT CODE §**

11     **3306.5(a-d) ARE UNLAWFUL- BY ALL PLAINTIFFS AGAINST**

12     **DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS**

13     **ANGELES POLICE DEPARTMENT, AND DOES 1 THROUGH 100)**

14     140.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

15  1 through 139 as though fully set forth.

16     141.   At all times herein mentioned, Government Code §3306.5(a-d) was in full force

17  and effect.  This statute provided as follows:

18             "(a) Every employer shall, at reasonable times and at

19         reasonable intervals, upon the request of a public safety officer,

20         during usual business hours, with no loss of compensation to the

21         officer, permit that officer to inspect personnel files that are used

22         or have been used to determine that officer's qualifications for

23         employment, promotion, additional compensation, or termination or

24         other disciplinary action.

25             (b) Each employer shall keep each public safety officer's

26         personnel file or a true and correct copy thereof, and shall make

27         the file or copy thereof available within a reasonable period of time

28         after a request therefor by the officer.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
50

(c) If, after examination of the officer's personnel file, the officer believes that any portion of the material is mistakenly or unlawfully placed in the file, the officer may request, in writing, that the mistaken or unlawful portion be corrected or deleted. Any request made pursuant to this subdivision shall include a statement by the officer describing the corrections or deletions from the personnel file requested and the reasons supporting those corrections or deletions. A statement submitted pursuant to this subdivision shall become part of the personnel file of the officer.

(d) Within 30 calendar days of receipt of a request made pursuant to subdivision (c), the employer shall either grant the officer's request or notify the officer of the decision to refuse to grant the request. If the employer refuses to grant the request, in whole or in part, the employer shall state in writing the reasons for refusing the request, and that written statement shall become part of the personnel file of the officer."

142. On information and belief, each plaintiff named herein was required by Defendants LA COUNTY and LA SHERIFF'S DEPARTMENT to waive in writing his or her right under Government Code §3306.5 and its subdivisions to inspect and/or comment on the information placed into his or her police personnel file before he or she was permitted to take the polygraph examination and to participate in the background investigation.

143. Moreover, any "waiver" signed by each named plaintiff herein was invalid because it was not "voluntary" in the true sense of the word. The penalty for not agreeing to sign the "waiver" was that he or she would lose his or her job as an existing police officer and, further, would not be eligible to attempt to mitigate his or her damages by finding and obtaining "civilian" employment within Defendant LA COUNTY.

144. On information and belief, each named plaintiff herein alleges that a blanket waiver of the provisions of Government Code §3306.5 and its subdivisions has been declared

1  unlawful by the California Supreme Court in its decision in *County of Riverside v. Superior*

2  *Court (Madrigal)* (2002) 27 Cal.4th 743.

3       145.   Because each named plaintiff was required to waive in writing his or her right

4  under Government Code §3306.5 and its subdivisions to inspect and/or comment on the

5  information placed into his or her police personnel file before he or she was permitted to take

6  the polygraph examination and to participate in the background investigation, each named

7  plaintiff herein was denied the rights of that POBRA statute and is entitled to the remedies

8  provided in this statutory scheme.

9       146.   At all times herein mentioned, Government Code §3309.5(e) was in full force

10  and effect.  This statute provided, in pertinent part, as follows:

11                 "In addition to the extraordinary relief afforded by

12                 this chapter, upon a finding by a superior court that

13                 a public safety officer department, its employees,

14                 agents, or assigns, with respect to acts taken within

15                 the scope of employment, maliciously violated any

16                 provision of this chapter with the intent to injure the

17                 public safety officer, the public safety department

18                 shall, for each and every violation, be liable for a civil

19                 penalty not to exceed $25,000 to be awarded to the

20                 public safety officer whose right or protection was

21                 denied and for reasonable attorney's fees as may be

22                 determined by the court.  If the court so finds, and

23                 there is sufficient evidence to establish actual damages

24                 by the officer whose right or protection was denied,

25                 the public safety department shall also be liable for

26                 the amount of actual damages...."

27       147.   At all times herein mentioned, Government Code §3309.5(d)(1) was in full

28  force and effect.  This statute provided, in pertinent part, as follows:

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
52

1             "In any case where the superior court finds that a public
2             safety department has violated any of the provisions of this
3             chapter, the court shall render appropriate injunctive or other
4             extraordinary relief to remedy the violation and to prevent
5             future violations of a like or similar nature, including, but
6             not limited to, the granting of a temporary restraining order,
7             preliminary injunction, or permanent injunction from taking
8             any punitive action against the public safety officer."

9        148.    Each plaintiff named herein contends that the conduct of the named defendants

10   in this cause of action, in violating the provisions of Government Code §3306.5(a-d), was a

11   malicious action designed to injure them specifically.

12       149.    Further, each plaintiff named herein is concerned that his or her police

13   personnel file or other file kept for personnel purposes contains information about his or her

14   polygraph examinations results, background investigation results, and medical and/or

15   psychological exam results, which was obtained unlawfully according to other express

16   provisions of the POBRA set forth in this Complaint. To the extent necessary, each plaintiff

17   named herein prays for extraordinary relief from the court to purge his or her personnel file of

18   any information whatsoever (positive or negative) about any negative information in the

19   respective personnel files. This relief is requested pursuant to the provisions of Government

20   Code §3309.5(d)(1) as set forth above.

21       150.    Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

22   civil penalty of up to $25,000 as a result of the defendants' malicious violation of Government

23   Code §3308, in that the defendants violated the POBRA by requiring each named plaintiff

24   herein to respond to questions about personal information at the polygraph examinations and

25   at the background investigations, and also at the medical and psychological examinations.

26       151.    Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his

27   or her actual damages, including, but not limited to, compensatory (economic) damages such

28   as loss of income and lost future earning capacity, and general (non-economic) damages such

1  as monetary recovery for physical, mental, and emotional damages. These damages are in an
2  amount according to proof at the trial of this action.  In the event that each plaintiff named
3  herein were to apply for employment with another law enforcement agency, the adverse
4  comments entered into their respective police personnel files are required by law to be shared
5  with the prospective employing agency. Adverse comments would, in all likelihood, prevent
6  the plaintiff from obtaining a job in law enforcement for life.

7       152.    Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her
8  counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to
9  proof at the trial of this action.

10      153.    The provisions of the POBRA are, pursuant to Government Code §3300 and
11  §3301, intended for a public benefit.  The attorneys for each named plaintiff herein therefore
12  request an award of attorney fees and costs pursuant to the private attorney general doctrine
13  provisions of Code of Civil Procedure §1021.5.

14

15                          **NINTH CAUSE OF ACTION**

16          **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**

17          **BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3304(b)-**

18          **BY ALL PLAINTIFFS AGAINST DEFENDANTS LOS ANGELES COUNTY,**

19          **LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND DOES 1**

20          **THROUGH 100, INCLUSIVE)**

21      154.    Plaintiffs realleges and incorporate herein those matters contained in paragraphs
22  1 through 153 as though fully set forth.

23      155.    At all times herein mentioned, Government Code §3304(b) was in full force and
24  effect.  This statute provided as follows:

25                  "No punitive action, nor denial of promotion on grounds
26                  other than merit, shall be undertaken by any public agency
27                  against any public safety officer who has successfully
28                  completed the probationary period that may be required by

                    COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
                                          54

1                   his or her employing agency without providing the public

2                   safety officer with an opportunity for administrative appeal."

3       156.   On information and belief, the term "punitive action", as used in the POBRA

4 statutory scheme, includes a termination or demotion or suspension from a law enforcement

5 agency, or a loss of rank, pay or grade within the law enforcement agency.

6       157.   All named plaintiffs herein were subjected to a "punitive action" under the

7 POBRA statutory scheme.  There are several categories of plaintiffs who did not receive their

8 administrative appeal rights under the POBRA.  The following is noteworthy in this regard:

9          A)     Most of the plaintiffs named in this Complaint were terminated from

10 their POST-certified law enforcement positions with the OPS, either because they "failed" the

11 initial polygraph examination and/or background investigation or because they were excluded

12 for a medical or psychological reason from becoming a deputy sheriff.  In fact, for some of the

13 plaintiffs who "failed" their polygraph examination(s) or background investigation, they were

14 placed on a paid leave until September 30, 2010 and were told they were under "house arrest".

15 None of these disqualified plaintiffs received the required administrative appeal under the

16 POBRA.

17          B)     Several of the plaintiffs named herein were also subjected to a "punitive

18 action" under the POBRA statutory scheme even though they "passed" the initial polygraph

19 examinations and background investigation, and even though they then "passed" the pre-

20 employment medical and psychological examinations, thus being permitted to "laterally

21 transfer" into a deputy sheriff position.  As to these few plaintiffs named herein, they lost

22 rank, pay, and/or grade upon being "accepted" into the deputy sheriff position.  For example,

23 if one of the plaintiffs meeting this criteria had been a sergeant in the OPS for 10 years, he or

24 she was not allowed to "laterally transfer" into the rank, pay, and grade of a deputy sheriff

25 sergeant position with 10 years of peace officer experience; instead, in this example, the

26 former OPS sergeant would be placed in a deputy sheriff II or deputy sheriff IV position,

27 earning substantially less than the equivalent pay of a deputy sheriff sergeant with 10 years

28 experience on the job in that position.  On information and belief, each of these situations

1 constituted a "punitive action" as defined under the POBRA.

2      C)   A few of the plaintiffs named herein were terminated because there were
3 misconduct allegations pending when they were working for the OPS and they had never been
4 accorded their administrative appeal rights under the POBRA.

5      D)   One plaintiff was terminated because he was accused of theft for actions
6 occurring when he worked for the OPS. Defendants used the polygraph examination(s) and
7 background investigation process to delve into this alleged misconduct when he worked for
8 the OPS during the polygraph examination(s) and background investigation. He never
9 received an administrative appeal under the POBRA.

10      E)   One plaintiff was terminated because he had a physical/ mental disability
11 which prevented him from completing one "test" if the deputy sheriff training, and he was
12 denied an opportunity to take the "test" a second time because he had complained to the
13 EEOC about singling him out. He, too, was not offered an administrative appeal under the
14 POBRA.

15      F)   One plaintiff was terminated because he was under suspicion for alleged
16 misconduct occurring during a traffic stop when he had worked for the OPS. Defendants used
17 the polygraph examination(s) and background investigation process to delve into this alleged
18 misconduct when he worked for the OPS during the polygraph examination(s) and
19 background investigation. He never received an administrative appeal under the POBRA.

20    158.   Most, if not all of the named plaintiffs herein who were informed they had
21 "failed" the initial polygraph examination(s) and/or background investigation were
22 disqualified for events or circumstances which occurred more than one year from the date of
23 their polygraph examinations(s) and/or background investigation. And, further, these same
24 plaintiffs herein had already taken polygraph examinations and had background investigations
25 before becoming POST-certified, sworn OPS officers where alleged disqualifying events were
26 disclosed. Thus, for example, one of the plaintiffs named herein, a highly placed management
27 law enforcement officer in the OPS, was disqualified because he allegedly smoked marijuana
28 in high school. This same plaintiff, however, had been a police officer for over 20 years, he

1  was POST-certified, and the information that he had smoked marijuana in high school had

2  been disclosed during his prior polygraph examination and background investigation as a pre-

3  condition of becoming an OPS sworn police officer. Under the circumstances, that particular

4  disqualification violated the POBRA provision in Government Code §3304(d)(1) to the effect

5  "no punitive action....shall be undertaken for any act, omission, or other allegation of

6  misconduct if the investigation or allegation is not completed within one year of the public

7  agency's discovery....of the allegation of an act, omission, or other misconduct."

8      159.  Most, if not all, of the plaintiffs named herein appealed the grounds of their

9  termination, either by unsuccessfully appealing to the Department of Human Resources of

10  Defendant LA COUNTY or unsuccessfully asking the Civil Service Commission for a

11  hearing. Defendant LA COUNTY took the position that the POBRA did not apply to these

12  job actions. In fact, the process of directing all appeals of the disqualifications to the

13  Department of Human Resources of Defendant LA COUNTY and/or to the Civil Service

14  Commission was in and of itself a violation of the POBRA, since it meant that "civilian"

15  employees of Defendant LA COUNTY and the public were unlawfully made privy to police

16  personnel information that should not have been subject to disclosure under Penal Code

17  §832.7 and the "official information" privileges of the Evidence Code.

18      160.  As noted, Government Code §3304(b) required each of the plaintiffs named

19  herein, regardless of whether or not they ultimately became deputy sheriffs, to be provided

20  with an "administrative appeal". None of the plaintiffs herein were in fact provided with an

21  opportunity for an administrative appeal, a "liberty interest" hearing, or an equivalent due

22  process hearing as required under the POBRA.

23      161.  The extraordinary remedy provisions of Government Code §3309.5(d)(1) are

24  inadequate to redress the injuries and damages incurred by the named plaintiffs herein insofar

25  as preventing "punitive action" without the opportunity for an administrative appeal, since the

26  "punitive action" has already been taken against the named plaintiffs herein and the court has

27  no jurisdiction to order the named defendants herein to receive an administrative appeal after

28  the damage has been done. Therefore, only monetary damages can adequately address the

1  injuries sustained by each named plaintiff herein as a result of having a "punitive action"

2  taken against him or her before having an opportunity for an administrative appeal or

3  equivalent-type due process hearing. Nevertheless, each plaintiff named herein therefore

4  prays for extraordinary relief directed to the custodian of the police personnel file(s) of the

5  named plaintiffs herein to purge the file of all adverse comments, information and data that

6  was entered into the file as a proximate result of the due process violation of the provisions of

7  Government Code §3304(b). This relief is requested pursuant to the provisions of

8  Government Code §3309.5(d)(1) as set forth above.

9      162.  At all times herein mentioned, Government Code §3309.5(e) was in full force

10  and effect. This statute provided, in pertinent part, as follows:

11            "In addition to the extraordinary relief afforded by

12            this chapter, upon a finding by a superior court that

13            a public safety officer department, its employees,

14            agents, or assigns, with respect to acts taken within

15            the scope of employment, maliciously violated any

16            provision of this chapter with the intent to injure the

17            public safety officer, the public safety department

18            shall, for each and every violation, be liable for a civil

19            penalty not to exceed $25,000 to be awarded to the

20            public safety officer whose right or protection was

21            denied and for reasonable attorney's fees as may be

22            determined by the court. If the court so finds, and

23            there is sufficient evidence to establish actual damages

24            by the officer whose right or protection was denied

25            the public safety department shall also be liable for

26            the amount of actual damages...."

27      163.  At all times herein mentioned, Government Code §3309.5(d)(1) was in full

28  force and effect. This statute provided, in pertinent part, as follows:

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
58

1    "In any case where the superior court finds that a public

2    safety department has violated any of the provisions of this

3    chapter, the court shall render appropriate injunctive or other

4    extraordinary relief to remedy the violation and to prevent

5    future violations of a like or similar nature, including, but

6    not limited to, the granting of a temporary restraining order,

7    preliminary injunction, or permanent injunction from taking

8    any punitive action against the public safety officer."

9       164.   Each plaintiff named herein contends that the conduct of the named defendants

10 in this cause of action, in violating the provisions of Government Code §3304(b), was a

11 malicious action designed to injure them specifically.

12       165.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

13 civil penalty of up to $25,000 as a result of the defendants' malicious violation of Government

14 Code §3304(b).

15       166.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his

16 or her actual damages, including, but not limited to, compensatory (economic) damages such

17 as loss of income and lost future earning capacity, and general (non-economic) damages such

18 as monetary recovery for physical, mental, and emotional damages.  These damages are in an

19 amount according to proof at the trial of this action.  In the event that each plaintiff named

20 herein were to apply for employment with another law enforcement agency, the adverse

21 comments entered into their respective police personnel files are required by law to be shared

22 with the prospective employing agency.  Adverse comments would, in all likelihood, prevent

23 the plaintiff from obtaining a job in law enforcement for life.

24       167.   As to the substantial majority of the named plaintiffs herein who were informed

25 that they had "failed" their initial polygraph examination(s) and/or background investigation,

26 their disqualifications (i.e. "punitive actions") were based on allegations of acts or misconduct

27 occurring more than one year before the polygraph examination(s) and background

28 investigation. These same plaintiffs had become sworn POST-certified police officers after

1  each had taken a prior polygraph examination and had submitted to a prior background

2  investigation where the allegation of misconduct or omission had been disclosed and had been

3  waived by Defendant LA COUNTY (i.e. by accepting them into law enforcement

4  employment as a sworn police office with full knowledge of the alleged act of misconduct or

5  omission).  Consequently, the named defendants herein breached the one-year statute of

6  limitations on each occasion where a named plaintiff herein was disqualified because he or

7  she allegedly "failed" the polygraph examination because of an alleged act or omission more

8  than one year before the polygraph examination/ background investigation.   In each instance,

9  that breach warrants an award of actual damages, a civil penalty of up to $25,000, and

10  reasonable attorney's fees pursuant to POBRA and the private attorney general doctrine.

11       168.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her

12  counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to

13  proof at the trial of this action.

14       169.   Additionally, the provisions of the POBRA are, pursuant to Government Code

15  §3300 and §3301, intended for a public benefit.  The attorneys for each named plaintiff herein

16  therefore request an award of attorney fees and costs pursuant to the private attorney general

17  doctrine provisions of Code of Civil Procedure §1021.5.

18

19                    **TENTH CAUSE OF ACTION**

20       **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**

21       **BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3304(b)-**

22       **UNLAWFULLY REQUIRED BLANKET WAIVERS OF POBRA RIGHTS**

23       **TO ACCEPT "VOLUNTARY DEMOTIONS" TO CIVILIAN POSITIONS**

24       **WITHIN COUNTY- BY PLAINTIFFS NAMED BELOW AGAINST**

25       **DEFENDANTS LOS ANGELES COUNTY, LOS ANGELES COUNTY**

26       **SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100, INCLUSIVE)**

27       170.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

28  1 through 169 as though fully set forth.

171.   At all times herein mentioned, Government Code §3304(b) was in full force and effect.  This statute provided as follows:

> "No punitive action, nor denial of promotion on grounds
> other than merit, shall be undertaken by any public agency
> against any public safety officer who has successfully
> completed the probationary period that may be required by
> his or her employing agency without providing the public
> safety officer with an opportunity for administrative appeal."

172.   On information and belief, the term "punitive action", as used in the POBRA statutory scheme, includes a termination from a sworn police officer position or a demotion to another position within Defendant LA COUNTY.

173.   In an attempt to demonstrate that it was a benevolent employer, Defendant LA COUNTY selectively "attempted" to find "civilian" jobs within the County to replace the sworn police officer jobs that many of the plaintiffs named herein were losing.

174.   One of these "civilian" positions was a Custody Assistant position.  In LA COUNTY, a Custody Assistant fulfills the same function as a deputy sheriff in the County Jail network.  Both Custody Assistants and deputy sheriffs wear a badge and a uniform, however, the deputy sheriff is a sworn police officer position under Penal Code §830.1 and a Custody Assistant is not.  Custody Assistants cannot carry concealed weapons and cannot make arrests, whereas deputy sheriffs can be armed and do make arrests.  Custody Assistants also earn substantially less money and enjoy considerably less benefits than a deputy sheriff.

175.   Another of these "civilian" positions is a Sheriff's security assistant.  Security assistants earn considerably less than even Custody Assistants and, also, are not armed and do not make arrests.  They are not sworn police officers.

176.   Many of the named plaintiffs herein who had been informed they had "failed" the polygraph examination, and/or the background investigation, and/or the medical examination, and/or the psychological examination, were offered "civilian" positions as a Custody Assistant, a Sheriff's security assistant, or some other clerical job with LA

1   COUNTY.  Many of the named plaintiffs herein, recognizing that their law enforcement

2   careers had been forever destroyed by the named defendants herein, did what they had to do to

3   support their families and "accepted" these civilian positions.  The alternative was becoming

4   homeless or going on welfare or futilely attempting to seek police officer jobs with other law

5   enforcement agencies with a tainted record.

6       177.   The named plaintiffs in this cause of action are as follows: STUART J.

7   COKER, ANDREW AGUILAR, BARBARA ALBA, THEO ANADOLIS, BURLEY

8   ANDERSON, LEONARD BARRIOS, CARLOS BAZAN, STEVEN BELL, RICHARD

9   BENTLEY, BRIAN BLESSING, LINDA BONNER, EILLEEN BORJA, TERRELL

10  BOYKIN, RANDY BUDD, HUBERT BUSH, JR., CARLOS CALDERON, JUAN

11  CAMACHO, JUAN CAMPOS, MAURICE CANNON, SEAN CARO, JOSE CARRILLO,

12  CAROL CAUDLE, CARLTON CHAMBERS, MICHAEL CLARK, MICHAEL COHEN,

13  KEVIN COMPISE, DANIEL CORTEZ, SR., THERESA DAUGHERTY, BRIAN DECKER,

14  AARON DEYON, DAVID DOMINGUEZ-HERBERT, MARGIE DUARTE, EDWARD

15  ENTWISLE, ROBERT FRIAR, DANIEL GARCIA, JOHN L. GARCIA, JOHN S. GARCIA,

16  ROBERT GONZALEZ, MITCH GRACE, DARRELL GREEN, RONALD GREENE, JOSE

17  GUERRERO, STEVEN GUTIERREZ, LINDA-JUDITH HARGRAVE, SHANE HARING,

18  TONY HAYDEN, ANDREW J. HERNANDEZ, ANTHONY W. JACKSON, JAY

19  JACOBSON, AKOUB "JACK" KHOKASIAN, MIKE KIM, JEREMY KITABJIAN,

20  PHILLIP LAKIN, DEREK LEE, GORDON LEE, STEVE LIEBERMAN, CURT

21  LEONARD, ANDREW MACK, JOEL MACKAY, WILLIAM MADRID, GLEN

22  MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, DAVID MCDONALD,

23  LUIS MENDEZ, FLORIA MORTON, CHARLES MUSE, MURIEL NG-BODE, LENN

24  NORMAN, ARTHUR NOWELL, ANDRUS NORTHRUP, MARCOS PEREZ, JEFF

25  PHILLIPS, JOHN PREECE, STEVEN PRUITT, CHRISTINA RAMIREZ, EDWARD

26  RAMOS, GERARDO RAMOS, MARTHA REYES, CHERYL ROBINSON, RICHARD

27  ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, LLOYD RUNNING,

28  KENNETH RYNO, WILLIAM SALAZAR, FERDINAND SALGADO, EDWIN

1  SANDOVAL, SCOTT SHEARING, DOREEN SIMMONS, HOWARD SLACK, JOEL

2  SOKOLOW, MARK SPURLOCK, DANIEL TASCIAN, VERNON THOMPSON, JUDI

3  TREDY, JOHN VANN, JOHN VARGAS, RENE VEGA, IGNACIO VILLAROS, JR., ERIC

4  WAFER, RALPH WAINWRIGHT, ERIC WALTON, COREY WASHINGTON, KENNETH

5  WHITAKER, DANNY WILSON, and JAMES WOODELL.

6       178.   On information and belief, Defendant LA COUNTY required each of the named

7  plaintiffs in this cause of action to sign a waiver document agreeing to accept a *"voluntary*

8  *demotion"*.  Some of the named plaintiffs herein registered an objection to signing the

9  document and were informed they would lose their job if they did not sign it.  The waiver

10  documents which they were required to sign were by no means "voluntary".

11       179.   On information and belief, the named plaintiffs herein contend that, given the

12  position of Defendant LA COUNTY to the effect the "civilian" jobs in fact represented a

13  demotion, this demotion following closely on the heels of their disqualification from a sworn

14  police officer position was another violation of the POBRA.  As noted in this cause of action

15  and elsewhere in this Complaint, Government Code §3304.5(b) provides that a "punitive

16  action" (which includes a demotion) cannot be taken against a police officer without the

17  officer being afforded an opportunity for an administrative appeal or equivalent-type due

18  process hearing.  Each plaintiff named herein was not provided with the required opportunity

19  for an administrative appeal or equivalent-type due process hearing before the "punitive

20  action" of a demotion was taken and before they were required to sign a waiver form

21  indicating that their acceptance of a "civilian" position in LA County was a "voluntary

22  demotion".

23       180.   Further, at all times herein mentioned, requiring the named plaintiffs herein to

24  sign a "voluntary demotion" waiver in order to be employed in civilian positions in LA

25  COUNTY was in effect a blanket waiver of their respective rights under the POBRA and was

26  unlawful pursuant to *County of Riverside v. Superior Court (Madrigal)* (2002) 27 Cal.4th 743.

27       181.   Because each named plaintiff was required to waive in writing his or her right

28  under Government Code §3304.5(b) to have an administrative appeal or equivalent-type due

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
63

72

10  provision of this chapter with the intent to injure the

11  public safety officer, the public safety department

12  shall, for each and every violation, be liable for a civil

13  penalty not to exceed $25,000 to be awarded to the

14  public safety officer whose right or protection was

15  denied and for reasonable attorney's fees as may be

16  determined by the court. If the court so finds, and

17  there is sufficient evidence to establish actual damages

18  by the officer whose right or protection was denied,

19  the public safety department shall also be liable for

20  the amount of actual damages...."

21      183.   At all times herein mentioned, Government Code §3309.5(d)(1) was in full

22  force and effect. This statute provided, in pertinent part, as follows:

23  "In any case where the superior court finds that a public

24  safety department has violated any of the provisions of this

25  chapter, the court shall render appropriate injunctive or other

26  extraordinary relief to remedy the violation and to prevent

27  future violations of a like or similar nature, including, but

28  not limited to, the granting of a temporary restraining order,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
64

20  elsewhere in this Complaint, it is unlikely that the plaintiffs named herein who are

21  currently working as deputy sheriffs will be able to find law enforcement jobs with any other

22  agency.

23      188.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her

24  counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to

25  proof at the trial of this action.

26      189.   The provisions of the POBRA are, pursuant to Government Code §3300 and

27  §3301, intended for a public benefit. The attorneys for each named plaintiff herein therefore

28  request an award of attorney fees and costs pursuant to the private attorney general doctrine

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
65

73

1                preliminary injunction, or permanent injunction from taking

2                any punitive action against the public safety officer."

3     184.   Each plaintiff named herein contends that the conduct of the named defendants

4 in this cause of action, in violating the provisions of Government Code §3304(b) was a

5 malicious action designed to injure them specifically.

6     185.   Further, each plaintiff named herein requests extraordinary relief to the extent

7 that the court mandates that the so-called "voluntary demotions" are unlawful and would

8 prevent Defendant LA COUNTY from taking any action to enforce and/or rely on those

9 waivers in the future. This relief is requested pursuant to the provisions of Government Code

10 §3309.5(d)(1) as set forth above.

11     186.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

12 civil penalty of up to $25,000 as a result of the defendants' malicious violation of Government

13 Code §3304(b).

14     187.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his

15 or her actual damages, including, but not limited to, compensatory (economic) damages such

16 as loss of income and lost future earning capacity, and general (non-economic) damages such

17 as monetary recovery for physical, mental, and emotional damages. These damages are in an

18 amount according to proof at the trial of this action. Because of the violation of this section of

19 the POBRA, in combination with the violation of other sections of the POBRA as set forth

20 elsewhere in this Complaint, it is unlikely that the plaintiffs named herein who are not

21 currently working as deputy sheriffs will be able to find law enforcement jobs with any other

22 agency.

23     188.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her

24 counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to

25 proof at the trial of this action.

26     189.   The provisions of the POBRA are, pursuant to Government Code §3300 and

27 §3301, intended for a public benefit. The attorneys for each named plaintiff herein therefore

28 request an award of attorney fees and costs pursuant to the private attorney general doctrine

1 | provisions of Code of Civil Procedure §1021.5.

2

3 | **ELEVENTH CAUSE OF ACTION**

4 | **(VIOLATIONS OF FEDERAL CIVIL RIGHTS- ACTION UNDER 42 U.S.C.**

5 | **§§1983, ET SEQ.,- BY THE PLAINTIFFS NAMED BELOW AGAINST THE**

6 | **INDIVIDUAL DEFENDANTS NAMED BELOW AND AGAINST DOES 1**

7 | **THROUGH 100 FOR THE UNLAWFUL TAKING OF A PROPERTY**

8 | **INTEREST WITHOUT DUE PROCESS OF LAW PURSUANT TO THE FIFTH**

9 | **AND FOURTEENTH AMENDMENTS TO THE UNITED STATES**

10 | **CONSTITUTION)**

11 | 190.   Plaintiffs realleges and incorporate herein those matters contained in paragraphs

12 | 1 through 189 as though fully set forth.

13 | 191.   This particular cause of action for violation of civil rights under 42 U.S.C.

14 | §1983, et seq. applies to the following named plaintiffs:  STUART J. COKER, ANDREW

15 | AGUILAR, BARBARA ALBA, THEO ANADOLIS, BURLEY ANDERSON, LEONARD

16 | BARRIOS, CARLOS BAZAN, STEVEN BELL, RICHARD BENTLEY, BRIAN

17 | BLESSING, LINDA BONNER, EILLEEN BORJA, TERRELL BOYKIN, RANDY BUDD,

18 | HUBERT BUSH, JR., CARLOS CALDERON, JUAN CAMACHO, JUAN CAMPOS,

19 | MAURICE CANNON, SEAN CARO, JOSE CARRILLO, CAROL CAUDLE, CARLTON

20 | CHAMBERS, MICHAEL CLARK, MICHAEL COHEN, KEVIN COMPISE, DANIEL

21 | CORTEZ, SR., THERESA DAUGHERTY, BRIAN DECKER, AARON DEYON, DAVID

22 | DOMINGUEZ-HERBERT, MARGIE DUARTE, EDWARD ENTWISLE, ROBERT FRIAR,

23 | DANIEL GARCIA, JOHN L. GARCIA, JOHN S. GARCIA, ROBERT GONZALEZ,

24 | MITCH GRACE, DARRELL GREEN, RONALD GREENE, JOSE GUERRERO, STEVEN

25 | GUTIERREZ, LINDA-JUDITH HARGRAVE, SHANE HARING, TONY HAYDEN,

26 | ANDREW J. HERNANDEZ, ANTHONY W. JACKSON, JAY JACOBSON, AKOUB

27 | "JACK" KHOKASIAN, MIKE KIM, JEREMY KITABJIAN, PHILLIP LAKIN, DEREK

28 | LEE, GORDON LEE, STEVE LIEBERMAN, CURT LEONARD, ANDREW MACK, JOEL

1  MACKAY, WILLIAM MADRID, GLEN MANCHESTER, EDWARD MARQUEZ,
2  WILLIAM MARTIN, DAVID MCDONALD, LUIS MENDEZ, FLORIA MORTON,
3  CHARLES MUSE, MURIEL NG-BODE, LENN NORMAN, ARTHUR NOWELL,
4  ANDRUS NORTHRUP, MARCOS PEREZ, JEFF PHILLIPS, JOHN PREECE, STEVEN
5  PRUITT, CHRISTINA RAMIREZ, EDWARD RAMOS, GERARDO RAMOS, MARTHA
6  REYES. CHERYL ROBINSON, RICHARD ROBINSON, JOSE RODRIGUEZ, KENNETH
7  RUFFCORN, LLOYD RUNNING, KENNETH RYNO, WILLIAM SALAZAR,
8  FERDINAND SALGADO, EDWIN SANDOVAL, SCOTT SHEARING, DOREEN
9  SIMMONS, HOWARD SLACK, JOEL SOKOLOW, MARK SPURLOCK, DANIEL
10 TASCIAN, VERNON THOMPSON, JUDI TREDY, JOHN VANN, JOHN VARGAS, RENE
11 VEGA, IGNACIO VILLAROS, JR., ERIC WAFER, RALPH WAINWRIGHT, ERIC
12 WALTON, COREY WASHINGTON, KENNETH WHITAKER, DANNY WILSON, and
13 JAMES WOODELL.

14    192.   Most of these above-named individual plaintiffs lost their peace officer jobs
15 because they were disqualified in the polygraph examination and/or background investigation
16 process.  Some of these individual plaintiffs lost their peace officer jobs because they
17 allegedly "failed" the medical and/or psychological examinations for one reason or another.
18 And, some of these individual plaintiffs lost their peace officer jobs because they allegedly
19 stated inaccuracies in their medical questionnaire.

20    193.   This particular cause of action for violation of civil rights under 42 U.S.C.
21 applies to the following named individual defendants who were background investigators and
22 employees of Defendants LA COUNTY and LASD: LEE BACA, LARRY WALDIE, ED
23 ROGNER, KEVIN HEBERT, WILLIAM FUJIOKA, PAMELA JOHNSON, GARY
24 GREENWOOD, TODD KOMMER, ANDREW JACOB, KEVIN ZABORNIAK, LAMONT
25 STRINGER, CECILIA RAMIREZ, JOE SALAS, JILL DESCHAMPS, REGINALD
26 MEREDITH, JENNY CHRISTIANSEN, RICHARD CONLEY, JR., MAURICIO AVALOS,
27 WILLIAM KENNEDY, ROBERT ENGEL, KEITH SMITH, LISA GARRETT, RALPH
28 PLASENCIA, ANGELA HUNT, and DOES 1 THROUGH 100.

194.   At all times herein mentioned, 42 U.S.C. §1983, et seq. were in full force and effect.  This statutory scheme was designed to prevent the deprivation of civil rights by individuals acting under the color of state or local law.

195.   Each of the named plaintiffs in this cause of action had been peace officers of the former OPS, a law enforcement agency operated under the aegis and jurisdiction of Co-Defendant LA COUNTY (which is not named as a party defendant in this cause of action). When each of the named plaintiffs herein had been peace officers employed by the OPS, they were considered to be employees of Co-Defendant LA COUNTY. Each were also considered to be employees of Co-Defendant LA COUNTY who could only be terminated for "good cause". They were not "at will" employees who could be terminated with or without a good reason and with or without notice of that so-called "good reason". Before each could be effectively termination from their peace officer position, each was entitled to some type of due process hearing ("Skelly-type" hearing or "liberty interest" hearing or any similar type of hearing with notice of the reasons for their particular dismissal from the employment of Co-Defendant LA COUNTY and with an ability to challenge the so-called reasons before an impartial and neutral fact-finder and decision-maker).

196.   Each of the named plaintiffs in this cause of action had a legitimate claim of entitlement to their respective careers as a peace officer, which, plaintiffs contend, gave rise to a protected property interest that imposed a significant limitation on the discretion of the individual decision-makers.  This property interest arose both under state law and under the Fifth Amendment to the United States Constitution.

197.   Each of the named plaintiffs in this cause of action also had a legitimate claim of entitlement to their reputation interest as peace officers.  This reputation interest also imposed a significant limitation on the discretion of the individual decision-makers.

198.   Each of the named plaintiffs in this cause of action were subjected to dismissal as peace officers because of allegations arising from their required submission to one or more polygraph examinations and to a background investigation.  Each of the named plaintiffs in this cause of action therefore claim that they had and/or have a liberty interest in their

1  employment and in their reputation which is protected by the Due Process Clause of the

2  Fourteenth Amendment to the United States Constitution, since their ultimate dismissal

3  effectively precluded each of them from future work in their chosen profession.  In the case of

4  each plaintiff named herein, the stated reason(s) for their dismissal as peace officers became

5  part and parcel of their police personnel file and/or other file kept for personnel purposes, and,

6  under the law of the State of California, these police personnel files would have to be shared

7  with prospective law enforcement agency employers in California.  Thus, for example, one of

8  the plaintiffs named herein was terminated from his sworn peace officer position at the former

9  OPS, and was therefore prevented from "laterally transferring" into an equivalent deputy

10  sheriff position with Co-Defendant LASD  because of so-called "illegal drug use".  His

11  polygrapher and/or background investigator had apparently concluded that he had smoked

12  marijuana when he was a young adult before becoming a peace officer with the OPS.  In all

13  likelihood, a finding that a deputy sheriff/ background investigator with a prestigious law

14  enforcement organization like Co-Defendant LASD had concluded that this plaintiff was

15  disqualified because of "illegal drug use" would, in effect, be a "death knell" to future

16  employment with any other law enforcement agency.  Co-defendant LASD itself excluded

17  some of the named plaintiffs herein because of alleged "poor employment history", in that

18  they had either been terminated or had not been hired with another law enforcement agency

19  other than the OPS (i.e. before they became OPS officers).

20       199.   At all times herein mentioned, the individual defendants named herein were

21  employees, agents, and/or representatives of Co-Defendants LA COUNTY and/or LASD.

22  Consequently, each named individual defendant herein was operating under the color and

23  authority of law.

24       200.   Further, at all times herein mentioned, the individual defendants named herein

25  were decision-makers in determining which former OPS officers would be dismissed from

26  their peace officer jobs.

27       201.   At no time did any of the individual defendants named herein provide the

28  individual plaintiffs named herein with due process of law as required before an unlawful

1  taking of a property interest and a reputation interest.

2      202.  Each of the individual defendants named in this cause of action violated the

3  civil rights of the named plaintiffs in this action by making decisions that affected their Fifth

4  Amendment property interests and their reputation interests without providing each of them

5  with due process of law under the Fourteenth Amendment.  This action is redressable under

6  42 U.S.C. §§1983, et seq., and also provides each named plaintiff with the full panoply of

7  remedies available under this federal statutory scheme.

8      203.  As a direct result of the unlawful deprivation of the federal civil rights arising

9  under this cause of action, each named plaintiff herein has sustained, and will continue to

10  sustain for a period of time, compensatory damages, including, but not limited to, loss of

11  income and lost future earning capacity, all in an amount according to proof at the trial of this

12  action.

13      204.  As a further direct result of the unlawful deprivation of the federal civil rights

14  under this cause of action, each named plaintiff herein has sustained, and will continue to

15  sustain for a period of time, general damages, including, but not limited to, loss of income and

16  lost future earning capacity, all in an amount according to proof at the trial of this action.

17      205.  Each named plaintiff is entitled to his or her reasonable attorney's fees pursuant

18  to 42 U.S.C. §1988(b).

19      206..  Each named individual defendant herein acted with malice, oppression, and

20  fraud, and therefore is liable in punitive damages in an amount according to proof at trial.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## TWELFTH CAUSE OF ACTION

(DISABILITY DISCRIMINATION- BY THE PLAINTIFFS NAMED BELOW
AGAINST DEFENDANTS LOS ANGELES COUNTY AND LOS ANGELES
COUNTY SHERIFF'S DEPARTMENT- VIOLATIONS OF THE FEHA FOR
AUTHORIZING AND REQUIRING PRE-EMPLOYMENT AND/OR POST-
EMPLOYMENT OR MEDICAL AND PSYCHOLOGICAL EXAMINATIONS
RESULTING IN WRONGFUL TERMINATION OF PEACE OFFICER JOBS
OR A CREATION OF A RECORD IN THEIR POLICE PERSONNEL FILE OR
OTHER FILE KEPT FOR PERSONNEL PURPOSES)

207.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 206 as though fully set forth.

208.   The following plaintiffs are named in this particular cause of action: ANDREW AGUILAR, LEONARD BARRIOS, JOSE CARRILLO, CAROL CAUDLE, STUART J. COKER, DAN CORTEZ, SR., AARON DEYON, MARGIE DUARTE, EDWARD ENTWISLE, JOHN S. GARCIA, RONALD GREENE, JOSE GUERRERO, STEVEN GUTIERREZ, PHILLIP LAKIN, JOEL MACKAY, GLEN MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, LUIS MENDEZ, FLORIA MORTON, LENN NORMAN, ARTHUR NOWELL, CHRISTINA RAMIREZ, CHERYL ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, WILLIAM SALAZAR, MARK SPURLOCK, JUDI TREDY, JOHN VARGAS, RALPH WAINWRIGHT.  All of these plaintiffs named herein had to take *pre-employment* and/or post-employment medical and psychological examinations.

209.   Defendants LA COUNTY and LASD have taken the position that the plaintiffs named in this Complaint were to be treated as if they were "new hires" for the deputy sheriff position at Defendant LASD.

210.   Each of the plaintiffs named in this cause of action had "passed" the polygraph examination(s) and background investigation, and were then required to take a *pre-employment* and/or a post-employment medical and psychological examination before being

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
71

1  "hired" as deputy sheriffs by Defendants LA COUNTY and LASD.  The plaintiffs named

2  herein were then disqualified from being transferred into the deputy sheriff position, or after

3  being transferred into the deputy sheriff position, either because they were believed to be

4  physically and/or mentally disabled, and/or because they were perceived to have been lying as

5  to the existence or non-existence of some prior medical or psychological condition when

6  filling out a medical questionnaire form.  In either case, their respective police personnel file

7  or other file kept for personnel purposes on each disqualified plaintiff was documented with

8  the disqualification.

9         211.   The plaintiffs named herein disagree with the position that they were "new

10  hires".   Regardless, each plaintiff named in this cause of action contends he or she was

11  unlawfully subjected to discrimination based on a perceived and/or actual physical and/or

12  mental disability.

13        212.   At all times herein mentioned, Defendant LASD had a written policy requiring

14  members of their Department to comply with the Americans With Disabilities Act of 1990

15  (hereafter ADA Act of 1990 or the ADA).  In pertinent part, the written policy of Defendant

16  LASD precluded giving *pre-employment* medical and psychological examinations.  In

17  pertinent part, this written policy provided as follows:

18               A)    "The (LASD) cannot refuse to hire or promote you because of your

19  disability if you can perform the essential functions of the job with an accommodation."

20               B)    "If you are applying for a job, (the LASD) may not ask you if you are

21  disabled or ask about the nature or severity of your disability.  (The LASD) can ask if you can

22  perform the essential functions of the job with or without reasonable accommodation.  The

23  (LASD) can also ask you to describe or to demonstrate how, with or without reasonable

24  accommodation, you will perform the duties of the job."

25               C)    "(The LASD) may not require you to take a medical examination before

26  you are offered a job.  (The LASD) may condition a job offer on your passing a medical

27  examination, but only if all candidates for that job have to pass the examination.  However

28  (the LASD) may not reject you because of information about a disability that is revealed by

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
72

1   the medical examination, unless the reasons for rejection are job-related and consistent with

2   business necessity."

3       213.   Further, at all times herein mentioned, it was unlawful under the FEHA and

4   considered to be discrimination based on disability in the State of California for any employer,

5   including any law enforcement agency, to require applicants for a position to take a *pre-*

6   *employment* medical and/or psychological examination.

7       214.   Based on both their own written policies and on the law of the State of

8   California and the United States, as aforesaid, Defendants LA COUNTY and LASD acted

9   unlawfully by requiring *pre-employment* and/or post-employment medical and psychological

10   examinations, and caused the hereinafter described damage to the named plaintiffs in this

11   cause of action.

12       215.   As a result of the unlawful disability discrimination mentioned herein, each

13   named plaintiff in this cause of action is entitled to an award of both economic and non-

14   economic damages in an amount according to proof at the trial of this action.

15       216.   Moreover, for those named plaintiffs herein who ultimately were "disqualified"

16   from a peace officer position because of a perceived and/or actual disability as a result of the

17   administration of the *pre-employment* medical and psychological examinations,

18   documentation of the examination results was placed in their respective police personnel file

19   and/or other file kept for personnel purposes.  On information and belief, Defendants

20   unlawfully disseminated information about the disqualifications and reasons for

21   disqualification to individuals within Defendant LA COUNTY who should not have had

22   access to the information pursuant to Penal Code §832.7 and its subdivisions, and without first

23   complying with the provisions of Evidence Code §1043, thus also causing additional

24   economic and non-economic damage in an amount according to proof at the trial.

25       217.   Each plaintiff named in this cause of action, as well his counsel of record, is

26   entitled to an award of attorney's fees and reasonable costs in an amount according to proof

27   pursuant to Government Code §12965(b).

28   *///*

## THIRTEENTH CAUSE OF ACTION

**(DISABILITY DISCRIMINATION- BY THE PLAINTIFFS NAMED BELOW AGAINST DEFENDANT LOS ANGELES COUNTY AND DEFENDANT LOS ANGELES COUNTY SHERIFF'S DEPARTMENT - VIOLATIONS OF THE FEHA FOR NOT AUTHORIZING AND REQUIRING "AGE APPROPRIATE" MEDICAL EXAMINATIONS RESULTING IN WRONGFUL TERMINATION OF PEACE OFFICER JOBS OR A CREATION OF A RECORD IN THEIR POLICE PERSONNEL FILE OR OTHER FILE KEPT FOR PERSONNEL PURPOSES)**

218.    Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 217 as though fully set forth.

219.    The named plaintiffs in this cause of action are: ANDREW AGUILAR, LEONARD BARRIOS, JOSE CARRILLO, CAROL CAUDLE, STUART J. COKER, DAN CORTEZ, SR., AARON DEYON, MARGIE DUARTE, EDWARD ENTWISLE, JOHN S. GARCIA, RONALD GREENE, JOSE GUERRERO, STEVEN GUTIERREZ, PHILLIP LAKIN, JOEL MACKAY, GLEN MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, LUIS MENDEZ, FLORIA MORTON, LENN NORMAN, ARTHUR NOWELL, CHRISTINA RAMIREZ, CHERYL ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, WILLIAM SALAZAR, MARK SPURLOCK, JUDI TREDY, JOHN VARGAS, RALPH WAINWRIGHT. All of these plaintiffs named herein were required to take medical and/or psychological examinations that were not "age appropriate", resulting in their termination from police officer positions.

220.    In this particular lawsuit, there are a total of 125 named plaintiffs. As noted previously, 107 of those plaintiffs were disqualified, either because they did not "pass" the polygraph/ background process or because they disqualified for medical/ psychological reasons. Of these 107 disqualified plaintiffs, 75 of them "failed" the polygraph/background, 1 of them retired shortly after starting the polygraph/ background process, and 31 were medically/ psychologically disqualified.

221.   Each of the plaintiffs named in this cause of action had "passed" the polygraph examination(s) and background investigation, and were then required to take a *pre-employment* and/or post-employment medical and psychological examination before being "hired" as deputy sheriffs by Defendants LA COUNTY and LASD.  The plaintiffs named herein were then disqualified from being transferred into the deputy sheriff position, or after being transferred into the deputy sheriff position, either because they were believed to be physically and/or mentally disabled, and/or because they were perceived to have been lying as to the existence or non-existence of some prior medical or psychological condition when filling out a medical questionnaire form.  In either case, their respective police personnel file or other file kept for personnel purposes was documented with the disqualification.

222.   At all times herein mentioned, each of the plaintiffs named in this cause of action were qualified individuals with a disability, in that: (A) they were perceived by the named defendants herein to have a disqualifying physical and/or mental disability; and/or, (B) they each had a physical or mental disability under the FEHA that substantially impacted a major life activity; and (C) they could nevertheless perform their respective essential duties as a police officer with or without a reasonable accommodation.

223.   As previously noted herein, on or about December 15, 2009, it was represented by Defendants LA COUNTY and LASD that the medical and psychological examinations to be administered to those former OPS officers would be "age appropriate".

224.   Each plaintiff named herein was 40 years of age or older as of September 30, 2010.  Further, each plaintiff named herein, due to his or her age and due to his or her prior years of experience as a peace officer, was exposed for a relatively long period of time to the harsh physical and/or mental demands of the job.  Generally, each would be expected to have physical and/or mental conditions that were less optimal for police work than those physical and/or mental conditions of a younger "new hire" who had to pass physical agility and mental competency tests to even become a police officer at any agency in the State of California.  Because Defendants LA COUNTY and LASD were treating the former OPS officers as "new hires", it was critical that Defendants avoided the discrimination based on age and disability

1  classifications that would necessarily be expected to result when an entire group of over-age
2  40, experienced police officers were being evaluated in the same manner as if they were high
3  school or college graduates in their early 20's seeking their first police job. The most
4  significant way to ensure that the plaintiffs named herein were not treated differently based on
5  their protected class characteristics was to ensure that "age appropriate" medical and
6  psychological examinations were administered.

7       225.   In fact, "age appropriate" medical and psychological examinations were not
8  administered to the named plaintiffs in this cause of action, causing each plaintiff so named
9  herein to be subjected to unlawful disability discrimination on account of his or her physical
10  and/or mental disability.

11       226.   Moreover, already-employed deputy sheriffs of Defendant LASD who were of a
12  similar age and experience as the named plaintiffs herein were not required to take the same
13  medical and/or psychological examinations as a condition of keeping their peace officer jobs.
14  The fact that the named plaintiffs herein were treated as "new hires" and had to take medical
15  and psychological examinations that were not "age appropriate" led to a tremendous inequity
16  and disparate impact on treatment of law enforcement employees of Defendant LA COUNTY.
17  For example, one particular plaintiff was disqualified from a peace officer job because of not
18  passing a phase of the hearing test; yet, other already-employed deputy sheriffs of a similar
19  age and experience did not have to take this hearing test and, in fact, could have had a far
20  worse hearing condition that would disqualify him or her from being a deputy sheriff.

21       227.   Each named plaintiff herein was subjected to unlawful disability discrimination
22  under the FEHA because of the allegations set forth in this cause of action, and has been
23  damaged thereby.

24       228.   As a result of the unlawful disability discrimination mentioned herein, each
25  named plaintiff in this cause of action is entitled to an award of both economic and non-
26  economic damages in an amount according to proof at the trial of this action.

27       229.   Moreover, for those named plaintiffs herein who ultimately were  "disqualified"
28  from a peace officer position because of a perceived and/or actual disability as a result of the

1 administration of the pre-employment and non "age appropriate" medical and psychological
2 examinations, documentation of the examination results was placed in their respective police
3 personnel file and/or other file kept for personnel purposes. On information and belief,
4 Defendants unlawfully disseminated information about the disqualifications and reasons for
5 disqualification to individuals within Defendant LA COUNTY who should not have had
6 access to the information pursuant to Penal Code §832.7 and its subdivisions, and without first
7 complying with the provisions of Evidence Code §1043, thus also causing additional
8 economic and non-economic damage in an amount according to proof at the trial.

9     230. Each plaintiff named in this cause of action, as well his counsel of record, is
10 entitled to an award of attorney's fees and reasonable costs in an amount according to proof
11 pursuant to Government Code §12965(b).

12

13                 **FOURTEENTH CAUSE OF ACTION**
14     **(DISABILITY DISCRIMINATION- BY THE PLAINTIFFS NAMED BELOW**
15     **AGAINST DEFENDANTS LOS ANGELES COUNTY AND LOS ANGELES**
16     **COUNTY SHERIFF'S DEPARTMENT - VIOLATIONS OF THE**
17     **FEHA RESULTING IN WRONGFUL TERMINATION)**

18     231. Plaintiffs reallege and incorporate herein those matters contained in paragraphs
19 1 through 230 as though fully set forth.

20     232. The named plaintiffs in this cause of action are: ANDREW
21 AGUILAR, LEONARD BARRIOS, JOSE CARRILLO, CAROL CAUDLE, STUART
22 COKER, DAN CORTEZ, SR., AARON DEYON, MARGIE DUARTE, EDWARD
23 ENTWISLE, JOHN S. GARCIA, RONALD GREENE, JOSE GUERRERO, STEVEN
24 GUTIERREZ, PHILLIP LAKIN, JOEL MACKAY, GLEN MANCHESTER, EDWARD
25 MARQUEZ, WILLIAM MARTIN, LUIS MENDEZ, FLORIA MORTON, LENN
26 NORMAN, ARTHUR NOWELL, CHRISTINA RAMIREZ, CHERYL ROBINSON, JOSE
27 RODRIGUEZ, KENNETH RUFFCORN, WILLIAM SALAZAR, MARK SPURLOCK,
28 JUDI TREDY, JOHN VARGAS, and RALPH WAINWRIGHT.

233.   Each of the plaintiffs named in this cause of action had "passed" the polygraph examination(s) and background investigation, and were then required to take a non-"age appropriate" pre-employment or post-employment medical and psychological examination as a condition of being "hired, or as a condition of remaining "hired", as deputy sheriffs by Defendants LA COUNTY and LASD.  The plaintiffs named herein were then disqualified from being transferred into the deputy sheriff position, or after being transferred into the deputy sheriff position, either because they were believed to be physically and/or mentally disabled, and/or because they were perceived to have been lying as to the existence or non-existence of some prior medical or psychological condition when filling out a medical questionnaire form.  In either case, their respective police personnel file or other file kept for personnel purposes was documented with the disqualification.

234.   At all times herein mentioned, each of the plaintiffs named in this cause of action were qualified individuals with a disability, in that: (A) they were perceived by the named defendants herein to have a disqualifying physical and/or mental disability; and/or, (B) they each had a physical or mental disability under the FEHA that substantially impacted a major life activity; and (C) they could nevertheless perform their respective essential duties as a police officer with or without a reasonable accommodation.

235.   At all times herein mentioned, each of the plaintiffs named in this cause of action were subjected to disability discrimination because they were ipso facto disqualified from the deputy sheriff position with Defendant LASD because of an actual and/or perceived physical or mental disability that did or did not substantially impact a major life activity under the FEHA, and because each of them could nevertheless perform their respective essential duties as a police officer with or without a reasonable accommodation.  Each plaintiff named in this cause of action alleges that this disqualification amounted to a wrongful termination in violation of public policy due to disability discrimination in breach of relevant state and federal law.

236.   At all times herein mentioned, each of the plaintiffs named in this cause of action were subjected to disability discrimination for physical, medical, and/or psychological

1 │ conditions that did not constitute a bona fide occupational disqualifying factor from being a

2 │ peace officer in the State of California.

3 │     237.  As a result of the unlawful disability discrimination mentioned herein, each

4 │ named plaintiff in this cause of action is entitled to an award of both economic and non-

5 │ economic damages in an amount according to proof at the trial of this action.

6 │     238.  Moreover, for those named plaintiffs herein who ultimately were "disqualified"

7 │ from a peace officer position because of a perceived and/or actual disability as a result of the

8 │ administration of the *pre-employment* or post-employment medical and psychological

9 │ examinations, documentation of the examination results was placed in their respective police

10 │ personnel file and/or other file kept for personnel purposes.  On information and belief,

11 │ Defendants unlawfully disseminated information about the disqualifications and reasons for

12 │ disqualification to individuals within Defendant LA COUNTY who should not have had

13 │ access to the information pursuant to Penal Code §832.7 and its subdivisions, and without first

14 │ complying with the provisions of Evidence Code §1043, thus also causing additional

15 │ economic and non-economic damage in an amount according to proof at the trial.

16 │     239.  Each plaintiff named in this cause of action, as well his counsel of record, is

17 │ entitled to an award of attorney's fees and reasonable costs in an amount according to proof

18 │ pursuant to Government Code §12965(b).

19 │     240.  On information and belief, the aforesaid disability discrimination was

20 │ intentional, since Defendants LA COUNTY and LASD had an agenda to eliminate a

21 │ particular number of the former OPS officers.  Consequently, because those specific numbers

22 │ were not met in the initial phase of the process by disqualifying the former OPS officers based

23 │ on their respective polygraph examination(s) and/or background investigation, additional

24 │ numbers had to be eliminated through the medical and psychological examination process.

25 │ ///

26 │ ///

27 │ ///

28 │ ///

ANGELES COUNTY AND LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT)

241.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 240 as though fully set forth.

242.   The named plaintiffs in this cause of action are: ANDREW AGUILAR, LEONARD BARRIOS, JOSE CARRILLO, CAROL CAUDLE, STUART COKER, DAN CORTEZ, SR., AARON DEYON, MARGIE DUARTE, EDWARD ENTWISLE, JOHN S. GARCIA, RONALD GREENE, JOSE GUERRERO, STEVEN GUTIERREZ, PHILLIP LAKIN, JOEL MACKAY, GLEN MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, LUIS MENDEZ, FLORIA MORTON, LENN NORMAN, ARTHUR NOWELL, CHRISTINA RAMIREZ, CHERYL ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, WILLIAM SALAZAR, MARK SPURLOCK, JUDI TREDY, JOHN VARGAS, RALPH WAINWRIGHT.

243.   Each of the plaintiffs named in this cause of action had "passed" the initial polygraph examination(s) and background investigation(s), but had been disqualified from being permitted to transfer into a deputy sheriff position with Defendant LASD because of an actual and/or perceived physical or mental disability, or because they purportedly lied in completing a medical questionnaire form as to the existence or non-existence of a physical or mental condition.

244.   At all times herein mentioned, each of the plaintiffs named in this cause of action were qualified individuals with a disability, in that: (A) they were perceived by the named defendants herein to have a disqualifying physical and/or mental disability; and/or, (B) they each had a physical or mental disability under the FEHA that substantially impacted a major life activity; and (C) they could nevertheless perform their respective essential duties as

perceived and/or actual disabilities of the named plaintiffs herein by allowing each of them to retain their law enforcement status in some reasonable manner.

249.   As a result of the aforesaid willful refusal of the named defendants herein to

1 a police officer with or without a reasonable accommodation.

2      245.   At all times herein mentioned, the FEHA statutory scheme was in full force and
3 effect. This statute, as well implementing codes and regulations, required that employers and
4 employees engage in the interactive process in good faith for the purpose of identifying
5 reasonable accommodations before terminating a qualified employee with either a physical
6 and/or mental disability.

7      246.   Defendants LA COUNTY and LASD did not, at any time herein mentioned,
8 engage in the interactive process in good faith to identify a reasonable accommodation for
9 each plaintiff named herein so that he or she could retain his or her peace officer status and
10 keep his or her law enforcement position. Each named plaintiff in this cause of action was, at
11 all times, willing to engage in the interactive process in good faith to identify a reasonable
12 accommodation, but were thwarted in doing so by the named defendants herein. For these
13 plaintiffs in this cause of action, a reasonable accommodation was not to be placed into a
14 "civilian" position with Defendant LA COUNTY.

15      247.   At all times herein mentioned, Defendants LA COUNTY and LASD took the
16 position they were engaging in the interactive process in good faith, since some of the
17 plaintiffs named herein were placed in "civilian" jobs in LA COUNTY, mostly at a reduced
18 level of pay and benefits. These defendants, however, refused to appreciate that comparing
19 law enforcement careers with "civilian" careers was like comparing apples and oranges, and
20 that a willful failure to engage in the interactive process to identify reasonable
21 accommodations for otherwise qualified peace officers in the law enforcement field caused
22 substantial economic and non-economic damage to the plaintiffs named herein, all of whom
23 had devoted their lives and who had placed their lives on the line for the community.

24      248.   On information and belief, Defendants LA COUNTY and LASD, had they
25 engaged in the interactive process in good faith, could have reasonably accommodated the
26 perceived and/or actual disabilities of the named plaintiffs herein by allowing each of them to
27 retain their law enforcement status in some reasonable manner.

28      249.   As a result of the aforesaid willful refusal of the named defendants herein to

1  engage in the interactive process in good faith (for the purpose of identifying reasonable

2  accommodations), each named plaintiff in this cause of action was terminated and/or

3  disqualified from a law enforcement job and is entitled to an award of both economic and

4  non-economic damages in an amount according to proof at the trial of this action.

5      250.  Moreover, for those named plaintiffs herein who ultimately were "disqualified"

6  from a peace officer position because of a perceived and/or actual disability as a result of the

7  administration of the pre-employment and non "age appropriate" medical and psychological

8  examinations, documentation of the examination results was placed in their respective police

9  personnel file and/or other file kept for personnel purposes.  On information and belief,

10 Defendants unlawfully disseminated information about the disqualifications and reasons for

11 disqualification to individuals within Defendant LA COUNTY who should not have had

12 access to the information pursuant to Penal Code §832.7 and its subdivisions, and without first

13 complying with the provisions of Evidence Code §1043, thus also causing additional

14 economic and non-economic damage in an amount according to proof at the trial.

15     251.  Each plaintiff named in this cause of action, as well his counsel of record, is

16 entitled to an award of attorney's fees and reasonable costs in an amount according to proof

17 pursuant to Government Code §12965(b).

18     252.  On information and belief, the aforesaid refusal to engage in the interactive

19 process in good faith (for the purpose of identifying reasonable accommodations) was

20 intentional, since Defendants LA COUNTY and LASD had an agenda to eliminate a

21 particular number of the former OPS officers.  Consequently, because those specific numbers

22 were not met in the initial phase of the process by disqualifying the former OPS officers based

23 on their respective polygraph examination(s) and/or background investigation, additional

24 numbers had to be eliminated through the medical and psychological examination process.

25 ///

26 ///

27 ///

28 ///

## SIXTEENTH CAUSE OF ACTION

### (INVASION OF PRIVACY- BROUGHT BY ALL THE PLAINTIFFS NAMED BELOW AGAINST THE DEFENDANTS NAMED BELOW- ARISING UNDER GOVERNMENT CODE §§ 815.2(a); 815.4, AND 815.6)

253.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 252 as though fully set forth.

254.   This cause of action applies to plaintiffs named in this Complaint who did not "pass" either their polygraph examination(s) and/or background investigation, and who were excluded from retaining their peace officer jobs for such stated reasons as "poor employment history", "integrity", "judgment", "financial irresponsibility", "illegal sex acts", "illegal drug use", "criminal conviction", "criminal history", "gang association", "gang affiliation", and other specified categories.  This cause of action also applies to those plaintiffs who "passed" their polygraph examination(s) and background investigation, but were disqualified for medical and/or psychological reasons.  This cause of action also applies to the following-named plaintiffs who "passed" their polygraph examination(s) and background investigation, but were later informed they were disqualified from retaining their peace officer jobs because of allegedly lying in filling out their medical questionnaire forms.  The identities of the individual plaintiff pursuing this cause of action are as follows:  STUART J. COKER, ANDREW AGUILAR, BARBARA ALBA, THEO ANADOLIS, BURLEY ANDERSON,, LEONARD BARRIOS, CARLOS BAZAN, STEVEN BELL, RICHARD BENTLEY, BRIAN BLESSING, LINDA BONNER, EILLEEN BORJA, TERRELL BOYKIN, RANDY BUDD, HUBERT BUSH, JR., CARLOS CALDERON, JUAN CAMACHO, JUAN CAMPOS, MAURICE CANNON, SEAN CARO, JOSE CARRILLO, CAROL CAUDLE, CARLTON CHAMBERS, MICHAEL CLARK, MICHAEL COHEN, KEVIN COMPISE, DANIEL CORTEZ, SR., THERESA DAUGHERTY, BRIAN DECKER, AARON DEYON, DAVID DOMINGUEZ-HERBERT, MARGIE DUARTE, EDWARD ENTWISLE, ROBERT FRIAR, DANIEL GARCIA, JOHN L. GARCIA, JOHN S. GARCIA, ROBERT

1 GONZALEZ, MITCH GRACE, DARRELL GREEN, RONALD GREENE, JOSE
2 GUERRERO, STEVEN GUTIERREZ, LINDA-JUDITH HARGRAVE, SHANE HARING,
3 TONY HAYDEN, ANDREW J. HERNANDEZ, GERALD HOLT, ANTHONY W.
4 JACKSON, JAY JACOBSON, AKOUB "JACK" KHOKASIAN, MIKE KIM, JEREMY
5 KITABJIAN, PHILLIP LAKIN, DEREK LEE, GORDON LEE, STEVE LIEBERMAN,
6 CURT LEONARD, ANDREW MACK, JOEL MACKAY, WILLIAM MADRID, GLEN
7 MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, DAVID MCDONALD,
8 LUIS MENDEZ, FLORIA MORTON, CHARLES MUSE, MURIEL NG-BODE, LENN
9 NORMAN, ARTHUR NOWELL, ANDRUS NORTHRUP, MARCOS PEREZ, JEFF
10 PHILLIPS, JOHN PREECE, STEVEN PRUITT, CHRISTINA RAMIREZ, EDWARD
11 RAMOS, GERARDO RAMOS, MARTHA REYES, CHERYL ROBINSON, RICHARD
12 ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, LLOYD RUNNING,
13 KENNETH RYNO, WILLIAM SALAZAR, FERDINAND SALGADO, EDWIN
14 SANDOVAL, SCOTT SHEARING, DOREEN SIMMONS, HOWARD SLACK, JOEL
15 SOKOLOW, MARK SPURLOCK, DANIEL TASCIAN, VERNON THOMPSON, JUDI
16 TREDY, JOHN VANN, JOHN VARGAS, RENE VEGA, IGNACIO VILLAROS, JR., ERIC
17 WAFER, RALPH WAINWRIGHT, ERIC WALTON, COREY WASHINGTON, KENNETH
18 WHITAKER, DANNY WILSON, and JAMES WOODELL.

19     255.   This cause of action does not yet apply to those 18 listed plaintiffs who were
20 allowed to "laterally transfer" into a deputy sheriff position, and whose privacy was not
21 invaded, although later discovered facts may cause this cause of action to be amended to
22 include additional plaintiffs.  Therefore, the following plaintiffs named in this Complaint are,
23 at this time, excluded from this cause of action: LOUIE BARRAGAN, DANIEL BAZAN,
24 STEVEN BIAS, OLLIE BRASHEARS, WELLINGTON CABAL, KEN CIANCOSI,
25 EDGARDO GARCIA, DANA GOWER, GEORGE GUERRA, GERALD HOLT, RUBEN
26 MONTANEZ, JAMES B. NOBLE, GARY PENDER, DOUGLAS PRECIADO, MARIANO
27 PRIETO, JACQUELINE REGALADO, ANDY SEPULVEDA, and GELN VALVERDE.

28     256.   The following statutes are applicable to this cause of action because public

1  entities and its employees are involved: <u>Government Code §815.2(a)</u>—public entity liable for

2  injury proximately caused by an act or omission of the public entity within the scope of his or

3  her employment; <u>Government Code §815.4</u>—public entity liable for injury proximately

4  caused by independent contractor of the public entity under expressed circumstances; and,

5  <u>Government Code §815.6</u>—public entity under a mandatory duty imposed by statute designed

6  to protect against a particular kind of injury is liable for a failure to discharge its duty under

7  expressed circumstances;

8      257.   At all times herein mentioned, the plaintiffs named in this cause of action were

9  private persons and not actual or limited public figures.

10     258.   Defendant CAPTAIN KEVIN HEBERT, as the Director of Personnel

11  Administration of Co-Defendant LASD, and acting in concert with and pursuant to the

12  direction of Co-Defendants BACA, WALDIE, and ROGNER, wrote each of the named

13  plaintiffs in paragraph 254 a disqualifying letter, informing them that they had "failed" their

14  polygraph examination(s) and/or background investigations, and stated the reasons for their

15  reputed failure. In each case, these letters were mailed to the named plaintiffs in paragraph

16  254 by third parties acting on behalf of Captain HEBERT.

17     259.   Each of the named plaintiffs mentioned in paragraph 254 were invited to

18  appeal from the disqualification to the Department of Human Resources of Defendant LA

19  COUNTY, and, in fact, many of them did. In appealing from the disqualification, each of

20  those named plaintiffs was required to republish the reasons stated for their disqualification

21  per the letter written by Defendant HEBERT. Those plaintiffs named herein who appealed

22  from the disqualification uniformly received back letters from Co-Defendant LISA

23  GARRETT, the Director of Personnel for Defendant LA COUNTY, and from Co-Defendant

24  RALPH PLASENCIA, a human resources analyst for the Personnel Department in Defendant

25  LA COUNTY, to the effect that their appeal had been denied and the reasons stated for the

26  denial. Accordingly, civilian employees of Defendant LA COUNTY were permitted to see

27  records that were supposed to be confidential pursuant to the Penal Code and other pertinent

28  statutes regarding the "official information" privilege in the Evidence Code, all of which

1  regulated the information that could be disclosed from police personnel files.

2      260.   Further, as to some of those plaintiffs named herein,  Defendant CEO

3  WILLIAM FUJIOKA signed public letters claiming that those plaintiffs were deceptive and

4  lying in filling out medical questionnaire forms.  Private medical information was publically

5  disclosed in each of the letters of disqualification, which was a violation of the HIPAA

6  (Health Insurance and Portability and Accountability Act of 1996) rules regarding the privacy

7  of medical information.

8      261.   Further, as to some of those plaintiffs named herein, Defendant CEO WILLIAM

9  FUJIOKA and Defendant KEITH SMITH, a Program Monitor for Occupational Health

10  Programs working under Defendant CEO FUJIOKA, wrote public letters to those plaintiffs,

11  informing them they had "failed" their psychological examination.

12      262.   Moreover, in order to preserve some of the remedies requested in this

13  Complaint, counsel for the plaintiffs named herein were required to file Government Claims,

14  exhaust administrative appeals where necessary, and file administrative complaints alleging

15  discrimination with the DFEH.  Therefore, additional public republications of the

16  unauthorized and unlawful disclosures of private police personnel information were necessary

17  in order preserve plaintiffs' entitlement to remedies and damages under state and federal law.

18      263.   On information and belief, it appears that Defendant LA COUNTY and

19  Defendant LASD allowed private police and official information about the plaintiffs named

20  herein to be shared with their civilian employees.  Thus, for example, in attempting to find

21  "civilian" jobs for the named plaintiffs herein who were disqualified from retaining their

22  peace officer status, private police and official information about the named plaintiffs herein

23  and their reasons for not "passing" the polygraph examinations and/or background

24  investigation were shared by police officers with civilian employees of Defendant LA

25  COUNTY who did not have either a right or need to know that information.

26      264.   Background investigators, many of whom have been named as defendants in

27  this Complaint, often shared private information disclosed in their investigation with un-

28  authorized persons.  For example, a plaintiff in the second lawsuit (i.e. under age 40)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
86

1  confidentially disclosed to his background investigator that the reason he may have appeared
2  to register "deceptive" on his polygraph examination to a question regarding domestic
3  violence was because he had cheated on his wife several years ago.  That background
4  investigator then interviewed that particular plaintiff's wife and told her words to the effect of
5  "did you know that your husband is cheating on you?"

6        265.  At the time that each of these named plaintiffs named in this cause of action
7  took the polygraph examination(s) and were the subject of a background investigation, or
8  were taking pre-employment medical and psychological examinations, they were sworn police
9  officers whose personnel files and any information about their private medical information,
10  their history and their abilities as police officers was absolutely protected from disclosure to
11  the public by Penal Code §832.7 and by the official information privileges contained in
12  Evidence Code §§1040, 1043, 1044, 1045, 1046, and 1047 (or any of the particular
13  subdivisions of the statute).  In fact, the Attorney General of the State of California has opined
14  that the willful disclosure of private and official information about a police officer is criminal
15  act punishable as a misdemeanor.

16        266.  At all times herein mentioned, Penal Code §832.7 and its subdivisions, and as
17  the statute was interpreted by court cases, police officers have a legitimate expectation of
18  privacy in their police personnel records.  Such police personnel records, for example, are
19  protected from disclosure under the California Public Records Act and access to those records
20  cannot be obtained for any reason until a *Pitchess*-type motion is filed and approved by the
21  court.

22        267.  At all times herein mentioned, Penal Code §832.7 and its subdivisions, as well
23  as the so-called "official information" privilege disclosure statutes under Evidence Code
24  §§1040, 1043, 1044, 1045, 1046, and 1047 (or any of the particular subdivisions of the
25  statute), or the federal law regarding HIPAA disclosure procedures and violations, all imposed
26  a mandatory duty under Government Code §815.6 to protect against the public disclosure of
27  private information about police officers.  The disclosure of private police officer information
28  which seriously invades the privacy of the particular police officer, and which ultimately

1  causes economic and non-economic damages to that officer, is a particular risk of the breach

2  of Penal Code §832.7 and its subdivisions, Evidence Code §§1040, 1043, 1044, 1045, 1046,

3  and 1047 (or any of the particular subdivisions of the statute), or the federal law regarding

4  HIPAA disclosure procedures and violations. Therefore, the defendants named herein are

5  liable for invading that privacy of each plaintiff named herein pursuant to the mandatory duty

6  provisions of Government Code §815.6, both for their own actual liability and for any

7  vicarious liability arising from acts within the course and scope of employment pursuant to

8  Government Code §820.2 through §823.

9      268.   The aforesaid disclosures in violation of statute invaded the privacy of each of

10  the named plaintiffs herein, was the type of subject matter which would be highly offensive to

11  any reasonable person, were not newsworthy, and painted each of them in a false light,

12  causing the hereinafter described damages.

13      269.   At no time did any plaintiff named in this cause of action give consent to, nor

14  did they waive, the tortious and unlawful acts of any of the named defendants herein.

15      270.   At all times herein mentioned, the aforesaid actions were not privileged, were

16  not subject to any immunity, and were in fact accomplished by malice.

17      271.   As a direct result of the aforesaid invasion of privacy, each plaintiff named

18  herein has sustained, and will continue to sustain for a period of time, economic and non-

19  economic damages in an amount according to proof at the trial of this action.

20      272.   This cause of action for invasion of privacy applies to the institutional entities—

21  Defendant LA COUNTY and Defendant LASD. It also applies to the following-named

22  individual defendants—SHERIFF LEE BACA, UNDERSHERIFF LARRY WALDIE,

23  CAPTAIN ED ROGNER, CAPTAIN KEVIN HEBERT, CEO WILLIAM FUJIOKA, LISA

24  GARRETT, RALPH PLASENCIA, KEITH SMITH, ANGELA HUNT, and DOES 1 through

25  100, inclusive.

26      273.   The actions of each of the following named individual defendants was

27  accomplished by malice, oppression, and fraud, and therefore plaintiffs named herein are

28  entitled to an award of punitive damages against these individual defendants. Those

1  individuals named in connection with this punitive damage allegations are: SHERIFF LEE

2  BACA, UNDERSHERIFF LARRY WALDIE, CAPTAIN ED ROGNER, CAPTAIN KEVIN

3  HEBERT, CEO WILLIAM FUJIOKA, LISA GARRETT, RALPH PLASENCIA, KEITH

4  SMITH, ANGELA HUNT,  and DOES 1 through 100, inclusive.

5

6                    SEVENTEENTH CAUSE OF ACTION

7              (BREACH OF DUTY OF FAIR REPRESENTATION- BROUGHT

8              BY THE PLAINTIFFS NAMED BELOW AGAINST PROFESSIONAL

9              PEACE OFFICERS ASSOCIATION aka PPOA AND DOES 1

10             THROUGH 100)

11       274.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

12  1 through 273 as though fully set forth.

13       275.   The plaintiffs named in this cause of action are as follows: STUART J.

14  COKER, ANDREW AGUILAR, BARBARA ALBA, THEO ANADOLIS, BURLEY

15  ANDERSON, LOUIE BARRAGAN, LEONARD BARRIOS, CARLOS BAZAN, DANIEL

16  BAZAN, STEVEN BELL, RICHARD BENTLEY, STEVEN BIAS, BRIAN BLESSING,

17  LINDA BONNER, EILLEEN BORJA, TERRELL BOYKIN, OLLIE BRASHEARS,

18  RANDY BUDD, HUBERT BUSH, JR., WELLINGTON CABAL, CARLOS CALDERON,

19  JUAN CAMACHO, JUAN CAMPOS, MAURICE CANNON, SEAN CARO, JOSE

20  CARRILLO, CAROL CAUDLE, CARLTON CHAMBERS, KEN CIANCIOSI, MICHAEL

21  CLARK, MICHAEL COHEN, KEVIN COMPISE, DANIEL CORTEZ, SR., THERESA

22  DAUGHERTY, BRIAN DECKER, AARON DEYON, DAVID DOMINGUEZ-HERBERT,

23  MARGIE DUARTE, EDWARD ENTWISLE, ROBERT FRIAR, DANIEL GARCIA,

24  EDGARDO GARCIA, JOHN L. GARCIA, JOHN S. GARCIA, ROBERT GONZALEZ,

25  DANA GOWER, MITCH GRACE, DARRELL GREEN, RONALD GREENE, GEORGE

26  GUERRA, JOSE GUERRERO, STEVEN GUTIERREZ, LINDA-JUDITH HARGRAVE,

27  SHANE HARING, TONY HAYDEN, ANDREW J. HERNANDEZ, GERALD HOLT,

28  ANTHONY W. JACKSON, JAY JACOBSON, AKOUB "JACK" KHOKASIAN, MIKE

1  KIM, JEREMY KITABJIAN, PHILLIP LAKIN, DEREK LEE, GORDON LEE, CURT
2  LEONARD, ANDREW MACK, JOEL MACKAY, WILLIAM MADRID, EDWARD
3  MARQUEZ, WILLIAM MARTIN, DAVID MCDONALD, LUIS MENDEZ, RUBEN
4  MONTANEZ, FLORIA MORTON, CHARLES MUSE, MURIEL NG-BODE, JAMES B.
5  NOBLE, LENN NORMAN, ARTHUR NOWELL, ANDRUS NORTHRUP, GARY
6  PENDER, MARCOS PEREZ, JEFF PHILLIPS, DOUGLAS PRECIADO, JOHN PREECE,
7  MARIANO PRIETO, STEVEN PRUITT, CHRISTINA RAMIREZ, EDWARD RAMOS,
8  GERARDO RAMOS, JACQUELINE REGALADO, MARTHA REYES, CHERYL
9  ROBINSON, RICHARD ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN,
10 LLOYD RUNNING, KENNETH RYNO, WILLIAM SALAZAR, FERDINAND
11 SALGADO, EDWIN SANDOVAL, ANDY SEPULVEDA, SCOTT SHEARING, DOREEN
12 SIMMONS, HOWARD SLACK, JOEL SOKOLOW, MARK SPURLOCK, DANIEL
13 TASCIAN, VERNON THOMPSON, JUDI TREDY, GLEN VALVERDE, JOHN VANN,
14 JOHN VARGAS, RENE VEGA, IGNACIO VILLAROS, JR., ERIC WAFER, RALPH
15 WAINWRIGHT, ERIC WALTON, COREY WASHINGTON, KENNETH WHITAKER,
16 DANNY WILSON, and JAMES WOODELL,

17     276.   At all times herein mentioned, Defendant PROFESSIONAL PEACE
18 OFFICER'S ASSOCIATION was also known as PPOA.

19     277.   At all times herein mentioned, Defendant PPOA was a union which represented
20 employees of law enforcement organizations of Defendant LA COUNTY.

21     278.   On information and belief, most of the plaintiffs named in this cause of action
22 were, up until on or about September 30, 2010, dues paying members of Defendant PPOA.
23 Some of the plaintiffs named herein, particularly those who were allowed to "laterally
24 transfer" into a probationary deputy sheriff position stopped paying dues to PPOA before on
25 or about September 30, 2010.

26     279.   Defendant PPOA, at the time the plaintiffs named in this cause of action were
27 dues-paying members, represented officers from the Office of Public Safety, law enforcement
28 employees of the Department of the Coroner, law enforcement employees of the LA County

1 District Attorney's Office, and law enforcement employees of the LA COUNTY SHERIFF'S
2 DEPARTMENT (rank of Sergeant and above). Defendant PPOA did not represent rank-and-
3 file deputy sheriffs of the LA COUNTY SHERIFF'S DEPARTMENT.

4     280.  At all times herein mentioned, the leadership of Defendant PPOA were law
5 enforcement employees of the rank of Sergeant and above in Defendant LA COUNTY
6 SHERIFF'S DEPARTMENT. Thus, for example, in the 2009-2010, the President of the
7 PPOA union was Brian Moriguchi, a lieutenant in Defendant LA COUNTY SHERIFF'S
8 DEPARTMENT.

9     281.  Within one year prior to and then after December 15, 2009, when the aforesaid
10 public meetings took place regarding the job action against the former OPS, there existed a
11 major conflict of interest between the plaintiffs named in this cause of action and Defendant
12 PPOA. The major conflict could be described as follows: As noted, the Frank lawsuit was an
13 employment discrimination action arising under the FEHA, whereby former OPS plaintiffs
14 had successfully alleged at the trial court level that the inequities in their treatment, pay, and
15 benefits vis-a-vis their deputy sheriff counterparts at Defendant LASD was due to racial
16 and/or national origin discrimination. After the large monetary verdict in the Frank lawsuit
17 was reversed at the appellate court level, LA COUNTY supervisors led by Don Knabe and
18 Michael Antononovich "made good" on their public promise to retaliate against the OPS by
19 announcing the job action of the so-called "workforce reduction/ merger" on or about
20 December 15, 2009. Defendant LA COUNTY, in concert with the management hierarchy at
21 Defendant LASD, had an agenda to eliminate many of the former OPS law enforcement
22 officers and "demote" them either to civilian jobs or to fire them altogether because they (it)
23 believed that the OPS was a group of "misfits" and was an inferior law enforcement
24 organization to the Defendant LASD. Defendant PPOA was a union that was supposed to
25 fight for the rights of its OPS members, but the union itself was managed by law enforcement
26 employees of the Defendant LASD who themselves had to "report" Co-Defendants
27 ROGNER, WALDIE, BACA and others. In other words, the PPOA leadership was not
28 interested in standing up for the rights of its members who were OPS law enforcement

1  employees, particularly when this leadership also had to follow the orders of its own employer
2  who believed that the OPS were sub-standard law enforcement employees and who was a
3  driving force behind the "workforce reduction/ merger".  On information and belief, the
4  leadership of Defendant PPOA, including, but not limited to, PPOA President Brian
5  Moriguchi was enlisted by management personnel at Defendant LA COUNTY and Defendant
6  LASD to "sell" the impending job action involving the OPS to its OPS members.  In fact,
7  Defendant PPOA's leadership and board of directors publically supported the so-called
8  "workforce reduction/ merger", even after the job action was accomplished and the PPOA
9  leadership could see the damage it caused to its former OPS law enforcement members.

10      282.  Defendant PPOA's leadership, including, but not limited to, President Brian
11  Moriguchi, made palpably false representations to the plaintiffs named in this cause of action
12  in order to secure any alleged waivers to participating in the process of first undergoing the
13  polygraph examination(s) and background investigation(s), and then undergoing a new
14  medical and psychological examination.  The following non-inclusive claims apply in this
15  regard:

16      A)  The leadership of Defendant PPOA, including, but not limited to, PPOA
17  President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that
18  the transition process of "eliminating" the OPS and participating in the process to be
19  employed as a deputy sheriff with Defendant LASD was going to be a "limited" polygraph
20  examination and background investigation.  The plaintiffs named in this cause of action were
21  told, and were led to believe, that the polygraph examination and background investigation
22  process would be "limited" to questions of their performance as peace officers when they
23  worked for the OPS.  The plaintiffs named in this cause of action were not told that the
24  polygraph examinations and background investigations would delve into their entire
25  childhood and adult lives, such as the type of polygraph examination and background
26  investigations that are provided to new hires of law enforcement agencies.  Defendant PPOA
27  represented, and the plaintiffs named in this cause of action were led to believe, that they
28  would not be treated as new hires and instead would be given full consideration as POST-

1 certified sworn peace officers. The plaintiffs named in this cause of action were essentially
2 led to believe by their union management colleagues at Defendant PPOA that the polygraph
3 examinations and background investigation were merely a "formality" in the step to becoming
4 absorbed as deputy sheriffs with Defendant LASD.

5        B)      The polygraph examination(s) and background investigation(s) were not
6 a mere "formality" as promised by the leadership of Defendant PPOA. For example, one of
7 the plaintiffs, who had been a good-performing POST-certified officer with the OPS, was
8 disqualified from transitioning into a deputy sheriff position because of "gang affiliation"—
9 his background investigator relied on a court document when the plaintiff was a juvenile that
10 had been "sealed" from all eyes by a Superior Court Judge. Moreover, many of the plaintiffs
11 were hazed like fraternity pledges by their background investigators—e.g. one background
12 investigator (Defendant KEVIN ZABORNIAK named in the cause of action regarding federal
13 civil rights violations) hazed one 20-year plus OPS officer by telling her to report to a room
14 which was really a broom closet, causing Defendant ZABORNIAK and his other boorish
15 background investigator colleagues to break down into paroxysms of laughter.

16        C)      The leadership of Defendant PPOA, including, but not limited to, PPOA
17 President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that
18 the transition process would include "age appropriate" medical and psychological
19 examinations. As noted elsewhere in this Complaint, those plaintiffs named herein who
20 "passed" the polygraph examination(s) and background investigation were required to take
21 medical and psychological examinations that were not "age appropriate". The promise of
22 "age appropriate" medical and psychological examinations was false when made, and this was
23 a critical misrepresentation to the plaintiffs herein because: (1) all but a couple of them were
24 over the age of 40 years as of December 15, 2009, and (2) many of them did have some
25 medical issues which arose because of their age and, perhaps, because of the physical nature
26 and demands of their chosen career.

27        D)      The leadership of Defendant PPOA, including, but not limited to, PPOA
28 President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that

1 | it was the position of Co-Defendant SHERIFF LEE BACA that those plaintiffs who
2 | transitioned into deputy sheriff positions would not lose their rank, pay, and/or grade which
3 | they had as OPS officers.  Thus, it was represented, for example, that if an OPS officer with
4 | 12 years seniority as a sergeant transitioned into Defendant LASD, he or she would take the
5 | job and be paid as a sergeant with 12 years experience in the LASD.  In fact, all of the 18
6 | named plaintiffs in this lawsuit who were allowed to become officers with the LASD lost
7 | rank, pay, and/or grade upon the transfer.
8 |       E)    The leadership of Defendant PPOA, including, but not limited to, PPOA
9 | President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that
10 | PPOA would pay for their respective attorney's fees and legal costs in prosecuting any
11 | necessary cause of action arising out of their loss of a peace officer job.  Each of the plaintiffs
12 | named in this cause of action have experienced a loss of their peace officer jobs, either
13 | because they allegedly "failed" the polygraph examination(s) and background investigation, or
14 | because they "failed" the non-"age appropriate" medical and/or psychological examinations.
15 | After the job actions, Defendant PPOA designated and retained two of the law firms
16 | traditionally used to represent its members (i.e. the law firm of Lackie, Dammeier and McGill
17 | and Green and Shinee) to represent the affected plaintiffs.  Defendant PPOA, however, only
18 | agreed to pay for attorney's fees and legal costs of these two firms to represent the plaintiffs
19 | named in this cause of action before the Civil Service Commission.  Defendant PPOA refused
20 | to pay for the attorney's fees and legal costs of these two firms to represent the plaintiffs in
21 | causes of action related to violations of their rights under the POBRA, under the FEHA or
22 | under Title VII, or under laws protecting civil rights. Consequently, these union law firms, on
23 | specific instruction from PPOA, did not properly advise plaintiffs of their rights under the
24 | POBRA, the FEHA, Title VII, and other potential remedies for the job action.  At the time of
25 | this agreement, Defendant PPOA was amply aware that the adverse employment actions in
26 | this case could not be adequately addressed through the Civil Service Commission, since the
27 | Civil Service Commission would only hold hearings in the event that the particular job action
28 | was based on a Rule 25 violation (i.e. job action based on a Rule 25 merit factor).  As

1  noted above, and more specifically, Defendant PPOA also instructed its law firms not to
2  address any violations of the POBRA or the FEHA and, on information and belief, instructed
3  these law firms to not advise the plaintiffs named herein of their respective obligations to file
4  timely Government Claims against Defendant LA COUNTY and other applicable defendants
5  arising from POBRA violations, or to file timely administrative complaints with the DFEH to
6  preserve their claims for protected class discrimination, harassment, and retaliation.
7  Moreover, Defendant PPOA instructed its law firms not to advise the plaintiffs herein that, if
8  they did receive a civil service hearing, they would otherwise be waiving their right and
9  ability to seek and collect monetary damages for protected-class discrimination, harassment,
10 and retaliation under the FEHA. Also, Defendant PPOA actively instructed its designated law
11 firms to "interfere" with plaintiffs' counsel herein in filing Government Claims,
12 administrative complaints with the DFEH, and in filing this litigation (i.e. these designated
13 law firms in fact did not follow the instruction of Defendant PPOA to "interfere" with
14 plaintiffs' current counsel). Finally, upon written demand by plaintiffs' counsel, Defendant
15 PPOA refused to, and continues to refuse to pay for, the attorney's fees and legal cost in
16 prosecuting this litigation.

17      283.   At all times herein mentioned, Defendant PPOA, as a union for the plaintiffs
18 named in this cause of action, had a duty under the law to provide "fair representation" for the
19 plaintiffs. Plaintiffs contend that Defendant PPOA, as set forth above and as according to
20 further proof in this litigation, breached this duty of "fair representation" to plaintiffs, thereby
21 causing the hereinafter described damages.

22      284.   As a direct consequence of the aforesaid breach of the duty of "fair
23 representation", plaintiffs demand that Defendant PPOA disgorge the union dues paid by each
24 plaintiff in an amount according to proof.

25      285.   As a further direct consequence of the aforesaid breach of the duty of "fair
26 representation", plaintiffs demand that Defendant PPOA pay for, and/or reimburse, them and
27 their counsel herein for the legal costs of preparing for, filing, and representing them in this
28 litigation. Legal costs include, but are not limited to, filing fees, service of process fees,

1  motion fees, expert witness costs, costs of deposition transcripts, and other reasonable costs

2  which are customarily part of the litigation process.

3      286.  As a further direct consequence of the aforesaid breach of the duty of "fair

4  representation", each plaintiff named herein has sustained, and will continue to sustain for a

5  period of time in the future, compensatory damages and general damages in an amount

6  according to proof at the trial of this action.

7

8                 **EIGHTEENTH CAUSE OF ACTION**

9         **(CCP 1085- ADMINISTRATIVE WRIT OF MANDAMUS**

10         **AND/OR BREACH OF CONTRACT- AGAINST DEFENDANT**

11         **LOS ANGELES COUNTY)**

12      287.  Plaintiffs reallege and incorporate herein those matters contained in paragraphs

13  1 through 286 as though fully set forth.

14      288.  At all times herein mentioned, Defendant LA COUNTY had a clear, present and

15  ministerial duty to comply with its own personnel rules and regulations, including, but not

16  limited to, <u>Skelley</u>-type hearings for its employees who are terminated or who suffer adverse

17  employment actions short of termination.

18      289.  The terminations of the following-named plaintiffs from their peace officer jobs

19  with LA COUNTY breached its own personnel rules and regulations.  STUART J. COKER,

20  ANDREW AGUILAR, BARBARA ALBA, THEO ANADOLIS, BURLEY ANDERSON,,

21  LEONARD BARRIOS, CARLOS BAZAN, STEVEN BELL, RICHARD BENTLEY,

22  BRIAN BLESSING, LINDA BONNER, EILLEEN BORJA, TERRELL BOYKIN, RANDY

23  BUDD, HUBERT BUSH, JR., CARLOS CALDERON, JUAN CAMACHO, JUAN

24  CAMPOS, MAURICE CANNON, SEAN CARO, JOSE CARRILLO, CAROL CAUDLE,

25  CARLTON CHAMBERS, MICHAEL CLARK, MICHAEL COHEN, KEVIN COMPISE,

26  DANIEL CORTEZ, SR., THERESA DAUGHERTY, BRIAN DECKER, AARON DEYON,

27  DAVID DOMINGUEZ-HERBERT, MARGIE DUARTE, EDWARD ENTWISLE, ROBERT

28  FRIAR, DANIEL GARCIA, JOHN L. GARCIA, JOHN S. GARCIA, ROBERT

1  GONZALEZ, MITCH GRACE, DARRELL GREEN, RONALD GREENE, JOSE
2  GUERRERO, STEVEN GUTIERREZ, LINDA-JUDITH HARGRAVE, SHANE HARING,
3  TONY HAYDEN, ANDREW J. HERNANDEZ, GERALD HOLT, ANTHONY W.
4  JACKSON, JAY JACOBSON, AKOUB "JACK" KHOKASIAN, MIKE KIM, JEREMY
5  KITABJIAN, PHILLIP LAKIN, DEREK LEE, GORDON LEE, STEVE LIEBERMAN,
6  CURT LEONARD, ANDREW MACK, JOEL MACKAY, WILLIAM MADRID, GLEN
7  MANCHESTER, EDWARD MARQUEZ, WILLIAM MARTIN, DAVID MCDONALD,
8  LUIS MENDEZ, FLORIA MORTON, CHARLES MUSE, MURIEL NG-BODE, LENN
9  NORMAN, ARTHUR NOWELL, ANDRUS NORTHRUP, MARCOS PEREZ, JEFF
10  PHILLIPS, JOHN PREECE, STEVEN PRUITT, CHRISTINA RAMIREZ, EDWARD
11  RAMOS, GERARDO RAMOS, MARTHA REYES, CHERYL ROBINSON, RICHARD
12  ROBINSON, JOSE RODRIGUEZ, KENNETH RUFFCORN, LLOYD RUNNING,
13  KENNETH RYNO, WILLIAM SALAZAR, FERDINAND SALGADO, EDWIN
14  SANDOVAL, SCOTT SHEARING, DOREEN SIMMONS, HOWARD SLACK, JOEL
15  SOKOLOW, MARK SPURLOCK, DANIEL TASCIAN, VERNON THOMPSON, JUDI
16  TREDY, JOHN VANN, JOHN VARGAS, RENE VEGA, IGNACIO VILLAROS, JR., ERIC
17  WAFER, RALPH WAINWRIGHT, ERIC WALTON, COREY WASHINGTON, KENNETH
18  WHITAKER, DANNY WILSON, and JAMES WOODELL.

19        289.   "A civil service employee is entitled to a strict interpretation of the statutory
20  rules for dismissal." *Zeron v. City of Los Angeles* 67 Cal.App.4th 639 (1998).  Defendant LA
21  COUNTY, therefore, has a duty to reinstate Plaintiffs' employment as peace officers and to
22  also restore the loss of all back-pay and benefits.

23        290.   Plaintiffs have exhausted all administrative remedies to compel the relief sought
24  herein. Plaintiffs have no other plain, adequate or speedy remedies in the ordinary course of
25  law.  Plaintiffs, therefore, are beneficially interested in the compelling of the ministerial duty
26  of Defendant LA COUNTY, and as such is entitled to issuance of a writ pursuant to
27  California Code of Civil Procedure §§1085-1086.

28        291.   Plaintiffs have performed all conditions, covenants, and promises required on

1 | their respective part to be performed in accordance with the terms and conditions of the
2 | contract of employment.

3 |     292. Plaintiffs were dismissed without just cause and/or suffered adverse
4 | employment actions without being allowed a pre-deprivation <u>Skelly</u>-type hearing or a post-
5 | deprivation hearing as required under the rules of Defendant LA COUNTY. Defendant LA
6 | COUNTY's violation of these mandatory regulations and rules constitutes a breach of its
7 | contract with the plaintiffs named herein. Absent Defendant LA COUNTY's clear breach of
8 | its own material regulations and rules, the plaintiffs named herein would not have lost their
9 | peace officer jobs and/or sustained adverse employment actions short of termination.

10 |     293. Plaintiffs herein pray for the issuance of the required administrative writ to
11 | reinstate Plaintiffs' jobs as peace officers and/or to enter orders requiring compensation for
12 | back pay loss, including, but not limited to, retirement and other benefit calculations.

13 |

14 |     WHEREFORE, Plaintiffs pray for the following relief:

15 | <u>First Through Fourth Causes of Action:</u>

16 | 1.     For compensatory damages in an amount according to proof.

17 | 2.     For general damages in an amount according to proof.

18 | 3.     For reasonable attorney's fees and expenses pursuant to Government Code
19 | §12965(b).

20 | <u>Fifth Through Tenth Causes of Action:</u>

21 | 1.     For the maximum civil penalty of $25,000 for each malicious POBRA violation
22 | as to each plaintiff, with each polygraph examination being a separate violation (as prayed for
23 | in the Fifth Cause of Action).

24 | 2.     For actual (compensatory and general) damages in an amount according to
25 | proof.

26 | 3.     For any injunctive relief which the court can provide in its discretion under the
27 | POBRA.

28 | 4.     For reasonable attorney's fees and costs in prosecuting the case of each plaintiff,

1 either under the POBRA and/or under the "private attorney general" doctrine as mandated in
2 Code of Civil Procedure §1021.5.

3    Eleventh Cause of Action:

4    1.    For compensatory damages in an amount according to proof.

5    2.    For general damages in an amount according to proof.

6    3.    For any injunctive relief which the court can provide in its discretion under
7 a cause of action for violations of federal civil rights.

8    4.    For punitive damages against the individual defendants named and to be named
9 in the Eleventh Cause of Action.

10   5.    For reasonable attorney's fees and expenses pursuant to 42 U.S.C. §1988.

11   Twelfth Through Fifteenth Cause of Action:

12   1.    For compensatory damages in an amount according to proof.

13   2.    For general damages in an amount according to proof.

14   3.    For reasonable attorney's fees and expenses pursuant to Government Code
15 §12965(b).

16   Sixteenth Cause of Action:

17   1.    For compensatory damages in an amount according to proof.

18   2.    For general damages in an amount according to proof.

19   3.    For punitive damages against the individual defendants named and to be named
20 in this cause of action.

21   Seventeenth Cause of Action:

22   1.    For compensatory damages in an amount according to proof.

23   2.    For general damages in an amount according to proof.

24   3.    For reimbursement of legal fees and costs in pursuing this action.

25   Eighteenth Cause of Action:

26   1.    For the issuance of an administrative writ of mandamus reinstating plaintiffs to
27 their law enforcement jobs or positions with back pay and other damages allowable by law.

28   On All Causes of Action:

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
99

1.   For costs of the suit herein incurred.

2.   For such other and further relief as this court may deem proper and just.

Dated:   March 21, 2011

LAW OFFICES OF JOEL W. BARUCH, PC

By _____
   Joel W. Baruch, Co-Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

All Plaintiffs herein demand a jury trial.

Dated:   March 21, 2011

LAW OFFICES OF JOEL W. BARUCH, PC

By _____
   Joel W. Baruch, Co-Counsel for Plaintiffs

# PROOF OF SERVICE BY OVERNIGHT DELIVERY

1

2          I am a citizen of the United States and employed in Los Angeles County, California.  I am

3   over the age of eighteen years and not a party to the within-entitled action.  My business address

4   is 555 South Flower Street, Fiftieth Floor, Los Angeles, California  90071-2300.  On May 9,

5   2011, I deposited with Federal Express, a true and correct copy of the within documents:

6              **NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE**
             **COURT**

7

8   in a sealed envelope, addressed as follows:

9       Joel W. Baruch, Esq.                    Thomas A. Pistone, Esq.
       Nikki Fermin, Esq.                       Eric Medel, Esq.
10      Law Offices of Joel W. Baruch, P.C.      Mitchell Reichmann, Esq.
       2020 Main Street, Suite 900              Aaron Watts, Esq.
11      Irvine, CA  92614                        Pistone & Wolder LLP
                                                2020 Main Street, Suite 900
12                                               Irvine, CA  92614-8203

13          Following ordinary business practices, the envelope was sealed and placed for collection

14   by Federal Express on this date, and would, in the ordinary course of business, be retrieved by

15   Federal Express for overnight delivery on this date.

16          I declare under penalty of perjury under the laws of the State of California that the above

17   is true and correct.

18          Executed on May 9, 2011, at Los Angeles, California.

19

20                                    _____
                                                   Elizabeth Tran

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV11- 709 JVS (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Coker et al. | County of Los Angeles et al. |

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Joel W. Baruch; Law Offices of Joel W. Baruch, P.C., 2020 Main St, Suite 900, Irvine, CA 92614  T: (949) 864-9662; Thomas A. Pistone; Pistone & Wolder LLP, 2020 Main St, Suite 900, Irvine, CA 92614  T: (949) 622-8980

Attorneys (If Known)

Elwood Lui, Christopher Lovrien; Jones Day
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071  Telephone (213) 489-3939

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☑ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No    ☑ **MONEY DEMANDED IN COMPLAINT: $** unspecified damages

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violations of the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. s. 1983 based on alleged adverse employment actions.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☑ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**    Case Number: _____

SACV11-00709

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑Yes
If yes, list case number(s):  CV11 02589 JFW (Ex)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                 ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                 ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                 ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Unknown. | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant Los Angeles County is a resident of Los Angeles County. Defendant Los Angeles County believes substantially all of the other defendants reside in Los Angeles County. | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All claims arose in Los Angeles County. | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _Elwood Lui 위p attorney_          Date May 9, 2011

   **Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
   or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
   but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |